```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JOHN WILEY & SONS, INC. et al.,                :
                                               :
                         Plaintiffs,           :     OPINION & ORDER
                                               :
       -v.-                                    :
                                               :     13 Civ. 816 (WHP) (GWG)
                                               :
BOOK DOG BOOKS, LLC et al.,                    :
                         Defendants.           :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs John Wiley & Sons, Inc. ("John Wiley"), Cengage Learning, Inc., and Pearson Education, Inc. seek an order compelling defendants Book Dog Books, LLC ("BDB") and Philip Smyres to produce documents concerning certain communications that took place between Smyres and his attorney Neil Mooney. Plaintiffs also request that they be allowed to take a limited deposition of Mooney regarding these communications. For the reasons stated below, plaintiffs' motion is granted.

I.     BACKGROUND

    A.     Plaintiffs' 2007 Suit Against Smyres

Plaintiffs are publishing companies that provide a wide range of educational products for students and professionals. See First Amended Complaint, filed Apr. 24, 2013 (Docket # 16) ("Am. Compl."), ¶ 1. Defendant BDB is a company that buys and sells textbooks, including some textbooks published by plaintiffs. Id. ¶ 2. Defendant Philip Smyres is the owner of BDB. Id. ¶¶ 14, 26; Answer to Amended Complaint, filed July 1, 2013 (Docket # 25), ¶ 14. Plaintiffs allege that in 2006 and 2007, they purchased copies of their textbooks from Smyres's companies

and determined these copies to be counterfeits.  See Am. Compl. ¶ 30.  In October 2007, plaintiffs filed a lawsuit against Smyres, alleging that he had imported and distributed counterfeit copies of plaintiffs' copyrighted textbooks.  Id. ¶¶ 3, 30; see also Complaint, filed Oct. 2, 2007 (Docket # 1 in 07 Civ. 8540).

In 2008, plaintiffs settled the 2007 lawsuit with a written settlement agreement that was signed by Smyres on behalf of himself and his companies.  See Settlement Agreement and Mutual Releases, dated July 11, 2008 (annexed as Ex. 1 to Plaintiffs' Memorandum in Support of Their Motion to Compel Production of Documents and Testimony, filed Mar. 26, 2014 (Docket # 109) ("Pl. Mem.")).  The agreement contained an injunctive provision prohibiting Smyres, as well as any entity owned or controlled by Smyres, from importing or selling pirated copies of plaintiffs' textbooks.  Id. § 5.  It also required Smyres to disclose to plaintiffs the foreign and domestic sources of any pirated copies of plaintiffs' textbooks, including "the name and location of the entity from whom such books were purchased, the types of books purchased, and the year(s) that Smyres Parties purchased such books."  Id. § 10; Am. Compl. ¶ 33.

Pursuant to this requirement, defendants informed plaintiffs that they had purchased "most if not all" of the counterfeit textbooks from a company in Thailand named Best Books World ("Best Books").  See Email, dated Sept. 10, 2008 (annexed as Ex. 2 to Pl. Mem.) ("Disclosure"), at 2.  The Disclosure consisted of an unsigned document attached to an email from defendants' attorney.  The document was written in the first person, which presumably refers to Smyres himself.  Id.  The Disclosure stated in relevant part:

> My research last November into this matter indicated that BestBooksWorld was not sending in any counterfeit books, but upon more careful review of the books we have received from them, it appears they may be the source of most if not all the pirated books . . . . We bought books from them in 2006, 2007, and recently in July of 2008.

Id.  In the Disclosure, Smyres also acknowledged that he had found bills of lading indicating that he had received textbook shipments from another company, Wirat Education ("Wirat"), but there was no indication in the Disclosure that any of the textbooks purchased from Wirat were counterfeit.  See id.

      B.      The Instant Suit

On February 4, 2013, plaintiffs filed the instant suit against Smyres and BDB.  See Complaint, filed Feb. 4, 2013 (Docket # 1).  In addition to raising various intellectual property claims, plaintiffs assert in their complaint that defendants are liable for breach of contract for continuing to sell counterfeit copies of plaintiffs' books in violation of the terms of the 2008 settlement agreement.  See Am. Compl. ¶¶ 102-06.  Plaintiffs contend that

> Best Books World is among the suppliers from whom Defendants have acquired counterfeit copies of Plaintiffs' Authentic Works both prior to and after settlement of the Prior Action, thereby exemplifying the knowing and intentional nature of their unlawful conduct.  Subsequent to settlement of the Prior Action, Defendants continued to purchase Textbooks from Best Books World even though Defendants knew that Best Books World was the source of the counterfeit books that led to the Prior Action.  As such, Defendants knew or should have known not to buy Textbooks from Best Books World without exercising sufficient care to insure that the Textbooks were not counterfeit.  Defendants failed to exercise that care.

Id. ¶ 47.

      C.      Defendants' Responses to Discovery and Smyres's Deposition

Among the documents turned over by defendants in discovery are September 2009 emails between Smyres and a Best Books agent in which Smyres "welcomes doing business with" Best Books, and which reflect a shipment of 142 cartons of books from Best Books to Smyres.  See Best Books Email Conversation (annexed as Ex. 3 to Pl. Mem.); Best Books Email Conversation (annexed as Ex. 4 to Pl. Mem.).  At Smyres's deposition on November 20, 2013, plaintiffs' counsel questioned Smyres about his knowledge of Best Book's counterfeiting

activities when he conducted business with them in 2009 and 2010. See Deposition of Philip Smyres, dated Nov. 20, 2013 (annexed as Ex. 5 to Pl. Mem.) ("Smyres Dep."). Plaintiffs' counsel showed Smyres a copy of the Disclosure that had been provided to plaintiffs as part of the 2008 settlement, see id. at 195-96, which contained the statement that Best Books "may be the source of most if not all the pirated books" at issue in the prior action against Smyres, see Disclosure at 2.

      When asked if he had ever seen this document, Smyres responded, "Maybe years ago. I don't know." Smyres Dep. at 196. Smyres continued, "Yeah, I don't deny that, that I may have prepared this. I don't remember this, but I thought it was communicated and [I] always have thought it was communicated that Wirat Education was the source of most of the counterfeit and that only one title that I could see came from this [sic] Best Books people." Id. Later at the deposition, Smyres testified, "Well, I'm 100 percent sure I have communicated to [my attorney] Mr. [Neil] Mooney that Wirat Education was the source of almost all of the counterfeit . . . ." Id. at 198. When plaintiffs' counsel then asked if there was anything in the Disclosure stating that Wirat was the source of the counterfeit books, Smyres replied, "It doesn't look like it was communicated correctly . . . that is I think pretty clear." Id. at 200. Upon being asked if "he had directed Mr. Mooney to disclose to the publishers that Wirat was the source of the counterfeit books," Smyres responded, "I thought I had . . . [b]ut it's not written down here. It's not written down on this piece of paper . . . ." Id. at 202. Plaintiffs' counsel also questioned Smyres about who had written the Disclosure. See id. at 204. Smyres testified, "I don't know how this got written. I don't know that I wrote this," id., and continued, "either I didn't write it or I just don't understand how this could have been written, this portion. Similar information but, I mean, what's really lacking is up here," id. at 205.

Smyres's counsel at no time made any objection during the deposition that the questions called for testimony as to privileged communications between Smyres and his attorney, Neil Mooney.

D.  Motion to Compel

On March 26, 2014, plaintiffs filed the instant motion to compel defendants to provide any documents they have yet to produce concerning Smyres's knowledge during the relevant time period of the source of the counterfeit books. See Plaintiffs' Notice of Motion to Compel Production of Documents and Testimony, filed Mar. 26, 2014 (Docket # 108); Pl. Mem.; Plaintiffs' Reply Memorandum in Support of Their Motion to Compel Production of Documents and Testimony, filed Apr. 8, 2014 (Docket # 119). Plaintiffs asked for "the production of all documents relating to BBW, Wirat, and counterfeit books . . . includ[ing] Defendant [Smyres's] communications with Neil Mooney regarding the 2008 disclosure of BBW as the source of the counterfeit books." Pl. Mem. at 5. Plaintiffs also "seek to take a limited deposition of Mr. Mooney regarding the same issues." Id. at 5.

Defendants filed papers in opposition to plaintiffs' motion to compel in which they implied that they had produced documents on the issue of the counterfeit books "with the exception of information" that was privileged. See Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Attorney-Client Privileged Communications, filed Apr. 2, 2014 (Docket # 118) ("Def. Opp. Mem."), at 1. However, neither party made any reference in their motion papers to specific privileged documents that have yet to be produced. Accordingly, the Court issued an Order directing defendants to provide the privilege log entries that corresponded with the withheld documents or to unequivocally state that there are no such documents. See Order, dated Apr. 28, 2014 (Docket # 123). Defendants then filed a responsive

letter asserting that there are no such documents. See Letter from Tiffany Miller, dated May 2, 2014 (Docket # 127). Accordingly, because the documents that plaintiffs request do not exist, the only issue that remains in this motion is whether plaintiffs should be entitled to take the deposition of Smyres's attorney, Neil Mooney.

II.     DISCUSSION

      A.     Whether the Conversations Between Smyres and Mooney are Privileged

Under federal law, "[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The proponent of the privilege bears the burden of establishing its existence." In re Buspirone Antitrust Litig., 211 F.R.D. 249, 252 (S.D.N.Y. 2002).

Plaintiffs argue that the conversations between Smyres and Mooney regarding the Disclosure are not privileged. See Pl. Mem. at 5-6. Incredibly, defendants' brief does not even address this issue. See Def. Opp. Mem. Instead, it simply assumes that the privilege existed and proceeds to respond to plaintiffs' waiver argument. But not all conversations between an attorney and a client are privileged. See, e.g., Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962); Schiller v. City of New York, 245 F.R.D. 112, 117 (S.D.N.Y. 2007). To meet their burden of asserting the privilege, defendants were required to provide competent proof on this motion that each of the elements of the attorney-client privilege were met — a task typically accomplished through sworn statements . See, e.g., von Bulow v. von Bulow, 811 F.2d 136, 144

(2d Cir.1987) ("the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship" and the burden cannot be "discharged by mere conclusory or ipse dixit assertions.") (citations and internal quotation marks omitted).  Having failed to provide any evidence or even argument on this point, defendants have not satisfied their burden of proving that the conversations between Smyres and Mooney are privileged.  Accordingly, plaintiffs' motion must be granted for this reason alone.

  B.  <u>Whether Any Privilege Has Been Waived</u>

In addition, even if defendants had shown that the communications between Smyres and Mooney were privileged, Smyres waived the privilege by testifying repeatedly and without objection about those conversations.

"Courts have found waiver [of the attorney-client privilege] by implication when a client testifies concerning portions of the attorney-client communication, when a client places the attorney-client relationship directly at issue, and when a client asserts reliance on an attorney's advice as an element of a claim or defense." <u>In re Cnty. of Erie</u>, 546 F.3d 222, 228 (2d Cir. 2008) (internal punctuation and citation omitted).  "As to the first species of privilege waiver, which occurs when a party selectively discloses otherwise privileged communications, 'it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut.  From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder.'" <u>Gardner v. Major Auto Co., Inc.</u>, 2014 WL 1330961, at *4 (E.D.N.Y. Mar. 31, 2014) (quoting <u>In re von Bulow</u>, 828 F.2d 94, 102 (2d Cir. 1987)).

The selective disclosure waiver doctrine is reflected in Rule 502(a) of the Federal Rules

of Evidence.  See, e.g., id., at *3; Swift Spindrift, Ltd. v. Alvada Ins., Inc., 2013 WL 3815970, at *4-5 (S.D.N.Y. July 24, 2013).  Rule 502(a) provides that "[w]hen the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  The Advisory Committee Notes to Rule 502(a) explain that the Rule "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."

      Here, the requirements of a Rule 502(a) waiver are satisfied.  First, Smyres "intentional[ly]" disclosed privileged information when he testified at his deposition about the communications that he had with Mooney regarding the Disclosure.  See, e.g., Thomas v. F.F. Fin., Inc., 128 F.R.D. 192, 193-94 (S.D.N.Y. 1989) (client's deposition testimony concerning certain privileged conversations with attorney waived the privilege with regard to those subjects); see also Bowne of N.Y.C., Inc. v. AmBase Corp., 150 F.R.D. 465, 485 (S.D.N.Y. 1993) ("[V]oluntary disclosure of privileged communications by deposition testimony in one case operates as an implied waiver as to all such communications concerning the particular matters addressed in the disclosed communications."); Fodelmesi v. Schepperly, 1990 WL 115607, at *2-3 (S.D.N.Y. Aug. 10, 1990) (same).  Contrary to Smyres's argument, plaintiffs' counsel did not ask "lead[ing]" questions in an effort to catch Smyres off-guard.  See Def. Opp. Mem. at 4.  Rather, Smyres asserted multiple times in the presence of counsel that, prior to the required Disclosure being provided to plaintiffs in 2008, he had told Mooney that Wirat, and not

Best Books, was the source of the counterfeit books.  See Smyres Dep. at 195-96, 198-99, 201-02.  Furthermore, Smyres implicitly referenced such communications when he suggested that, despite his clear instructions to Mooney to disclose Wirat as the source of the counterfeit books, Mooney failed to accurately communicate this information to plaintiffs.  See id. at 200-01.

Second, plaintiffs seek the production of documents and testimony "concern[ing] the same subject matter" as the privileged communications that Smyres disclosed during his deposition.  Specifically, plaintiffs have requested that they obtain disclosure of communications that relate to Smyres testimony, such as "(a) what company was responsible for supplying counterfeit works to Defendants in 2007; (b) whom did Defendant Smyres intend to disclose to Plaintiffs as being responsible for those infringements; (c) who physically typed the disclosures that were provided to Plaintiffs; and (d) did Defendant Smyres review the disclosures before they were sent."  See Pl. Mem. at 6.

Finally, inasmuch as Smyres testified about his private conversations with Mooney regarding the source of the counterfeit books, fairness dictates plaintiffs be allowed to question Mooney regarding these communications.  This is particularly true where Smyres has accused Mooney of failing to follow his specific instructions as to what information should be disclosed as required by the settlement agreement.  We agree with plaintiffs' contention that the subject of the privileged communications — what Smyres communicated to his attorney regarding the representations that were to be made in the Disclosure, including whether Best Books or Wirat was the source of the counterfeit books — is critically relevant to the case.  This is because Smyres's intent when he allegedly infringed plaintiffs' copyrights is "the determining factor for assessing willfulness."  Id. at 8; see 17 U.S.C. § 504(c)(2) (amount of recovery in copyright

9

infringement action affected by whether or not defendant acted willfully). Smyres acted willfully if he "either had actual knowledge that [he] was infringing the Plaintiffs' copyrights or else acted in reckless disregard of the high probability that [he] was infringing Plaintiffs' copyrights." See Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008) (quotation marks and citations removed). The testimony sought by plaintiffs relates directly to this issue. Fairness requires that plaintiffs be given the opportunity to obtain the recollection of Smyres's attorney as to his conversations with Smyres regarding the Disclosure.

Accordingly, we grant plaintiffs' motion to compel the testimony of Mooney about his conversations with Smyres regarding the Disclosure provided to plaintiffs in 2008.[1]

III. CONCLUSION

For the reasons stated above, plaintiffs' motion to compel (Docket # 108) is granted.

SO ORDERED.

Dated: May 7, 2014
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[1] Plaintiffs request in passing that they be awarded attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5)(A). See Pl. Mem. at 9. We deny this request without prejudice as neither plaintiffs nor defendants have briefed the applicability of this rule. If plaintiffs wish to pursue this request, they may do so either by formal motion or letter within 14 days. Any request should include an itemization of the fees sought.

infringement action affected by whether or not defendant acted willfully). Smyres acted willfully if he "either had actual knowledge that [he] was infringing the Plaintiffs' copyrights or else acted in reckless disregard of the high probability that [he] was infringing Plaintiffs' copyrights." See Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 486 (S.D.N.Y. 2008) (quotation marks and citations removed). The testimony sought by plaintiffs relates directly to this issue. Fairness requires that plaintiffs be given the opportunity to obtain the recollection of Smyres's attorney as to his conversations with Smyres regarding the Disclosure.

Accordingly, we grant plaintiffs' motion to compel the testimony of Mooney about his conversations with Smyres regarding the Disclosure provided to plaintiffs in 2008.[1]

III. CONCLUSION

For the reasons stated above, plaintiffs' motion to compel (Docket # 108) is granted.

SO ORDERED.

Dated: May 7, 2014
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[1] Plaintiffs request in passing that they be awarded attorney's fees pursuant to Fed. R. Civ. P. 37(a)(5)(A). See Pl. Mem. at 9. We deny this request without prejudice as neither plaintiffs nor defendants have briefed the applicability of this rule. If plaintiffs wish to pursue this request, they may do so either by formal motion or letter within 14 days. Any request should include an itemization of the fees sought.