# BAILEY CAVALIERI LLC

ATTORNEYS AT LAW

One Columbus    10 West Broad Street, Suite 2100    Columbus, Ohio  43215-3422
telephone 614.221.3155    facsimile 614.221.0479
www.baileycavalieri.com

Direct Dial:  614.229.3211
Email: Tiffany.Miller@BaileyCavalieri.com

March 23, 2015

Via ECF and Fax
The Honorable Gabriel W. Gorenstein
United States District Court
500 Pearl Street
New York, NY 10007

Re:    *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 1:13-cv-00816-WHP-GWG

Your Honor:

This letter is sent to respond to Plaintiffs' March 19 letter (Docket No. 245) in which they, once again, seek to reopen and conduct new discovery.

On March 10, Defendants were served with a new discovery request seeking entirely new discovery on 23 additional titles for which there are no stated claims. After making various inquiries with Plaintiffs' counsel, attempting to understand the genesis of the requests and possible justifications, Defendants confirmed this is entirely new discovery and that Plaintiffs are unable (or unwilling) to supply information to reasonably justify re-opening discovery.

A recitation of relevant events and docketed items leading up to this new discovery request is useful to the evaluation:

● On Oct. 10, 2014, the Court ordered "there are not to be any new discovery requests." (Docket No. 159 at 11.)

● Then-pending written discovery was ordered to be completed by Oct. 31, 2014.

● Nearly three months after fact discovery was finalized, on Jan. 23, 2015, Plaintiffs solicited the Court to reopen fact discovery in connection with one of Plaintiffs' agents having purchased a copy of *one* title (Krugman—*International Economics*) from BDB that Plaintiffs now allege to be a counterfeit. Based on that one purchase, Plaintiffs sought to reopen discovery into *all* of BDB's book sales. (Docket No. 199.)

● On Jan. 28, 2015, the Court, although "reluctant to reopen fact discovery," allowed Plaintiffs to proceed with some limited discovery on that one title

(Krugman). The application to reopen discovery was granted only "for the limited purpose of obtaining discovery as to the new title." (Docket No. 217.)

● On Feb. 2, 2015, Defendants responded to Plaintiffs' Jan. 28 discovery request to identify its supplier of the Krugman title. As part of that, Defendants also identified *every other* supplier from whom BDB had purchased that title, dates of purchase, and identified every sale of that title. Defendants also identified the supplier (Tichenor) who had supplied the specific suspected counterfeit copy at issue.

● On Feb. 3, 2015, Plaintiffs solicited the Court's permission to engage in further fact discovery to learn the names of *other* titles that BDB may have purchased from Tichenor (the supplier of the suspected Krugman book). Plaintiffs stated the reason they needed this information was to inform themselves as to what other potential counterfeit titles that supplier, Tichenor, might be selling.

● On Feb. 10, 2015, the Court ordered it would allow some additional but "very limited" discovery "that would be appropriate to allow plaintiffs to inquire into the scope of the counterfeiting from the Krugman supplier." (Docket No. 221.) The Court ordered a specific set of information to be produced.

● On Feb. 17, 2015, Defendants produced *all* of the information required by the Court's Feb. 10, 2015 order and offered to make all sequestered Tichenor books available for inspection at Plaintiffs' convenience.

● On March 2, 2015, Plaintiffs conducted an inspection of all unsold copies of books in BDB's possession that were sourced from Tichenor. This included copies of 20 titles sourced from Tichenor (including the Krugman title). Following that inspection, Plaintiffs alleged viewing counterfeit copies of 4 of the titles inspected (one of the 4 was the Krugman title).

● On the evening of March 10, 2015, Plaintiffs served a new discovery request, seeking new discovery (including sales information) about 23 titles for which no claims have ever been stated and that have never been at issue in this case. With that discovery request, Plaintiffs referenced a March 9 inspection of books, regarding which defense counsel had no knowledge.

● On March 11, 2015, defense counsel emailed Plaintiffs' counsel requesting an explanation of the basis of allegations related to the new 23 titles—specifically asking for an explanation of the March 9 inspection, which inspection had nothing to do with BDB or any of its books.

● On March 12, 2015, Plaintiffs' counsel replied to our March 11 email inquiry but answered none of the questions asked.

● On Sunday, March 15, 2015, we wrote again to Plaintiffs' counsel and reiterated the same questions about the March 9 inspection.

● On March 16, 2015, Plaintiffs' counsel finally confirmed that their March 9 inspection (from which their new list of 23 books apparently evolved) was an inspection of books in the possession of Tichenor. Based on counsel's comments and the information produced, it then became understood that Plaintiffs are seeking to justify new discovery on 23 new titles based on suspected counterfeit books found within *Tichenor's* possession (not based on any infringing activity by BDB).

● On March 18, 2015, we alerted Plaintiffs' counsel that Defendants would not engage in the requested new discovery, and Plaintiffs' counsel then requested a meet and confer.

● On March 19, 2015, counsel held a telephonic meet and confer. During that conference, Plaintiffs' counsel confirmed that the bases for seeking the new discovery is (1) that they inspected books in the possession of Tichenor (the supplier of the Krugman title) and had found some books in Tichenor's possession they suspect to be counterfeits and (2) a list provided by Tichenor of titles sold to BDB *over the past three years*. When defense counsel asked (multiple times during the conference) whether Plaintiffs have collected any evidence of actual infringing activity by BDB, including any evidence of selling an alleged counterfeit copy of those 23 titles, Plaintiffs' counsel failed to identify any such evidence but also proclaimed they do not believe they have an obligation to share that information.

● On the evening of March 19, Plaintiffs filed a letter with the Court raising this dispute.

**Corrections to Certain Comments in Plaintiffs' Letter**

There are items mentioned in Plaintiffs' letter that are not correct and significant enough to bear correction.

1. Plaintiffs wrongfully suggest that Defendants resisted, following the Court's Feb. 10 order, the disclosure of information as to titles purchased from Tichenor. *This is blatantly false.* The Court ordered Defendants to produce documents reflecting its purchases of books from Tichenor 60 days before and 60 days following Defendants' acquisition of the Krugman title. (Docket No. 221 at 2.) That is *precisely* what Defendants did. On Feb. 17, Defendants produced copies of

all invoices listing *every single title* Defendants purchased from Tichenor during that 120-day period. That information was not limited to just the Krugman title. During the recent meet and confer, we reiterated to Plaintiffs' counsel that they were given complete information of all titles purchased from Tichenor during that period, in compliance with the Court's Feb. 10 order. We cannot comprehend why Plaintiffs are now suggesting any deficiency. No allegation of such deficiency was raised during the meet and confer.

     2. On March 2, 2015, Plaintiffs inspected *all* sequestered copies of books sourced from Tichenor. Nothing was left out, "conveniently" or otherwise.

     3. While Plaintiffs allege they found 3 more suspected counterfeits during their March 2 inspection of Defendants' books, what Plaintiffs fail to mention is that, for 2 of those 3 titles, Defendants have not sold any of them (hence, no infringing activity). Had Plaintiffs bothered to review the information Defendants produced to them on Feb. 17 (showing all titles purchased from Tichenor and how many copies of each), Plaintiffs would have seen that the number of books purchased is identical to the number of unsold books provided for inspection. Even if those books are counterfeit (merely an allegation), there is no possibility of an unlawful distribution because those books remain unsold.

     4. Plaintiffs stated that they contacted Tichenor, gathered information from Tichenor, and apparently inspected several books owned by Tichenor. Defendants were excluded from this process. Defendants were given no notice, did not participate, and only learned of it after the fact. Tichenor apparently provided Plaintiffs with records of books sold to BDB during the past three years, and also allowed Plaintiffs to inspect copies of some books currently in Tichenor's possession. The Court's Feb. 10 order limited new discovery to the 120-day period (recent purchases from Tichenor) as mentioned above. But Plaintiffs' new discovery is seeking information on titles that BDB may have purchased from Tichenor as long as three years ago.

     5. Plaintiffs unfairly characterize the nature of the limited additional discovery this Court allowed by its Feb. 10 order. The Court certainly knows the meaning and nature of its own order. Defendants did abide faithfully and precisely to what the Court ordered. This Court stated three sets of information that were be provided, and Defendants fully provided all of those. This included providing documents reflecting Defendants' purchase/shipment of books "from the supplier" (Tichenor) made during that 120-day period. Defendants produced those documents, revealing all books purchased. But Plaintiffs now argue that the Feb. 10 order re-opened discovery into all time periods and they also want to pursue sales information (whereas the limited additional discovery was limited to sourcing).

6. Defendants did not "string" Plaintiffs along for eight days. Defense counsel immediately attempted to reach out and communicate with Plaintiffs' counsel to understand the genesis of the new discovery requests to make an informed decision on how to respond. It took several days before Plaintiffs answered the questions posed. Defense counsel avoided giving a knee-jerk reaction to the new discovery request, by first engaging in some informed dialogue.

**The New Discovery is Not Relevant to Any Claim or Defense in this Action.**

The new discovery requests are premised on sales by Tichenor dating back three years. These really seem to be legal issues that should be pursued as between Plaintiffs and Tichenor—they do not relate to any sale or distribution by Defendants.

But the bottom line is that the request to reopen discovery on these 23 new titles has no merit because there are no stated claims in this case with respect to these 23 titles.

Although the Court has, in the past, show leniency on the breadth of discovery, now that discovery is closed there is no good reason to show the same leniency to pursue information that is definitely not relevant to this case; that is, into works on which there are no claims stated whatsoever.

The Southern District of New York has held, many times, that a copyright infringement case requires the identification and the pleading of those specific works upon which the claims are stated. A plaintiff may not proceed on a generic notion of infringement and leave unstated the identification of the exact works on which claims are being stated.

This Court has outright dismissed copyright infringement claims to the extent those claims either failed to identify the works at issue or attempted to leave the claim "open-ended" for the prospect of later discovering other works to add to the list (which is exactly what Plaintiffs have been attempting to do throughout discovery in this case). For example:

Recently in *Palmer Kane LLC v. Scholastic Corp.,* 2014 U.S. Dist. LEXIS 44881 (SDNY March 31, 2014), the plaintiff alleged that the list of works provided with its complaint was not exhaustive and sought to pursue open-ended copyright infringement claims based on a supposed "broader pattern of infringing activity." Much like this case, the plaintiff there tried to justify its failure to identify each specific copyrighted work (photographs) on which it wanted to base a claim because

of a belief that defendants were concealing that information. This Court rejected that approach:

> "[T]he complaint does not properly specify which photographs are at issue in the case.
>
> [Plaintiff] asserts that Exhibit A does not contain an exhaustive list of the photographs covered by copyrights that were infringed by [defendant]. As a result, [defendant] cannot know all of the works that [plaintiff] claims it infringed. *Id.* at 8–9.
>
> [Plaintiff] still fails to allege which works were infringed, so the complaint would still be dismissed. *Id.* at *11.

Also, in *Plunket v. Estate of Dame Jean Conan Doyle*, 2001 U.S. Dist. LEXIS 2001 (SDNY Feb. 22, 2001):

> The complaint must give "fair notice of the claim asserted" to allow defendant "to answer and prepare for trial." In cases involving copyright infringement, courts in this Circuit interpret "fair notice" as requiring the plaintiff allege: (1) which specific original works are the subject of the copyright claim . . . .
>
> The Court finds that plaintiff fails to specify which works are at issue in this case. Plaintiff provides a multi-page schedule of the works . . . but contends in her Complaint that her copyright claims are not limited to these works. As a result, plaintiff has not provided a list of the works potentially at issue in this case and thus fails to meet the first *Kelly* requirement. *Id.* at *12–14.

In *Lefkowitz v. John Wiley & Sons, Inc.*, 2014 U.S. Dist. LEXIS 75650 (SDNY June 2, 2014):

> [P]laintiff' devotes an entire section to allegations regarding Defendant's pattern of infringement. *Id.* at *11
>
> The Court is not, however, bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions. *Id.* at * 17.
>
> A properly pleaded copyright infringement claim must allege which specific original works are the subject of the copyright claim. *Id.* at *18.
> To the extent that Plaintiff seeks to assert copyright infringement claims for works not listed . . . the Court . . . dismisses that portion of the [first amended complaint]. *Id.* at *19–20.

And in *Cole v. John Wiley & Sons, Inc.*, 2012 U.S. Dist. LEXIS 108612 (SDNY Aug. 1, 2012):

> Plaintiff merely claims that "upon information and belief, a reasonable opportunity for further investigation and discovery will reveal evidence that Defendant Wiley made unauthorized uses of his images.
>
> Courts have repeatedly rejected the use of the type of conclusory and vague allegations pleaded by Plaintiff as a substitute for allegations that specify the original works that are the subject of a copyright claim.
>
> [I]t is also insufficient to list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works. *Id.* at *36–37

Plaintiffs filed their complaint on Feb. 4, 2013. They then filed a First Amended Complaint on April 24, 2013. (Docket No. 16.) No further amendments were ever pursued, and discovery is now closed. The First Amended Complaint states copyright infringement claims on 82 specific works identified in Exhibits A and B of the First Amended Complaint, and defines those 82 works as the "Plaintiffs' Authentic Works" for which the claims are pleaded. That defined set of works not open-ended and does not seek to leave room for the addition of other unidentified (or later to be identified) titles. And above SDNY authority confirms it is forbidden to leave these causes of action open to later assert claims on unlisted works.

At the infancy of this case, Defendants did not move to dismiss the complaint because the First Amended Complaint did identify 82 specific works for the stated claims. The First Amended Complaint does not even indicate that the list of works was meant to be open-ended or subject to additions. It was only at a later stage of this case, well into discovery, that Plaintiffs' counsel took a position they might attempt to pursue claims on other works—works not pleaded and for which no claims are stated.

The pleadings and discovery are closed. Dispositive motions are fully briefed. This case is on the brink of trial. There is no right or basis for now allowing Plaintiffs to add brand-new claims or allowing new discovery on works for which no claim was ever pleaded.

**Plaintiffs Have Supplied Nothing to Substantiate the Reopening of Discovery.**

When this Court granted limited new discovery on the Krugman title, in that instance, Plaintiffs at least substantiated the request with some information indicating they might be able to evidence an actual sale by BDB of an alleged counterfeit copy. During the parties' meet and confer, defense counsel asked whether Plaintiffs could provide similar substantiation as to any book on this new list of 23 titles. Plaintiffs' counsel refused to answer the question directly but at least hinted they have no information to prove any infringing sales.

One can only conclude that Plaintiffs either do not have information in hand to substantiate an allegation of infringement on these 23 new titles, or they are improperly withholding it. Either way, while Plaintiffs are unable to offer information by which they could properly base an infringement claim, the Court should not take the drastic step of reopening of discovery. To do so is to allow Plaintiffs to set forth on a fishing expedition.

**Allowing More New Discovery *Will* Cause Prejudice and Delay.**

Allowing this new discovery *will* cause prejudice to Defendants and delay this case significantly. During the meet and confer, Plaintiffs' counsel outright stated their expectation that, after they pursue new written discovery on the 23 titles, they further intend to demand additional depositions of fact witnesses. They also intend to prepare and issue new expert witness reports and update their so-called "roadmap."

If the Court allows Plaintiffs to move forward with new discovery on 23 new titles, Defendants would also *need* to re-depose certain of Plaintiffs' witnesses and experts, and conduct further written discovery of their own.

Allowing this new discovery will also affect the pending dispositive motions. Defendants' motion for summary judgment largely pursues arguments to eliminate works from being litigated based on a lack of evidence of infringing activity. Plaintiffs have all but conceded they do not have information to evidence infringing activity on these new 23 titles, but rather will ask the Court to presume "guilt by association" based upon counterfeits found in the possession of a third-party source (Tichenor). Dispositive motions will have to be revisited and resubmitted if the Court is apt to allow Plaintiffs to pursue more titles.

To allow this new discovery will have the effect of pushing the reset button on the case schedule. It will reopen an extensive amount of new discovery and require rebriefing of Defendants' dispositive motion.

**Defendants' Proposal—In the Alternative**

Defendants contend it would be improper to allow the requested new discovery. Defendants request the Court to reject the request.

However, if the Court is apt to grant even some limited amount of further discovery to satisfy Plaintiffs, Defendants propose it should be strictly limited as follows: that Defendants be required to produce *only* a list of those sales of books that Defendants' sourced from Tichenor during the aforementioned 120-day period AND only for those titles (four) that Plaintiffs identified during their March 2 inspection of BDB's books as being suspected counterfeits.

Respectfully Submitted,

*Tiffany C. Miller*

Tiffany C. Miller