UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JOHN WILEY & SONS, INC. et al.,                 :

                                                :

                         Plaintiffs,            :         REPORT AND
                                                         RECOMMENDATION
                                                :
              -v.-
                                                :         13 Civ. 816 (WHP) (GWG)
BOOK DOG BOOKS, LLC et al.,                      :

                                                :

                         Defendants.            :
--------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     John Wiley & Sons, Inc. ("Wiley"), Cengage Learning, Inc. ("Cengage"), and Pearson

Education, Inc. ("Pearson") filed suit against Book Dog Books, LLC and its owner and chief

executive officer Philip Smyres alleging various claims, including a claim for breach of contract.

Cengage and Pearson (hereinafter "plaintiffs") have filed a motion for partial summary judgment

on their breach of contract claim.[1]  For the reasons stated below, plaintiffs' motion should be

granted in part and denied in part.

---

[1] See Plaintiffs' Motion for Partial Summary Judgment, filed Jan. 26, 2015 (Docket # 200); Plaintiffs' Local Rule 56.1 Statement of Undisputed Fact, filed Jan. 26, 2015 (Docket # 201); Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, filed Jan. 26, 2015 (Docket # 202) ("Pl. Mem."); Declaration of Julie C. Chen, filed Jan. 26, 2015 (Docket # 204) ("Chen Decl."); Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed Feb. 26, 2015 (Docket # 225) ("Def. Mem."); Defendants' Response to Plaintiffs' Rule 56.1 Statement of Facts [Docket No. 201], filed Feb. 26, 2015 (Docket # 226) ("Def. 56.1"); Plaintiffs' Reply Memorandum of Law in Support of Motion for Partial Summary Judgment, filed Mar. 6, 2015 (Docket # 231) ("Pl. Reply"); Plaintiffs' Response to Defendants' Additional Paragraphs Stating Material Facts as to Which it is Contended There Is a Genuine Issue for Trial, filed Mar. 6, 2015 (Docket # 232) ("Pl. 56.1 Reply").

I.      BACKGROUND

Unless otherwise stated, the following facts are either not in dispute or reflect defendants' version of facts as supported by admissible evidence.

In 2007, defendants were sued by several publishers, which included plaintiffs, for claims involving, inter alia, copyright and trademark infringement.  See Complaint, filed Oct. 2, 2007 (Docket # 1 in Cengage Learning Inc. et al. v. Buckeye Books et al., No. 07 Civ. 8540 (S.D.N.Y.)) ("2007 Compl."), ¶¶ 98-185.  The parties resolved the litigation through settlement and entered into a written agreement dated July 11, 2008.  See Settlement Agreement and Mutual Releases (annexed as Ex. 1 to Chen Decl.) ("Settlement Agreement").

The Settlement Agreement requires, among other things, that defendants pay plaintiffs a sum of money and that defendants stop the sale and importation into the United States of any pirated or "foreign made non-U.S." editions of plaintiffs' textbooks.  Id. ¶ 5.  The Settlement Agreement contains a Choice of Law and Forum Selection clause, which provides:

> This Agreement shall in all respects be construed in accordance with and governed by the laws of the State of New York without regard to principles of conflicts of law.  The parties hereby consent to the exclusive jurisdiction of the state courts in the State of New York over any action, claim, controversy, dispute, lawsuit, motion or proceeding arising out of or related in any way to this Agreement ("Related Dispute").  The parties further agree that any such Related Dispute shall be heard in the federal or state courts located in the State of New York, and expressly waive any objection as to venue and any claim of inconvenient forum with respect to a Related Dispute being heard within the State of New York.

Id. ¶ 19 (the "Forum Selection Clause").

On December 18, 2012, the defendants in the instant suit filed a lawsuit against the plaintiffs in the Southern District of Ohio.  See Complaint, filed Dec. 18, 2012 (Docket # 1 in Book Dog Books, LLC v. Cengage Learning, Inc. et al., No. 12 Civ. 1165 (S.D. Ohio) (the

"Ohio Action")) ("Ohio Complaint").  In the Ohio Complaint, defendants at some points refer to the Settlement Agreement.  Id. ¶¶ 27, 29.  Specifically, defendants allege that plaintiffs' "failure or refusal to provide [defendants] with information to substantiate [plaintiffs'] current copyright accusations is a breach of the 2008 settlement contract."  Id. ¶ 29.  Count Two of the complaint alleges a breach of "binding contractual agreements . . . including the 2008 settlement agreement."  Id. ¶¶ 57, 59-60.  The complaint attaches as Exhibit 1 a copy of the Settlement Agreement.  See id. ¶ 57.  The complaint also includes claims for declaratory judgment, promissory estoppel, antitrust, and defamation that do not directly relate to the Settlement Agreement.  Id. ¶¶ 47-55, 62-88.

At his deposition in this case, Smyres stated that, in his layman's understanding of the Forum Selection Clause, he believed that "any disagreement [related to the Settlement Agreement] would be fought over in New York state."  Deposition of Philip Smyres, dated Nov. 20, 2013 (annexed in part as Ex. 2 to Chen Decl.), at 182.  He also acknowledged that some of the claims alleged in the Ohio Complaint "revolved around the 2008 settlement" while contending that others did not.  Deposition of Philip Smyres, dated Nov. 20, 2013 (annexed in part as Ex. 1 to Pl. 56.1 Reply), at 190.

At the same time that defendants filed their complaint in the Ohio Action, they also filed a motion for a temporary restraining order ("TRO") that would require plaintiffs to "allow [defendants] to order/purchase publications from [plaintiffs] under the status quo of how that supply relationship has been operating up until July 2012."  Plaintiffs' Motion for a Temporary Restraining Order, filed Dec. 18, 2012 (Docket # 2 in the Ohio Action), at 1.  The court held an evidentiary hearing on December 28, 2012.  See Minute Entry for Proceedings Held Before Judge James L. Graham, filed Dec. 28, 2012 (Docket # 18 in the Ohio Action); Transcript of

TRO/Preliminary Injunction Hearing, filed Feb. 6, 2013 (Docket # 19 in the Ohio Action).

Following the hearing, the court denied defendants' request for a temporary restraining order.

See Opinion and Order, filed Jan. 4, 2013 (Docket # 15 in the Ohio Action), at 1.  On January 3,

2013, defendants filed an amended complaint in the Ohio Action.  See Amended Complaint,

filed Jan. 3, 2013 (Docket # 14 in the Ohio Action).  The amended complaint did not allege the

breach of contract claim contained in the original complaint.  See id. at 6-9.

Plaintiffs filed the instant action on February 4, 2013, alleging claims that included

copyright and trademark infringement.  See Complaint, filed Feb. 4, 2013 (Docket # 1), ¶¶ 72-

130.  Plaintiffs included a claim for breach of contract, id., ¶¶ 119-23, alleging that defendants

breached the Forum Selection Clause by asserting certain claims in the United States District

Court for the Southern District of Ohio, id. ¶ 123.  This claim is also contained in plaintiffs' first

amended complaint, see First Amended Complaint, filed Apr. 24, 2013 (Docket # 16),

¶¶ 102-06, and second amended complaint, see Second Amended Complaint, filed May 27, 2015

(Docket # 263), ¶¶ 97-102.

On May 8, 2013, defendants filed a motion to transfer the instant case to the Southern

District of Ohio.  See Motion to Transfer, filed May 8, 2013 (Docket # 19).  On June 21, 2013,

Judge Pauley determined that the Forum Selection Clause was mandatory and enforceable, and

denied defendants' motion to transfer this action.  Scheduling Order, filed June 21, 2013 (Docket

# 24); see Transcript of Proceedings Held on June 21, 2013, filed July 9, 2013 (Docket # 27), at

20-24.

On September 5, 2013, the court in the Ohio Action transferred the case to the Southern

District of New York.  See Opinion and Order, filed Sept. 5, 2013 (Docket # 40 in the Ohio

Action) ("Transfer Order"), at 3.  The case was captioned Book Dog Books, LLC v. Cengage

4

Learning, Inc. et al., No. 13 Civ. 6413 (S.D.N.Y.) (the "Transferred Action").  Ultimately,

defendants voluntarily dismissed that action.  See Plaintiffs' Notice of Voluntary Dismissal

[Without Prejudice], filed Nov. 7, 2014 (Docket # 88 in the Transferred Action).

   Plaintiffs now move for summary judgment on their breach of contract claim.

## II.   LAW GOVERNING SUMMARY JUDGMENT MOTIONS

   Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is

appropriate when "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

   In determining whether a genuine issue of material fact exists, "[t]he evidence of the

non-movant is to be believed," and the court must draw "all justifiable inferences" in favor of the

non-moving party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970)).  Nevertheless, once the moving party has shown that there is no genuine issue as to any

material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must

come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))

(emphasis and additional citation omitted), and "may not rely on conclusory allegations or

unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citation

omitted).  In other words, the nonmovant must offer "concrete evidence from which a reasonable

juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.  Where "the nonmoving

party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to

'make a showing sufficient to establish the existence of an element essential to [its] case.'"

Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (alteration

in original).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff

fails to come forward with enough evidence to create a genuine factual issue to be tried with

respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996)

(citing Anderson, 477 U.S. at 247-48).

III.    DISCUSSION

To recover for a defendant's breach of contract under New York law, a plaintiff must

prove by a preponderance of the evidence "(1) the existence of a contract between itself and that

defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the

contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach."

Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011) (citations

omitted); see also Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806

(2d Dep't 2011) (same); Clearmont Prop., LLC v. Eisner, 58 A.D.3d 1052, 1055 (3d Dep't 2009)

(same).

Generally, "a motion for summary judgment may be granted in a contract dispute only

when the contractual language on which the moving party's case rests is found to be wholly

unambiguous and to convey a definite meaning."  Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526

F.3d 63, 68 (2d Cir. 2008) (citing Compagnie Financiere de CIC et de L'Union Europeenne v.

Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 157-58 (2d Cir. 2000)); accord Zurich

Am. Ins. Co. v. ABM Indus., Inc., 397 F.3d 158, 164 (2d Cir. 2005).  "A contract is not

ambiguous simply because the parties have urged conflicting interpretations."  Reyes v.

Metromedia Software, Inc., 840 F. Supp. 2d 752, 755 (S.D.N.Y. 2012) (citing Sayers v.

6

Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir. 1993)).

"'The question of whether the language of a contract is ambiguous is a question of law to be decided by the Court.'" Malmsteen v. Universal Music Grp., Inc., 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (quoting Compagnie Financiere, 232 F.3d at 158). Similarly, "'[t]he proper interpretation of an unambiguous contract is a question of law for the court.'" Reyes, 840 F. Supp. 2d at 755 (quoting Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002)) (additional citations omitted); accord Bank Leumi USA v. Ehrlich, 2015 WL 1609854, at *6 (S.D.N.Y. Mar. 23, 2015). If the contractual language at issue is ambiguous, "summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." Topps, 526 F.3d at 68 (citing Compagnie Financiere, 232 F.3d at 158).

Defendants oppose plaintiffs' motion for partial summary judgment by making four arguments: (1) that they were fraudulently induced into entering the Settlement Agreement, making the contract voidable, Def. Mem. at 15-18; (2) that plaintiffs failed to adequately perform their own obligations under the Settlement Agreement, id. at 18-20; (3) that there is a genuine dispute as to whether defendants breached the Settlement Agreement or, alternatively, that defendants substantially performed their obligations under the agreement, id. at 20-23; and (4) that there is a genuine dispute as to whether the losses incurred by plaintiffs can "truly be attributed to a breach of contract," id. at 23-24.

We discuss each argument in turn.

7

A.     Fraudulent Inducement

Defendants argue that the Settlement Agreement is voidable because plaintiffs fraudulently induced defendants into entering into the agreement.  Id. at 15-18.  Defendants' claim for fraudulent inducement is based upon paragraph 11 of the Settlement Agreement, which provides:

> Publishers [referring to the plaintiffs in the instant suit] shall notify [defendants] and their attorney in writing of any known Pirated Edition suppliers within a reasonable time after the Publishers' discovery of any such suppliers.  It is agreed and understood that Publishers[] are under no obligation to notify [defendants] under this provision if any such notification could interfere with any current or anticipated investigations of any known or suspected pirated-edition suppliers.  No failure by the Publishers to notify [defendants] shall diminish or affect the obligations or liabilities of [defendants] hereunder.  The Publishers' obligations pursuant to this provision shall expire thirty-six (36) months after the Effective Date.

Settlement Agreement ¶ 11 (the "Notice Provision").

The defendants have supplied uncontroverted evidence that, as of the date of the Settlement Agreement, plaintiffs were aware of some sources of counterfeit books.  In 2006, Wiley and Pearson sued two book suppliers — Booksvalue.com, Inc. and Mark Blackerby, in the Northern District of Alabama, alleging that they were the suppliers of counterfeits. See Complaint, filed Nov. 1, 2006 (Docket # 1 in John Wiley & Sons, Inc. et al. v. Booksvalue.com, Inc. et al., No. 06 Civ. 2314 (N.D. Ala.)), ¶¶ 49-106.  Following the execution of the Settlement Agreement, various employees of plaintiffs have conceded that, during the 36-month period contemplated by the Notice Provision, they became aware of several other suppliers of counterfeit books.  See Deposition of William Sampson, dated June 12, 2014 (annexed in part as Ex. 8 to Def. 56.1) ("Sampson Dep."), at 35-40; Deposition of John Garry, dated June 11, 2014 (annexed in part as Ex. 8 to Def. 56.1) ("Garry Dep."), at 80-81; Plaintiff

Cengage Learning, Inc.'s Response to Defendants' Supplemental Interrogatories, dated Nov. 11, 2013 (annexed as Ex. 5 to Def. 56.1) ("Cengage Resp."), at Response to Interrogatory No. 4; Plaintiff Pearson Education, Inc.'s Response to Defendants' Supplemental Interrogatories, dated Nov. 11, 2013 (annexed as Ex. 6 to Def. 56.1) ("Pearson Resp."), at Response to Interrogatory No. 4; Plaintiff John Wiley & Sons, Inc.'s Response to Defendants' Supplemental Interrogatories, dated Nov. 11, 2013 (annexed as Ex. 7 to Def. 56.1) ("Wiley Resp."), at Response to Interrogatory No. 4.  Defendants have also pointed to evidence that employees of plaintiffs and Wiley testified at their depositions that, in general, they do not share information about known suppliers of pirated editions of their textbooks.  See Deposition of John LaVacca, dated Apr. 4, 2014 (annexed in part as Ex. 8 to Def. 56.1), at 33-34; Deposition of Lisa Suarez, dated July 18, 2014 (annexed in part as Ex. 8 to Def. 56.1), at 38.

Defendants assert that they "insisted" that the Settlement Agreement contain "a provision imposing an affirmative duty on Plaintiffs to notify and disclose to Defendants any known or discovered suppliers of counterfeit (pirated) books."  Def. Mem. at 16.  Defendants argue that they would not have entered into the agreement without this provision.  Id.  Thus, defendants argue they were fraudulently induced by plaintiffs into the Settlement Agreement because plaintiffs knew that defendants would only enter into settlement if they included the Notice Provision and that plaintiffs included the provision with the intent not to perform.  See id. at 15-17.  "[W]here a party is fraudulently induced to enter into a contract, the contract is voidable at the instance of the defrauded party."  Lumbermens Mut. Cas. Ins. Co. v. Darel Grp. U.S.A. Inc., 253 F. Supp. 2d 578, 582 (S.D.N.Y. 2003) (citing Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 31 (2d Cir. 2001)).

"To establish a valid defense of fraudulent inducement, [the defendants] must establish:

(1) a misrepresentation of an existing material fact; (2) made with knowledge of its falsity; and (3) with an intent to defraud; (4) that induces reasonable reliance; and (5) damages the defendant[s]." Camofi Master LDC v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 474 (S.D.N.Y. 2006) (citations omitted); accord VoiceAge Corp. v. RealNetworks, Inc., 926 F. Supp. 2d 524, 531 n.3 (S.D.N.Y. 2013); MM Arizona Holdings LLC v. Bonanno, 658 F. Supp. 2d 589, 593 (S.D.N.Y. 2009); see also Sogeti USA LLC v. Whirlwind Bldg. Sys., Inc., 274 F. App'x 105, 107 (2d Cir. 2008) ("To establish fraudulent inducement under New York law, [defendant] must, among other things, 'prove a misrepresentation or a material omission of fact which was false and known to be false by [plaintiff].'") (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996)).

"'Fraudulent inducement involves a misrepresentation of present fact, not of future intent, collateral to a contract and used to induce the defrauded party to sign the contract.'" Kriegel v. Donelli, 2014 WL 2936000, at *10 (S.D.N.Y. June 30, 2014) (emphasis in original) (internal quotation marks and citation omitted). Notably, "a claim for fraudulent inducement does not arise simply because a party entered into a contract while simultaneously intending to breach it." Enzo Biochem, Inc. v. PerkinElmer, Inc., 2013 WL 5943987, at *5 (S.D.N.Y. Oct. 28, 2013) (citing 767 Third Ave. LLC v. Greble & Finger, LLP, 778 N.Y.S.2d 157, 158 (2004)); see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) ("[F]acts [that] amount to little more than intentionally-false statements by [a party] indicating [its] intent to perform under the contract . . . . [are] not sufficient to support a claim of fraud under New York law.") (citation omitted). As one court put it, it is not enough to show a "mere unfulfilled promissory statement"; rather, "a party must show that the promisor had a preconceived and undisclosed intention that the promise will not be performed, . . . and adduce

facts above and beyond mere non-performance." Camofi, 452 F. Supp. 2d at 474 (internal citations and quotation marks omitted).

Here, defendants have not marshaled evidence of a "preconceived and undisclosed intention" by plaintiffs not to provide the notifications required by paragraph 11 of the Settlement Agreement.  Defendants argue that "deposition testimony as to [plaintiffs'] internal company policies against sharing that type of information shows they never intended to fulfill [their] promise." Def. Mem. at 16.  The deposition testimony cited by defendants, however, would not allow a reasonable jury to find that plaintiffs harbored an intent not to perform at the time they entered into the Settlement Agreement.  Instead, the questions and answers at the depositions were about Pearson's and Wiley's general practices in sharing information about investigations into counterfeit books.  See LaVacca Dep. at 33-34.; Suarez Dep. at 38-39.  No reasonable juror could conclude that the mere existence of an internal company policy against sharing such information is evidence that plaintiffs had no intention of giving the notice required by paragarph11.  See generally MM Ariz. Holdings, 658 F. Supp. 2d at 594 ("At the summary judgment stage, a party must come forward with evidence to support the particularized allegations of fraudulent inducement.").

Accordingly, defendants have failed to show that there is a genuine dispute as to whether plaintiffs fraudulently induced defendants to enter into the Settlement Agreement.  See, e.g., ADP Dealer Servs., Inc. v. Planet Automall, Inc., 2012 WL 95211, at *7 (E.D.N.Y. Jan. 12, 2012) (no genuine dispute of material fact as to fraudulent inducement defense where defendant failed to identify any "hard evidence" in support).

B.    <u>Plaintiffs' Substantial Performance</u>

Defendants argue that plaintiffs' motion should be denied because plaintiffs cannot show that they performed their own obligations under the contract.  Def. Mem. at 18; <u>see also</u> <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F.3d 793, 799 (2d Cir. 2011) ("Under New York law, a breach of contract claim requires proof of . . . adequate performance by the plaintiff . . . ."). Plaintiffs had no significant obligations under the Settlement Agreement other than their obligation to dismiss the underlying litigation, which was required by paragraph 4 of the Settlement Agreement (the performance of which is not disputed), and their obligations under the Notice Provision.

As to the Notice Provision, defendants point to evidence that plaintiffs were aware, during the 36-month notice period, of at least some suppliers of pirated editions and yet gave no notice as required by the Notice Provision.  <u>See</u> Sampson Dep. at 35-40; Garry Dep. at 80-81; Cengage Resp. at Response to Interrogatory No. 4; Pearson Resp. at Response to Interrogatory No. 4; Wiley Resp. at Response to Interrogatory No. 4.  Plaintiffs do not dispute that they were aware of these suppliers, Pl. 56.1 Reply ¶ 10 (noting it is "[u]ndisputed" that the publishers, which include plaintiffs, "were aware, during the 36-month notice period, of <u>several</u> other suppliers of counterfeit books") (emphasis in original); nor do they dispute that they did not provide such notice, <u>see</u> Pl. Reply at 8-10.  Instead, plaintiffs argue that the Notice Provision was not a material term of the Settlement Agreement and that, in any event, plaintiffs cannot be found to have breached the Notice Provision because defendants failed to provide notice of the breach and an opportunity to cure to plaintiffs as required by the Settlement Agreement.  <u>Id.</u>

"Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that

12

party has committed a material breach." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007) (citing Hadden v. Consol. Edison Co. of N.Y., 34 N.Y.2d 88, 96 (1974)). "[F]or a breach of a contract to be material, it must 'go to the root of the agreement between the parties.'" Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997) (quoting Septembertide Pub., B.V. v. Stein & Day, Inc., 884 F.2d 675, 678 (2d Cir. 1989)). Thus, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." Id. (citing Babylon Assocs. v. County of Suffolk, 101 A.D.2d 207, 215 (2d Dep't 1984)). While the question of whether a party has substantially performed "is usually a question of fact," it may be decided on summary judgment "where the inferences are certain." Merrill Lynch, 500 F.3d at 186-87 (citing Anderson Clayton & Co. v. Alanthus Corp., 91 A.D.2d 985 (2d Dep't 1983)).

The question of whether the Notice Provision was a material term is easily resolved because the Settlement Agreement itself addresses the question of whether a breach of plaintiffs' obligations under the Notice Provision excused defendants from further performance under the contract. Specifically, the Notice Provision provides: "No failure by the Publishers to notify [defendants] shall diminish or affect the obligations or liabilities of [defendants] hereunder." Settlement Agreement ¶ 11 (emphasis added). Defendants do not contest that the language of the Notice Provision plainly and unambiguously indicates the parties' intent that plaintiffs' violation of the Notice Provision would not excuse defendants' performance. Instead, they argue merely that the notice "was the major benefit Defendants expected from the Contract." Def. Mem. at 20. Because the Notice Provision is unambiguous, however, it cannot be reinterpreted based on extrinsic evidence of one side's expectations. As the Second Circuit has noted, "[i]n

interpreting an unambiguous contract, . . . the court is not to consider any extrinsic evidence as to the parties' intentions." JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009) (citing Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992); Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)).

   Accordingly, defendants' argument that plaintiffs did not substantially perform their own obligations under the Settlement Agreement should be rejected.[2]

   C.   Defendants' Breach of the Settlement Agreement

   Defendants contend that there is a genuine dispute as to whether they actually breached the Settlement Agreement, and, alternatively, that any breach was immaterial in that defendants substantially performed their obligations under the agreement. Def. Mem. at 20-23.

   Defendants argue that they did not breach the Settlement Agreement because the Ohio Action "has nothing whatsoever to do with the Settlement Agreement." Id. at 22. Defendants assert that they filed suit in Ohio in response to plaintiffs' alleged unlawful denial of access to sales accounts that defendants needed in order to purchase books for the upcoming semester and sought a temporary restraining order "seeking the ability to reopen the accounts and buy books." Id.

   As noted, the Forum Selection Clause provides that the parties consent to the "exclusive jurisdiction" of the New York state courts over any lawsuit "arising out of or related in any way to" the Settlement Agreement. Settlement Agreement ¶ 19. The parties also agreed that any

---

   [2] Plaintiffs also argue that defendants cannot rely on any breach of the Notice Provision of the Settlement Agreement to excuse their nonperformance because defendants did not provide notice of a breach and an opportunity to cure to plaintiffs as required by paragraph 17(b) of the Settlement Agreement. Pl. Reply at 9-10. However, in light of the conclusion reached above, it is unnecessary to reach this issue.

such dispute "shall be heard in the federal or state courts located in the State of New York."  Id.
Defendants' argument that the Ohio Action related to other matters is correct, see, e.g., Ohio
Complaint ¶¶ 62-68, but does not address the fact that part of the Ohio Action related to the
Settlement Agreement.  Count Two of the Ohio Complaint alleged breach of contract, and the
only contract specifically mentioned in that claim is the Settlement Agreement.  See id. ¶¶ 56-61.
Indeed, the complaint asserts that the plaintiffs "breach[ed] . . . the 2008 settlement contract."
Id. ¶ 29.  Thus, at least one of the claims in the Ohio Action falls within the scope of the Forum
Selection Clause, and defendants' failure to abide by the Settlement Agreement's requirement
that they bring the suit in New York was a breach of the Settlement Agreement.

Defendants argument is unavailing for two other reasons.  First, the Forum Selection
Clause is not premised on a party's subjective reasoning or motivation for bringing a particular
dispute.  Second, plaintiffs' breach of contract claim is based on the filing of a lawsuit in Ohio
that is related to the Settlement Agreement, not specifically the effort to seek a temporary
restraining order.

In an argument that is difficult to follow, defendants also contend that the Settlement
Agreement is "explicit" in that defendants only consented to "jurisdiction in the Southern
District of New York in a very narrow fashion: 'strictly for the purpose of enforcing the terms of
this Agreement' and 'for no other purpose.'"  Def. Mem. at 22-23 (quoting Settlement
Agreement ¶ 2).  Defendants, however, cite to the "Consent to Jurisdiction" provision, which is a
separate paragraph in the Settlement Agreement from the Forum Selection Clause.  Under
paragraph 2, defendants "consent[ed] to the Court's jurisdiction strictly for the purpose of
enforcing the terms of this Agreement, including the Injunctive Relief provision herein, and for
no other purpose."  Settlement Agreement ¶ 2.  This provision plainly refers to the defendants'

consent to allow enforcement of the Settlement Agreement as against them in New York.  It cannot reasonably be read to negate the language in the Forum Selection Clause, in which they agree to bring any lawsuit arising out of or related in any way to the Settlement Agreement in New York.

Finally, defendants argue that even if they did breach the Forum Selection Clause, any breach was immaterial and does not give rise to recovery by plaintiffs because defendants "substantially performed their obligations under the 2008 Settlement Agreement."  Def. Mem. at 20.  Defendants also argue that whether a party has substantially performed and the materiality of a breach are generally questions of fact that cannot be determined on a motion for summary judgment.  Id. at 20-21.  Defendants, however, misinterpret the doctrine of substantial performance.  As the cases cited by defendants themselves demonstrate, a party that has breached a contract is excused from its own breach if the other party has failed to substantially perform its obligations under the contract.  See, e.g., Merill Lynch, 500 F.3d at 186 ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach.") (citation omitted).  However, no doctrine excuses a party's own breach merely because that party has substantially performed.  To the contrary, "a claim for damages arising out of a breach of contract may be brought without finding a breach to be material."  Wall St. Entm't, LLC v. BuVision, LLC, 2014 WL 6471706, at *5 (S.D.N.Y. Oct. 31, 2014) (citing Diesel Props S.r.l., 631 F.3d at 52; Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d 283, 290-91 (S.D.N.Y. 2005)).

In sum, there is no genuine dispute of material fact that, by bringing the Ohio Action, defendants breached the Forum Selection Clause of the Settlement Agreement.  At least one case

has found a breach in similar circumstances.  In Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc., 819 F. Supp. 2d 230 (S.D.N.Y. 2011), the defendant alleged that the plaintiff breached a forum selection clause by bringing a lawsuit in a venue other than the one agreed upon by the parties.  Id. at 237-39.  The court found that whether the plaintiff breached the forum selection clause could be resolved on summary judgment because the "only relevant facts — that [the plaintiff] brought this action in Wisconsin and the text of the forum selection clause — are undisputed, and [the plaintiff] has not explained why the language of the clause is ambiguous."  Id. at 238.  For similar reasons, the issue of whether defendants breached the Forum Selection Clause can be resolved on this motion for partial summary judgment.  The text of the Forum Selection Clause is unambiguous and the fact that defendants filed the Ohio Action in Ohio is not in dispute.[3]

     D.     <u>Damages</u>

Plaintiffs assert that they have sustained a total of $55,158.65 in damages, consisting of attorney's fees and expenses.  Pl. Mem. at 8-9; see Chen Decl. ¶ 4.  This amount consists of damages "incurred . . . by having to defend the Ohio Action in Ohio as well as other costs associated with having to litigate to enforce the forum selection provision."  Pl. Mem. at 8.  Plaintiffs' claimed damages fall into three categories.  First, plaintiffs seek $17,080.98 incurred "to retain local Ohio counsel."  Chen Decl. ¶ 4(a).  Second, plaintiffs seek $23,598.75 incurred "to research and fully brief their motion to dismiss or in the alternative to transfer the Ohio case to New York."  Id. ¶ 4(b).  Finally, plaintiffs seek $14,478.92 "in fees and expenses" incurred for

---

[3]  Defendants' efforts to distinguish Versatile on the ground that the forum selection clause in Versatile was broader than the one at issue here, Def. Mem. at 22, is arguably wrong but in any case irrelevant inasmuch as the Ohio Action falls within the scope of the Settlement Agreement's Forum Selection Clause.

plaintiffs and their counsel to travel to Ohio in order to attend a "TRO Hearing of December 28, 2012," and a "June 2013 Mandatory Settlement Conference." Id. ¶ 4(c).

Plaintiffs seemingly point to two sources for their claim of damages: damages based on the fact that defendants breached the Settlement Agreement's Forum Selection Clause, and damages based on a provision of the Settlement Agreement that makes a breaching party liable for costs and attorney's fees incurred by a non-breaching party in pursuing legal action "upon the breach of any obligations" under paragraph 17 of the Settlement Agreement. See Pl. Mem. at 8-9.

As to the first source of damages, we note that there is a split in case law as to whether a party can recover attorney's fees for breach of a forum selection clause under New York law. Some courts find such damages to be inconsistent with the "American Rule" prohibiting an award of attorney's fees while other courts have reached the opposite conclusion. Compare Allendale Mut. Ins. Co. v. Excess Ins. Co. Ltd., 992 F. Supp. 278, 286 (S.D.N.Y. 1998) ("[D]efendants have breached the [forum selection] clause, and are liable to [the plaintiff] for the still uncompensated expenses it incurred defending the [other] action.") (citations omitted); Indosuez Int'l Fin., B.V. v. Nat'l Reserve Bank, 304 A.D.2d 429, 431 (1st Dep't 2003) ("[D]amages may be obtained for breach of a forum selection clause . . . and an award of such damages does not contravene the American Rule that deems attorneys' fees a mere incident of litigation.") (internal citations omitted), with Brown Rudnick, LLP v. Surgical Orthomedics, Inc., 2014 WL 3439620, at *12-15 (S.D.N.Y. July 15, 2014) (denying claim for attorney's fees and litigation expenses resulting from breach of forum selection clause); Versatile, 819 F. Supp. 2d at 241-46 (same).

We need not reach this question here, however, because the Settlement Agreement itself

18

contains a clause that permits a non-breaching party to obtain attorney's fees and costs in the event of a breach.  Paragraph 17 of the Settlement Agreement states in relevant part:

> The parties shall have the right to pursue legal action, including to enforce the terms of this Agreement, upon the breach of any obligations hereunder . . . and the breaching party shall be liable to pay the reasonable costs and attorney's fees incurred by the non-breaching party in pursuing such legal action . . . .

Settlement Agreement ¶ 17(a).  "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."  NetJets Aviation, Inc. v. LHC Comms., LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citations omitted); accord Metro Found. Contractors, Inc. v. Arch Ins. Co., 551 F. App'x 607, 610 (2d Cir. 2014).

Paragraph 17 unambiguously permits an award of attorney's fees for legal action pursued to enforce the Settlement Agreement, which would plainly include legal action pursued in Ohio to enforce the Forum Selection Clause as to any claims in the Ohio Action related to the Settlement Agreement.  Accordingly, we accept that plaintiffs are entitled to their attorney's fees and costs to the extent such fees and costs were caused by the defendants' breach of the Forum Selection Clause.  The problem here is that the Ohio Action raised issues that did not relate in any way to the Settlement Agreement.  For example, defendants claim that they detrimentally relied on plaintiffs' promise to make textbooks available to purchase for the 2013 winter semester.  See Ohio Complaint ¶¶ 62-68.

Notwithstanding that at least some part of the Ohio Action did not relate to the Settlement Agreement, plaintiffs assert that they are entitled to the entirety of their expenses in arranging for local counsel, traveling to Ohio, and briefing motions regarding transferring the case.  See Chen Decl. ¶ 4.  But in light of the fact that the Ohio Action included issues other than

19

defendants' claims relating to the Settlement Agreement, plaintiffs are not necessarily entitled to all of these fees and expenses.  New York law is clear that "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages."  Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2d Cir. 2004) (citations and emphasis omitted); accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52-53 (2d Cir. 2011).  We read paragraph 17 as manifesting the same causation requirement.  The current record, however, does not allow us to distinguish which fees and expenses were directly and proximately caused by defendants' breach of the Forum Selection Clause.  That is, we cannot discern which fees and expenses are attributable exclusively to plaintiffs' efforts to extirpate from the Ohio Action (or transfer to New York) defendants' claims that relate to the Settlement Agreement — in contrast with fees and expenses that plaintiffs expended to oppose or transfer claims that did not relate to the Settlement Agreement.  Accordingly, summary judgment for the damages sought by plaintiffs should be denied.  This denial should be without prejudice to a renewed motion by plaintiffs that presents arguments and evidence as to which fees and expenses are attributable to the efforts plaintiffs made to enforce the Forum Selection Clause with respect to the claims in the Ohio Action that arose out of or related in any way to the Settlement Agreement.[4]

---

[4]  We note that the decision as to the amount of fees and expenses to be awarded to plaintiffs on this claim is a matter that will be determined by the Court, not by a jury.  See, e.g., McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312-16 (2d Cir. 1993).  Thus, the renewed motion need not necessarily be one for summary judgment.

IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment (Docket # 200) should be granted in part and denied in part.  Specifically, plaintiffs' motion should be granted as to defendants' liability for breach of contract and denied without prejudice as to damages.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William H. Pauley III at 500 Pearl Street, New York, New York 10007.  Any request for an extension of time to file objections must be directed to Judge Pauley.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 10, 2015
        New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

21