IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

JOHN WILEY & SONS, INC., et al.,

                Plaintiffs,                    Case No. 1:13-CV-00816-WHP-GWG

                    v.                      Judge William H. Pauley, III

BOOK DOG BOOKS, LLC, et al.,           Magistrate Judge Gabriel W. Gorenstein

                Defendants.

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

       Under Rule 56 of the Federal Rules of Civil Procedure, Defendant Book Dog Books, LLC submits this reply brief to further support its motion for full summary judgment on Counts 4 and 8 and partial summary judgment on Counts 1, 2, 3, 5, and 6 of Plaintiffs' second amended complaint.

       In their opposition, Plaintiffs incorporate by reference a prior memorandum in opposition to Defendants' prior-filed motion for summary judgment,[1] and now seek to add some new points. For the Court's convenience, it only need review this *current* reply brief to view all of Defendants' reply arguments. Everything included in Defendants' prior reply brief is also found herein (along with supplementation to address new material raised by Plaintiffs).

---

[1] Shortly after Defendants filed their initial motion for summary judgment, Plaintiffs filed a second amended complaint to increase the number of infringement claims from 118 to 140 works at issue. In doing so, Plaintiffs also shuffled the ordering of their list of works, completely supplanting all references cited in Defendants' original motion for summary judgment. The addition of 22 new works, plus Plaintiffs' shuffling and renumbering of their list of disputed works, made it necessary for Defendants to rework all references throughout their motion and to file a wholly new motion for summary judgment (rather than a mere supplement).

Respectfully submitted,

s/ Tiffany C. Miller
Tiffany C. Miller (Ohio 0072881)
Bailey Cavalieri LLC
One Columbus
10 West Broad Street, 21st Floor
Columbus, Ohio  43215-3422
Telephone:  (614) 229-3211
Telefax:  (614) 221-0479
tiffany.miller@baileycavalieri.com

Patrick J. Cooney (PC-6158)
Janice Berkowitz (JB-4489)
Ahmuty, Demers & McManus
200 I U Willets Road
Albertson, NY 11507-2200
Telephone: (516) 535-1887
Telefax: (516) 294-5387
patrick.cooney@admlaw.com
janice.berkowitz@admlaw.com

Neil B. Mooney (NM0300)
The Mooney Law Firm, LLC
1911 Capital Circle N.E.
Tallahassee, FL 32308
Telephone: (850) 893-0670
Telefax: (850) 391-4228
nmooney@customscourt.com

Attorneys for Defendants

2

<u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................ 4

II.  FACT CLARIFICATIONS ............................................................................... 7

   A.   Follett Books ............................................................................................ 7

   B.   MBS Books ............................................................................................... 8

III. ARGUMENT ...................................................................................................... 8

   A.   Case Authority Has Been Provided to Confirm the Evidentiary Standard at Trial. ......................................................................................................... 8

   B.   The Miller Declaration is Suitable and Sufficient to Explain the Nature of the Summary Judgment Arguments. ....................................................... 9

   C.   Plaintiffs Do Not Have Even Circumstantial Evidence:  They are Pursuing a Case Built on Theory and Speculation. ................................................ 11

   D.   Plaintiffs' Cited Case Law is Distinguishable from This Case. ................... 14

   E.   The 16 Titles NOT Challenged on Summary Judgment ............................. 18

   F.   The Issue of Infringement vs. Willfulness ................................................. 18

   G.   The Conspiracy Claim ............................................................................. 21

   H.   Importation Statutes ............................................................................... 22

IV. CONCLUSION .................................................................................................. 22

I.    <u>INTRODUCTION</u>

Defendants' motion provided the Court with a precise, title-by-title analysis of entirely missing evidence that would otherwise be needed to prove, at trial, infringement elements on 124 of the works at issue. The analysis is based strictly on Plaintiffs' *own* admissions of what evidence they have disclosed, through discovery, that they possess (and do not possess).

For their infringement claims, at trial Plaintiffs are required to prove all elements of infringement for *each* separate work they seek to bring into issue.[2]  This will require presenting separate and specific evidence at least 140 times during trial. Plaintiffs provide no legal authority for the concept that they might be permitted to bootstrap a finding of infringement on one work for purposes of collecting damages on a totally different work.

There is no genuine question of fact that Plaintiffs will *not* be capable of meeting their burden of proof on 124 of the 140 titles.  Because they do not have that evidence, summary judgment is the appropriate manner to reduce this case down to its real, triable issues.

Plaintiffs have conceded by their discovery responses they have no direct *or* circumstantial evidence that Defendants ever infringed 124 of those titles.[3]

---

[2] After all, damages and infringement liability must ultimately be calculated work-by-work, for each actually work where an infringement was proven.

[3] Plaintiffs wrongly suggest this means that Defendants, by their motion, have conceded to infringement on the other 16 titles. *Not so*. For 16 of the titles at issue, Defendants merely acknowledge there *might* be enough evidence to raise a question of fact for trial. But Defendants do not concede to infringing activity on those other 16 titles. Defendants are merely being reasonable in recognizing that summary judgment is not appropriate where there is at least enough evidence to create a genuine question of fact. But for 124 of the titles, there is no evidence and no genuine question of fact for trial.

Plaintiffs' opposition to summary judgment relies on a supposition that, because Defendants are not seeking summary judgment on 16 of the infringement claims, it somehow automatically (circumstantially) means the other 124 infringement claims are valid. But Plaintiffs do not do supply any witness testimony, affidavit, or even cite to any evidence for any of these 124 titles by which they could either directly or indirectly prove that Defendants ever distributed an infringing copy.

And without some evidence of a counterfeit book— either an actual copy of a book or a witness who can testify they viewed some copy of a book distributed by Defendants—it is impossible for Plaintiffs to possibly meet their evidentiary burden of demonstrating the counterfeit qualities of the book, distribution of it, or the date of distribution.

Rather than addressing their own lack of evidence, Plaintiffs' opposition raises issues having nothing to do with the elements of their claims. Plaintiffs cast non-evidentiary aspersions, hoping to create the false impression of a fact dispute. But at the same time, Plaintiffs do nothing to refute the point that they have not cited evidence, in a supporting declaration or otherwise, showing something they might present to the jury to demonstrate counterfeit qualities of each book or to confirm BDB having  distributed that counterfeit copy.

The law of infringement does not allow theories or guessing. While case law certainly allows the use of circumstantial evidence, there is *no* case law that allows Plaintiffs to move forward on mere speculation or mere allegation. What Plaintiffs are planning for trial, on 124 titles at least, is not a case based on either direct or

circumstantial evidence. It is a case based purely on guesses and theory—that is, o evidence.

In their opposition brief, Plaintiffs rely on case authorities involving different situations where there was some circumstantial evidence (unlike here). In those cases, there existed alternative evidence confirming the existence of a counterfeit item or a distribution of a counterfeit item. In those cases, even if the counterfeit itself was not available, there existed eyewitness who could positively confirm they either created or saw that counterfeit.

In this action there is no such evidence for at least 124 works. There is only a theoretical speculation that, because Defendants are (according to Plaintiffs) "bad guys" and because there are counterfeit versions of certain books in the marketplace in general, the jury should be allowed to conclude Defendants *might* have sold some bad books.

But that is not the law. The law requires proving the existence of a counterfeit, proving the counterfeit qualities of that book copy, and proving that Defendants themselves distributed that counterfeit. This will require producing the counterfeit itself (or circumstantial testimony of someone who saw the counterfeit in question) and describing its counterfeit nature. It also requires a chain of evidence or link to show that counterfeit copy was ever in Defendants' possession *and* was then distributed by Defendants.

Plaintiffs focus much of their opposition brief on the works and claims on which Defendants do *not* seek summary judgment (particularly, 16 works). This is a

6

red herring. The Court should hold Plaintiffs to their obligation to prove infringement on a work-by-work basis. Just because Defendants did not pursue summary judgment on 16 of the works does not lessen the evidentiary burden on the other 124 works. **Proof of infringing activity on one work is not proof of infringing activity on another work**.

II.    FACT CLARIFICATIONS

    A.  Follett Books

In their opposition briefs, Plaintiffs state that Mike Dalpe, vice president for Follett, supposedly had "no doubt" about some counterfeit books coming to Follett from Defendants.

However, Plaintiffs conveniently fail to acknowledge Mr. Dalpe's deposition testimony, under oath, definitely confirming that neither he nor Follett has any knowledge, information, nor any method for confirming whether *any* particular book (counterfeit or not) came from Defendants.

Specifically, for each counterfeit book Follett found in its inventory and turned over to Plaintiffs, Mr. Dalpe testified that Follett "couldn't say one way or other whether or not it came from the defendants." Follett is "not sure" what shipments to Plaintiffs would have included books sourced from Defendants, and books Follett bought from Defendants and others were never tracked, separated, or isolated in any fashion (thus, there is no way to know the source of any particular book). (Dalpe Depo. at 213–14, 264.)

Regardless of whether Mr. Dalpe has a personal feeling that some books Follett may have bought from BDB that might have been counterfeit, that is not

evidence of anything—it is merely speculation. Mr. Dalpe acknowledges that Follett has *no* evidence of receiving a counterfeit book from BDB and there is no way Follett could ever know (ergo, no evidence) whether any book Follett turned over to Plaintiffs came to Follett from BDB *or* some other supplier.

B. <u>MBS Books</u>

Plaintiffs suggest that books turned over to Plaintiffs by MBS can somehow be used to evidence that BDB sold counterfeits to MBS. However, MBS's representative testified definitively at deposition that, for the books MBS turned over to Plaintiffs, those books were comingled from all sources and there is no way to know whether the copies given to Plaintiffs came from BDB or someone else. (Lon Daniel Depo. at 85, 105, 126–7.)

III.   <u>ARGUMENT</u>

A.   <u>Case Authority Has Been Provided to Confirm the Evidentiary Standard at Trial.</u>

Plaintiffs make a baffling accusation (Initial Memo Opp. at 8–9) that Defendants supposedly cited *no* case authority to support the recitation of evidentiary requirements on infringement claims.

A quick look at Defendants' initial memorandum of law case reveals there is authority cited to support the arguments on evidentiary elements. Particularly, Sections IV.A. and B cite the legal authority for the recognized elements of proof on copyright and trademark infringement claims.

Notably cited among those is *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (SDNY 1992), which confirms that a copyright infringement claimant must prove 1) which

8

*specific* original works are the subject of the copyright claim, 2) that the claimant owns the copyrights in those works, 3) that the copyrights have been registered under the statute, and 4) by *what acts* during *what time* the defendant infringed the copyright. *Id.*

Plaintiffs' burden of proof includes not only identifying the specific works at issue, but also what exact acts at what time constitute an infringing act. Hence, if Plaintiffs cannot offer evidence of a specific act at a specific time, tied to a specific title, then Plaintiffs cannot prove the basic elements of infringement.

As laid out in the opening motion and supporting R. 56.1 statement of facts, for 124 titles, the evidence provided through discovery does not include an evidence of a specific infringing act, at a specific time, and tie it to a specific title. Plaintiffs are merely theorizing because, in their minds Defendants are "bad guys" and Plaintiffs do not approve of Defendants' recordkeeping practices, that a jury may be asked to engage in a giant leap and assume that infringing activities *probably* occurred.

B.  The Miller Declaration is Suitable and Sufficient to Explain the Nature of the Summary Judgment Arguments.

Plaintiffs attempt to distract the Court from the substance of the motion by taking issue with Attorney Miller's supporting declaration. There is nothing wrong with the form or approach of the Miller Declaration.[4] The Miller Declaration is in

---

[4] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  citing to particular parts of materials in the record, including depositions, documents, electronically stored information affidavits or declaration stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R.Civ. P. 56(c)(1)(A).

the same format and fashion as Plaintiffs' counsel presented declarations to support their own motions.

The Miller Declaration summarizes, in simple fashion, the evidence and information that Plaintiffs and third parties have produced to Defendants during discovery. The exhibits to the Miller Declaration are either exact duplicates of documents received during discovery or proper summaries of that exact information. It is preposterous for Plaintiffs to argue they cannot figure out (from the declaration) which titles are at issue and which are not. The demonstrative exhibits (summarizing the Plaintiffs' own roadmap information) specify which of the 124 titles are at issue on summary judgment (as does the memorandum of law to support the motion, which explains it explicitly). The 124 titles challenged on summary judgment are cited directly back to Exhibit A of the second amended complaint, which list is also Exhibit A to the Miller Declaration.

Exhibit B is a Revised Roadmap, which is a document Plaintiffs created produced during discovery (by their own voluntary effort) to explain and summarize what evidence they believe supports their infringement claims. Exhibit C is merely a summary of both Exhibit A and Exhibit B, referencing titles found in Exhibit A to the second amended complaint (using the same number references) to indicate which titles are being challenged on summary judgment and under which arguments. Exhibit D is data produced to Defendants and Plaintiffs by MBS in response to subpoena. That is presented as part of a declaration to officially confirm that defense counsel received that data from MBS. For summary judgment, this is

all appropriately presented. It puts Plaintiffs on sufficient notice as to the arguments on 124 titles and gave them a chance to present any additional evidence they might have to indicate the existence of a genuine question of fact on those 124 titles. Because Plaintiffs did not do so, presumably they have no other evidence to present at trial.

      C.     <u>Plaintiffs Do Not Have Even Circumstantial Evidence:  They are Pursuing a Case Built on Theory and Speculation.</u>

Plaintiffs do not suggest they possess *any* direct evidence of infringement on 124 titles (or, at least, they cite none in their opposition brief). They are only claiming to have supposed circumstantial evidence. However, Plaintiffs' so-called "evidence" is not circumstantial and does not meet the definition of "circumstantial."

Circumstantial evidence is defined as "an inference as to the existence of a fact not actually known, arising from its necessary or unusual connection with others, which are known." *Jaramillo v. United States*, 357 F. Supp. 172, 176 (S.D.N.Y. 1973) (citing 1 Phillips on Evidence, 599, note 177). As noted in *Jaramillo*, the inferences a plaintiff seeks must arise from known, existing, and provable facts:

> In attempting to prove a fact by circumstantial evidence there are certain rules to be observed that reason and experience have found essential to the discovery of truth and the protection of innocence. *The circumstances themselves must be established by direct proof and not left to rest upon inferences*. The inference which is to be based upon the facts and circumstances so proved must be a clear and strong logical inference, an open and visible connection between the facts found and the proposition to be proved.

*Id.* at 176.

Plaintiffs' self-serving theories (supposed "circumstantial evidence" according to them) are not based on any provable fact at any level. As quoted above, the

underlying facts upon which circumstantial inferences may be drawn *must still be drawn from directly provable facts. Id.*

The allegation that BDB distributed a bad copy of one title does not create an inference of provable fact that BDB distributed a bad copy of some *other* title. But that is precisely the basis of Plaintiffs' case on 124 titles—that they want to ask the jury to find liability on 124 titles, not based on any proof as those 124 titles, but based on supposed proof as to other titles.

This is not circumstantial evidence as defined by this district. *Id.* It is a unsupported theory—that is all. It is not based on an underlying provable fact. Allegations, theories, and speculations are not circumstantial evidence. They are conjecture, not based on provable data, and nothing more.

"Circumstantial evidence is a form of affirmative evidence" that may give rise to a specific inference. *SEC v. Singer*, 786 F. Supp. 1158, 1164 (S.D.N.Y. 1992).

On page 14 of their initial memo in opposition, Plaintiffs provided a telling analogy that helps demonstrate how their case does *not* involve circumstantial evidence, or *any* evidence in fact. Plaintiffs refer to a situation where a child claims that the cookie crumbs on his cheeks and lips are not evidence that the child ate this particular cookie.

This is not an apt analogy. Here, Plaintiffs suggest that, because counterfeits of certain titles exist in the marketplace and because Defendants (and many others) sold copies of that title, a jury should conclude that Defendants are likely to have sold counterfeit copies of that title.

The apt analogy for Plaintiffs' faulty case theory is rather the following: where a child has eaten a cookie at some time during his life but has no crumbs on his face, because cookies exist we should conclude he ate a cookie today.

Circumstantial evidence, even though not direct, still requires a evidentiary connection to *other* facts that can be directly proven. The allegations of past bad, unrelated conduct on titles not at issue does not create a evidentiary connection. If Plaintiffs cannot find a way to tie some copy of a specific counterfeit title back to a specific sale made by Defendants, then they should not be permitted to survive summary judgment on that particular title. Plaintiffs were given their chance on summary judgment, for these 124 titles, to come forward with infringement evidence, but they did not d so.

Circumstantial evidence or otherwise, Plaintiffs must find a way to prove a copy of a book is actually counterfeit. They must prove Defendants distributed that counterfeit copy.  They must prove the date on which Defendants distributed that counterfeit copy. There is no genuine question Plaintiffs do not have circumstantial or direct evidence to prove these element for 124 of the works at issue.

Plaintiffs try to overcome their evidentiary deficiency by criticizing Defendants' argument that Plaintiffs must bring a counterfeit copy of each work at issue to trial. Perhaps Defendants oversimplified this description of the evidentiary situation.

Direct evidence of a counterfeit book would be the book itself (one that Defendants distributed) put in front of the jury for the jurors to see, with evidence

confirming that Defendants themselves sold that book, and when. For 124 of the works at issue, Plaintiffs already concede they do not have that evidence—they do not cite to any such evidence to overcome summary judgment.

Indirect or circumstantial evidence would be a witness who once laid eyes on a counterfeit book (the book that Defendants distributed) and can now testify having seen the counterfeit book, confirm it was distributed by Defendants (and when distributed), and testify to what characteristics showed it to be counterfeit. But for 124 of the works at issue, Plaintiffs do not have such evidence.

Because Plaintiffs have *neither* direct nor circumstantial evidence to prove existence, physical counterfeit qualities, or distribution by Defendants on 124 of the works, there is no point (and no right) to proceed to trial on those 124 titles.

D.    Plaintiffs' Cited Case Law is Distinguishable from This Case.

***Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 647 (SDNY 2011):**
The *Capital Records* case had to do with the unauthorized *duplication* of *software*. There, this Court did not advocate the use of mere anecdotal allegations or even circumstantial evidence to overcome summary judgment against claims of wrongful distribution. Rather, in *Capital Records*, the Court found that the plaintiffs "need not offer actual copies of the works at issue" because the plaintiffs offered evidence including first-hand witness testimony confirming that unlawful duplications had occurred and there were other documents confirming those duplications occurred. *Id.* at 647.

Here, the infringement claims are strictly related to allegations of distributions. As deposition testimony has revealed, Plaintiffs admit they have no

evidence of Defendants' ever copying or manufacturing infringing works. This case relates only to sales and distribution. Here, for 124 of the titles, not only have Plaintiffs failed to identify even one actual infringing copy sold by Defendants, but Plaintiffs also lack any witness who would testify that Defendants sold any infringing copy. In terms of other documentary evidence, nothing confirms Defendants sold any infringing copy of those 124 titles. There is evidence of legitimate sales and evidence of counterfeits out in the marketplace, but there is no evidence to bridge the gap between them so as to assign liability to Defendants.

The allegations against Defendants are merely allegations—not evidence, not even circumstantial evidence. Plaintiffs can show that Defendants at one time purchased copies of certain titles. Plaintiffs can show that Defendants at some time sold some copies of certain titles. Plaintiffs acknowledge that Defendants weeded out and withheld from distribution many copies of those titles. What Plaintiffs have not presented through discovery or otherwise is an evidentiary link, for these 124 titles, between any sale by Defendants to some infringing copy of a book that Plaintiffs have found.

Ultimately, Plaintiffs will ask the jury to assume, because Defendants sold certain titles and because there are infringing copies of those titles within the marketplace, that Defendants might have sold one of those infringing copies.

This is not circumstantial evidence of a distribution.  It is speculation. It would ask the jury to speculate based on mere allegation. The same speculation could be made against any person or company who *ever* sold any copy of these titles.

It is not only an admitted truth that Plaintiffs cannot produce, for 124 titles, a single infringing copy definitely sold by Defendants, but they have also identified no witness who could testify to knowledge of an infringing sale. Plaintiffs have identified no document and no witness for trial by which they could even circumstantially prove that Defendants sold an infringing copy of these 124 titles.

> **Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005):**
> *Island Software* is also distinguishable. In *Island Software*, the plaintiff

produced a witness with "actual knowledge" and the Court had "undisputed evidence" that the defendant had distributed unauthorized works. The *Island Software* case does not condone proceeding past summary judgment on the mere basis of mere allegations, which are all Plaintiffs have for 124 titles.

The best Plaintiffs can do is prove the existence of both non-infringing and infringing copies of these 124 works out in the marketplace and prove that Books Dog Books sold copies of these titles. But many textbook retailers sell these books. Plaintiffs have no evidence to connect BDB's sales to an infringing copy. And Plaintiffs have identified no witness knowing of any counterfeit sale by Defendants. Plaintiffs are trying to pigeonhole mere allegations and theories into the concept of "circumstantial evidence."

> **Lytle v. JPMorgan Chase, No. 08 Civ. 9503, 2012 U.S. Dist. LEXIS 15599, at \*56 (SDNY Feb. 8, 2012)**
> -and-
> **Gayle v. Gonyea, 313 F.3d 677, 684 (2d Cir. 2002):**
> These were both employment discrimination cases. Whatever rule they might

suggest about circumstantial evidence is not in the context of copyright or

trademark infringement. Also, neither case overcomes or addresses the problem that Plaintiffs are not relying on actual circumstantial evidence, but mere allegations that contain no tie-back or chain of evidence to the alleged counterfeit copies at issue.

**Microsoft Corp. v. Grey Computer, 910 F. Supp. 1077 (D. Md. 1995):**
*Grey Computer* was not a circumstantial evidence case, although the defendants made an argument about circumstantial evidence and the Court addressed it. It was a direct evidence case. There, the defendant did not deny that it had copied and distributed copyrighted works. Rather, the defendant argued it had done so innocently, but without knowledge or understanding of having done so. *Id.* at 1084. The defendants also argued that the evidence against them was only circumstantial, but there was chain of custody evidence directly tying counterfeit materials back to the defendant.

In *Grey Computer*, there was physical evidence of counterfeited works that could be directly tied back to the defendant. Here, for 124 of the titles, there is no such evidence. There is no physical evidence to tie any infringing version of these 124 titles back to a sale made by Defendants. There is no witness testimony to tie any infringing copy back to Defendants. There are no documents to confirm any infringing copy came from Defendants.

**Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc., 507 Fed. Appx. 26, 31 (2d Cir. 2013)**
This case is entirely inapplicable to the summary judgment question at hand. The *Fendi* opinion addresses evidence relating to the *willfulness* of infringing activities.

The existence or amount of alleged willfulness is not yet before the Court. Before a jury could get to that evaluation, Plaintiffs must overcome the first step of proving any infringement at all ever occurred, and do so 140 times. But if Plaintiffs have produced no infringing book sold by Defendant for a witness or the jury to examine, the question necessarily must be this: how are Plaintiffs possibly going to prove whether the book is actually even infringing?

For the remainder of the books, even if Plaintiffs could bring "some" infringing version of the book to trial and convince the jury it is infringing, Plaintiffs have produced no evidence for how they might tie that book back to Defendants (other than mere speculation/argument/theory).

    E.    <u>The 16 Titles NOT Challenged on Summary Judgment</u>

For the 16 titles not raised on summary judgment, Defendants are not conceding liability. Defendants are respecting the legal standard that exists on summary judgment. For those 16 titles, Defendants recognize Plaintiffs probably have enough evidence to surpass a summary judgment standard. But Defendants do not concede liability and intend to hold Plaintiffs to their burden to prove all necessary elements for their infringement claims.

    F.    <u>The Issue of Infringement vs. Willfulness</u>

Plaintiffs' argument ignores that evidence regarding how Defendants conduct their operations is only relevant to the later question of measuring willfulness.

Defendants accept that, if and when the jury is convinced they distributed any counterfeit copy of one of these titles, it will then go on to a secondary evaluation of willfulness.

Plaintiffs dedicate much of their opposition briefs to disparaging Defendants' past business practices. They cite evidence regarding alleged bad suppliers from whom Defendants have previously purchased some books. They challenge Defendants' past methods of recordkeeping and tracking of information. While a jury might one day find all of these things interesting in evaluating a level of willfulness, those are irrelevant considerations in terms of the question posed on summary judgment—that is, whether Plaintiffs have evidence by which they could ever hope to meet their burden of proof on the prima facie elements of infringement.

For the 124 titles brought into issue on summary judgment, Plaintiffs have not refuted, and cannot refute, these facts:

1. For all those 124 titles, Plaintiffs have no single infringing copy of that book they can put before the jury and then also evidence that infringing copy was sold/distributed by Defendants. Plaintiffs also have not produced or identified a single witness with knowledge connecting any infringing copy of these titles to a sale by Defendants. Plaintiffs are relying entirely on a theory/speculation that, because Defendants at one time may have bought books from bad suppliers or once *possessed* some bad books, then one should automatically conclude Defendants also *distributed* a bad book. This is an interesting theory, but it is not evidence. It is not even circumstantial evidence. It is just a theory.

2. For 49 of the titles, the only evidence Plaintiffs have produced are copies of books that Defendants definitely did *not* sell, but rather *withheld* from sale. (*See* Miller Decl. Ex. B, C (Plaintiffs' self-serving evidentiary summary (Revised

Roadmap, Ex. B) states that their evidence for 49 of those titles is based strictly on having viewed a counterfeit held within Defendants' possession but not distributed. Miller Decl. Ex. C lists those 49 titles: BDB Unsold Quarantine Books).

At trial, Defendants will establish that they carefully inspect every book that comes through the BDB warehouse. Any book even potentially suspicious as being unauthentic does not make its way into the sales inventory. Plaintiffs suggest they should be able to waste valuable trial time trying to prove infringement claims on 49 books that Plaintiffs acknowledge were not distributed. Based merely on Defendants receiving but *not* selling suspected bad copies of 49 titles, Plaintiffs want to pursue 49 infringement claims with a jury and ask the jury to guess, with no facts (circumstantial or otherwise) to back it up, that Defendants *might* have sold some *other* infringing copy of those titles.

This is not evidence. It is not even circumstantial evidence and is not based on any provable fact of distributing a counterfeit copy. It is a hypothesis.  It is nothing more than speculation.

3. The foremost requirement of evidence in an infringement case is proof that the book is indeed an infringing copy. This requires showing something tangible to the jury and explaining the infringing characteristics. Repeatedly during discovery, Defendants again and again requested to inspect the infringing books that Plaintiffs intend to show to the jury. During the long course of discovery, in all of that time, Plaintiffs only provided for inspection 16 books for this purpose that could be

arguably connected to a sale by Defendant. Those are the 16 books not brought into issue on summary judgment.

G.   The Conspiracy Claim

To be clear, Defendants are not merely implying but are expressly arguing it here—by law, a fraud claim *must* be pleaded to support and maintain a conspiracy to commit fraud claim.

The most basic notion of any civil conspiracy claim is there must be pleaded an actionable underlying tort.

> [U]nder New York Law, to establish a claim of civil conspiracy, the plaintiff "must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

*Abacus Fed. Sav. Bank v Lim*, 75 A.D.3d 472, 474 (N.Y. App. Div. 1st Dep't 2010).

One must be sued for fraud in order to also be sued for conspiracy to commit fraud. Without pleading a fraud claim, a party may not proceed on a conspiracy to commit fraud claim:

"[P]laintiff has failed to sufficiently allege an actionable underlying tort and thus there is no support for the conspiracy allegations." *American Preferred Prescription, Inc. v. Health Mgmt.*, 252 A.D.2d 414, 416 (N.Y. App. Div. 1st Dep't 1998).

Whether Pearson has sued some non-party in some other jurisdiction is irrelevant. Under Rule 9(b), fraud requires particular specification in pleading. Here, Plaintiffs did not plead fraud at all, let alone plead with proper specificity the circumstances constituting fraud.

Also, at two depositions, Pearson representatives conceded that it has no evidence of fraud or conspiracy to commit fraud as between Defendants and Philomath. (Pearson Depo. at 98–100; LaVacca Depo. at 88–9.)

     H.     <u>Importation Statutes</u>

Plaintiffs mischaracterize case law regarding whether there exists a private cause of action under 15 USC § 1124.

The one case relied upon by Plaintiffs, *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 324 n.4 (S.D.N.Y. 2008), does not expressly acknowledge a private cause of action under that statute.

Rather, in *Akhenaten*, this Court acknowledges just the opposite: "15 USC § 1124 does not itself provide a remedy to the holders of infringed trademarks." *Id.* at n. 4  That case then recognizes that some *other* courts have interpreted two *other* statutes, 15 USC §§ 1116 and 1117, as creating a private cause of action under § 1124. However, this Court did not adopt or indicate agreement with those other courts, that was a comment made only in a footnote, and Plaintiffs here have asserted no claims under §§ 1116 or 1117.  For all these reasons, the Court should find that a private cause of action does not exist here and those claims should be removed through summary judgment.

IV.     <u>CONCLUSION</u>

Infringement cases are judged on a title-by-title basis. Only if the jury can find that a defendant distributed an unlawful copy of a work, and also finds that the copy sold was unlawful/infringing, could the jury move forward to evaluating damages and the concept of willfulness. That is not based on some ethereal notion

that a defendant "probably," "likely," "might have," or "should be assumed" to have engaged in infringing activities based on the notion of who they have conducted business with or messy record keeping. Damages are calculated based on the definite number of works for which infringement occurred, so a plaintiff must prove infringement with exactitude.

On summary judgment, Plaintiffs concede they cannot prove infringement as to 124 of the works at issue. They have not produced either direct or circumstantial evidence on 124 of those works. For those 124, Plaintiffs are asking to be allowed to go before a jury and make general theoretical suggestions of bad business practices, and then ask the jury to assume infringement by BDB regarding every work Plaintiffs might suggest were infringed at some time by anyone.

Contrary to that, and properly, Defendants are asking for a formal, legal evaluation, title-by-title, based on what the law requires individually for every work brought into issue. For 124 of the titles, Plaintiffs (following extensive discovery) failed to offer: (1) an actual counterfeit copy; (2) circumstantial testimony or evidence of a counterfeit copy ever in Defendants' possession and sold by Defendants; (3) and evidence that Defendants sold a counterfeit copy;  or (4) evidence that the copies are indeed counterfeit at all.

For every protected work at issue in this case, Plaintiffs must prove the existence of an actual infringing version of that work and prove that Defendants distributed that infringing copy. Plaintiffs have failed to meet that burden of proof, even circumstantially, on 124 of the works.  Alleged faulty business practices and

ill-chosen business relationships alone might be found relevant to the later question of willful conduct, but those concepts say nothing about the basic underlying elements of infringement.

For these reasons, the Court should grant summary judgment on the 124 titles listed in the motion, and the conspiracy and importation claims.

Respectfully submitted,

s/ Tiffany C. Miller
Tiffany C. Miller (Ohio 0072881)
Bailey Cavalieri LLC
One Columbus
10 West Broad Street, 21st Floor
Columbus, Ohio  43215-3422
Telephone:  (614) 229-3211
Telefax:  (614) 221-0479
tiffany.miller@baileycavalieri.com

Patrick J. Cooney (PC-6158)
Janice Berkowitz (JB-4489)
Ahmuty, Demers & McManus
200 I U Willets Road
Albertson, NY 11507-2200
Telephone: (516) 535-1887
Telefax: (516) 294-5387
patrick.cooney@admlaw.com
janice.berkowitz@admlaw.com

Neil B. Mooney (NM0300)
The Mooney Law Firm, LLC
1911 Capital Circle N.E.
Tallahassee, FL 32308
Telephone: (850) 893-0670
Telefax: (850) 391-4228
nmooney@customscourt.com

Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

I certify the foregoing reply brief was served upon Plaintiffs by transmitting a copy of it to and through the Court's ECF system on July 13, 2015, which will send an NEF to Plaintiffs' counsel of record, who are listed as recipients for NEFs in this action.

s/ Tiffany C. Miller
Tiffany C. Miller (Ohio 0072881)