UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHN WILEY & SONS, INC. et al.,                    :
                                                   :
                        Plaintiffs,                :     OPINION AND ORDER
                                                   :
            -v.-                                   :     13 Civ. 816 (WHP) (GWG)
                                                   :
BOOK DOG BOOKS, LLC et al.,                        :
                                                   :
                        Defendants.                :
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

John Wiley & Sons, Inc., Cengage Learning, Inc. ("Cengage"), and Pearson Education, Inc. ("Pearson") brought this suit against Book Dog Books, LLC ("BDB") and Philip Smyres alleging copyright infringement, trademark infringement, and other claims relating to defendants' purported distribution of counterfeit textbooks. Plaintiffs have filed a motion to disqualify Neil B. Mooney as counsel for defendants.[1] For the reasons stated below, plaintiffs' motion is denied.

---

[1] See Plaintiffs' Motion for Disqualification of Neil B. Mooney, filed Mar. 20, 2015 (Docket # 246); Plaintiffs' Memorandum of Law in Support of Motion for Disqualification of Neil B. Mooney, filed Mar. 20, 2015 (Docket # 247) ("Pl. Mem."); Declaration of Matthew J. Oppenheim in Support of Motion for Disqualification of Neil B. Mooney, filed Mar. 20, 2015 (Docket # 248) ("Oppenheim Decl."); Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Disqualification of Neil B. Mooney (Docket # 246), filed Apr. 8, 2015 (Docket # 253) ("Def. Mem."); Plaintiffs' Reply Memorandum in Support of Motion for Disqualification of Neil B. Mooney, filed Ap. 16. 2015 (Docket # 255) ("Pl. Reply"); Supplemental Declaration of Matthew J. Oppenheim in Support of Motion for Disqualification of Neil B. Mooney, filed Apr. 16, 2015 (Docket # 256); Letter from Tiffany C. Miller, filed August 28, 2015 (Docket # 295) ("Aug. 28 Letter"); Letter from Matthew J. Oppenheim, filed September 1, 2015 (Docket # 297).

1

I.      BACKGROUND

We provide a limited chronology of the history of the parties' disputes, with an emphasis on describing instances where Mooney has given testimony or submitted statements to a court.

Plaintiffs are publishing companies that provide a wide range of educational products for students and professionals.  See Second Amended Complaint, filed May 27, 2015 (Docket # 263) ("SAC"), ¶ 1.  BDB is a company that buys and sells textbooks, including some textbooks published by plaintiffs.  Id. ¶ 2.  Smyres is the owner of BDB.  Id. ¶¶ 14, 26; Answer to Second Amended Complaint, filed June 10, 2015 (Docket # 264), ¶ 14.

In October 2007, plaintiffs filed a lawsuit against Smyres and others for copyright infringement.  Id. ¶¶ 3, 30; see Complaint, filed Oct. 2, 2007 (Docket # 1 in Cengage Learning Inc. et al. v. Buckeye Books et al., No. 07 Civ. 8540 (S.D.N.Y.) (the "2007 Action")).  The parties settled the 2007 Action through written agreement.  See Settlement and Mutual Releases, dated July 11, 2008 (annexed as Ex. 1 to Declaration of Julie C. Chen, filed Jan. 26, 2015 (Docket # 204)) ("Settlement Agreement"), ¶ 4.

     A.      Mooney's Testimony in the Ohio Action

On December 18, 2012, the defendants in this case filed a lawsuit against the plaintiffs in this case in the Southern District of Ohio.[2]  See Complaint, filed Dec. 18, 2012 (Docket # 1 in Book Dog Books, LLC v. Cengage Learning, Inc. et al., No. 12 Civ. 1165 (S.D. Ohio) (the "Ohio Action")).  Defendants also sought a temporary restraining order ("TRO") that would require plaintiffs to "allow [defendants] to order/purchase publications from [plaintiffs] under the status quo of how that supply relationship has been operating up until July 2012."  Plaintiffs'

---

[2] All references to "plaintiffs" and "defendants" refer to the parties' positions in the instant action.

Motion for a Temporary Restraining Order, filed Dec. 18, 2012 (Docket # 2 in the Ohio Action), at 1.  The court held an evidentiary hearing on December 28, 2012.  See Minute Entry for Proceedings Held Before Judge James L. Graham, filed Dec. 28, 2012 (Docket # 18 in the Ohio Action); TRO/Preliminary Injunction Hearing, filed Feb. 6, 2013 (Docket # 19 in the Ohio Action) ("TRO Hr'g Tr."); TRO/Preliminary Injunction Hearing, dated Dec. 28, 2012 (annexed in part as Ex. 5 to Oppenheim Decl.) ("TRO Hr'g Excerpts").  Mooney appeared as the sole witness for defendants at the hearing.  See TRO Hr'g Tr. at 2.  In the excerpts of the hearing supplied by plaintiffs, Mooney testified about the defendants' "conversations" in response to a letter from plaintiffs regarding the defendants' alleged sale of counterfeit books, TRO Hr'g Excerpts at 35-36; the content of various provisions of the 2008 Settlement Agreement, id. at 53-56; and an email — apparently from Mooney to plaintiffs — that was sent in response to a August 30, 2011 letter from plaintiffs and that discussed "what books [defendants] supplied to whom and where they came from," whether the books were "checked against 2008 suppliers," and the defendants' conclusion that none of the allegedly counterfeit titles came from parties who had supplied the books at issue in the 2007 Action, id. at 73-74.  Following the hearing, the court denied defendants' request for a TRO.  See Opinion and Order, filed Jan. 4, 2013 (Docket # 15 in the Ohio Action), at 1.

      B.    <u>Mooney's Testimony Regarding the Disclosure Required by the Settlement Agreement</u>

Plaintiffs filed the instant action on February 4, 2013.  See Complaint, filed Feb. 4, 2013 (Docket # 1).  In their second amended complaint, plaintiffs allege claims for copyright infringement, SAC ¶¶ 59-69; trademark infringement, id. ¶¶ 70-76; trademark counterfeiting, id. ¶¶ 77-80; illegal importation of goods bearing infringing trademarks or names, id. ¶¶ 81-84;

trademark dilution, id. ¶¶ 85-89; unfair competition and false designation of origin, id. ¶¶ 90-96; and breach of contract, id. ¶¶ 97-102.  Pearson also alleges a claim for conspiracy to commit fraud.  Id. ¶¶ 103-09.

One of the issues that has arisen in this litigation relates to a provision of the Settlement Agreement that required defendants to disclose to plaintiffs the foreign and domestic sources of any pirated copies of plaintiffs' textbooks, including "the name and location of the entity from whom such books were purchased, the types of books purchased, and the year(s) that [defendants] purchased such books."  Settlement Agreement ¶ 10.  Pursuant to this provision, defendants disclosed that a company in Thailand named Best Books World was the supplier of "most if not all" of the counterfeit books purchased by defendants.  See Email, dated Sept. 10, 2008 (annexed as Ex. 2 to Plaintiffs' Memorandum in Support of Their Motion to Compel Production of Documents and Testimony, filed Mar. 26, 2014 (Docket # 109) ("Docket # 109")) (the "Disclosure"), at BP-SMY-025504; Opinion and Order, filed May 7, 2014 (Docket # 130) ("May 7 Order"), at 2.

At Smyres's deposition on November 20, 2013, plaintiffs' counsel showed Smyres a copy of the Disclosure.  See Deposition of Philip Smyres, dated Nov. 20, 2013 (annexed in part as Ex. 5 to Docket # 109) ("Smyres Dep."), at 195-96.  When asked if he had ever seen this document, Smyres responded, "Maybe years ago.  I don't know."  Id. at 196.  Although Smyres did not remember the Disclosure, he did not deny that he "may have prepared" it.  Id.  However, Smyres testified that he had "always . . . thought it was communicated that Wirat Education was the source of most of the counterfeit[s]."  Id.  Later, he testified that he was "100 percent sure" he communicated to Mooney "that Wirat Education was the source of almost all of the counterfeit[s]," id. at 198, and that he thought he had directed Mooney to disclose that Wirat

4

Education, not Best Books World, was the major source, see id. at 202.

The Court then granted plaintiffs' motion to take a deposition of Mooney limited to the issue of his communications with Smyres on this topic. See May 7 Order at 6-10. The deposition took place on May 30, 2014. See Deposition of Neil Mooney, dated May 30, 2014 (annexed in part as Ex. 4 to Oppenheim Decl.) ("Mooney Dep."). In the limited pages provided with plaintiffs' motion papers, the Court is able to discern that Mooney testified that he negotiated and drafted the Settlement Agreement, see id. at 35, and that he understood paragraph 10 of the agreement to obligate defendants "[t]o provide the sources of" counterfeit books, id. at 54. In response to the question "[W]hat did you do to undertake compliance" with the disclosure obligation under paragraph 10 of the Settlement Agreement, Mooney testified, "I believe the answer is I conveyed to the publishers the information provided to me by the Smyres parties." Id. at 55. When asked what Smyres had told Mooney through their "multiple" conversations about the "source of the counterfeit books," Mooney testified, "The only supplier that I remember being a major issue was Wirat Education in Thailand." Id. at 64.

    C.    <u>Mooney's Declaration Submitted in the Briefing of Plaintiffs' Motion for Partial Summary Judgment</u>

On January 26, 2015, plaintiffs filed a motion for partial summary judgment, see Plaintiffs' Motion for Partial Summary Judgment, filed Jan. 26, 2015 (Docket # 200), seeking a ruling that defendants breached the Settlement Agreement by bringing a lawsuit in the Southern District of Ohio in contravention of a forum selection clause contained the agreement, see Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment, filed Jan. 26, 2015 (Docket # 202), at 6-9; First Amended Complaint, filed Apr. 24, 2013 (Docket # 16), ¶¶ 102-06; SAC ¶¶ 97-102; Settlement Agreement ¶ 19. In support of their opposition,

defendants filed a declaration from Mooney.  See Declaration of Neil B. Mooney in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, dated Feb. 26, 2015 (annexed as Attach. # 1 to Defendants' Response to Plaintiffs' Rule 56.1 Statement of Facts [Docket No. 201], filed Feb. 26, 2015 (Docket # 226)) ("Mooney Decl.").  In the declaration, Mooney states that, as "lead attorney representing Mr. Smyres and defendants in the 2007 Action for purposes of negotiating a settlement of that action," Mooney "engaged in multiple communications with plaintiffs' counsel and was the primary person to communicate defendants' demands and intentions for settlement."  Id. ¶ 6.

Mooney also made reference to paragraph 11 of the Settlement Agreement, see Mooney Decl. ¶¶ 9-12, which required plaintiffs to disclose information to the defendants regarding known counterfeiters, see Settlement Agreement ¶ 11 (the "Notification Provision").  Mooney stated that the Notification Provision was a "highly contested provision," and that it "was a term defendants strongly insisted upon throughout settlement negotiations.  Through [Mooney], defendants stated firmly to [plaintiffs] that defendants would not agree to a settlement of the 2007 Action unless [plaintiffs] would agree to provide notices of known pirate edition suppliers."  Id. ¶ 9.  He also states that plaintiffs were "highly resistant" and "unwilling to agree to include that term," id. ¶ 10, but at defendants' insistence, and after Mooney "made it clear during negotiations that Mr. Smyres and defendants would not have agreed to enter into th[e] settlement but for [plaintiffs'] promise to give the notices," plaintiffs agreed to the term, id. ¶ 11.

II.     LAW GOVERNING DISQUALIFICATION MOTIONS

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'"  Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d

1241, 1246 (2d Cir. 1979)). Because disqualification motions interfere with a party's right to counsel of its choice and are often made for tactical reasons, they are "viewed with disfavor," A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) (citation omitted), and the party seeking disqualification must meet a "heavy burden of proof in order to prevail," Gormin v. Hubregsen, 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (citation and internal quotation marks omitted). "Disqualification is only warranted in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981)). Nonetheless, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975) (citation omitted); accord CQS ABS Master Fund Ltd. v. MBIA Inc., 2013 WL 3270322, at *8 (S.D.N.Y. June 24, 2013); see also United States v. Oberoi, 331 F.3d 44, 51 (2d Cir. 2003) (noting that the "'public's interest in the outcome [of litigation] is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case'") (quoting Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir. 1973)).

While federal courts look to state disciplinary rules when considering motions for disqualification, "such rules need not be rigidly applied as they merely provide general guidance." Mori v. Saito, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011) (internal citations and quotation marks omitted). Even a violation of disciplinary rules "may not warrant disqualification." GSI Commerce Sols., Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010) (citation omitted). Rather, "[t]he disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72-73 (2d Cir. 1990) (citations omitted). In

7

exercising this power, courts "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Hempstead Video, Inc., 409 F.3d at 132 (citations and internal quotation marks omitted).

Rule 3.7(a) of New York's Rules of Professional Conduct addresses the situation where an attorney may be called as a witness:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> (1) the testimony relates solely to an uncontested issue;
>
> (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
>
> (3) disqualification of the lawyer would work substantial hardship on the client;
>
> (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
>
> (5) the testimony is authorized by the tribunal.

See N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0  Previously, New York adhered to the Model Code of Professional Responsibility, which similarly provided that:

> A lawyer shall not act . . . as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client . . . .

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.21 (repealed 2009).[3]

These rules, commonly referred to as "advocate-witness" rules, are based upon concerns

---

[3] While New York revised its Rules of Professional Conduct on April 1, 2009, courts have continued to apply case law decided under the former advocate-witness rule because the changes made to that rule were "stylistic, rather than substantive." Acker v. Wilger, 2013 WL 1285435, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) (citing Gabayzadeh v. Taylor, 639 F. Supp. 2d 298, 303 (E.D.N.Y. 2009)).

that:

> (1) the lawyer will appear to vouch for his own credibility, (2) the lawyer's testimony will put opposing counsel in a difficult position when he has to vigorously cross-examine his lawyer-adversary and seek to impeach his credibility, and (3) there may be an implication that the testifying attorney may be distorting the truth as a result of bias in favor of his client.

Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 282-83 (2d Cir. 2004) (citation omitted). Additionally, "when one individual assumes the role of both advocate and witness it may so blur the line between argument and evidence that the jury's ability to find facts is undermined." Id. (citation, internal quotation marks, and alterations omitted).

"'Because the courts must guard against tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions' based on the witness-advocate rule." Dolenec v. Pressler & Pressler L.L.P., 2014 WL 6632942, at *3 (S.D.N.Y. Nov. 24, 2014) (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)). "Disqualification under subsection (a) applies only when the attorney-witness actually serves as trial counsel." Corrado v. N.Y. State Unified Court Sys., 2014 WL 119407, at *2 (E.D.N.Y. Jan. 10, 2014) (citing Murray v. Metro. Life Ins. Co., 583 F.3d 173, 179 (2d Cir. 2009); Finkel v. Frattarelli Bros., Inc., 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)). Further, "[d]isqualification may be required only when it is likely that the testimony to be given by the witness is necessary." S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp., 69 N.Y.2d 437, 445-46 (1987). Additionally, where only the moving party intends to call the adversary's attorney as a witness, "the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.'" Acker, 2013 WL 1285435, at *1 (quoting Finkel, 740 F. Supp. 2d at 373); accord Gurvey, 2014 WL

6491281, at *5; Nimkoff, 2014 WL 1201905, at *8.[4]

III.   DISCUSSION

Plaintiffs move for the disqualification of Mooney because they assert that Mooney is a fact witness regarding the Settlement Agreement and "other relevant matters." Pl. Mem. at 10. In support, plaintiffs refer to the three occasions where Mooney has offered testimony as described above. Id. at 3-8, 10.

At the start, defendants in their opposition brief state unequivocally and repeatedly that they will not call Mooney as a witness in this matter. See Def. Mem. at 2 ("Attorney Mooney will not be a trial witness in this action."); id ("there exists no likelihood of Attorney Mooney being a witness"); id. at 10 ("Attorney Mooney will not be a trial witness). Having made this assertion, defendants will obviously be bound by it and thus the Court precludes defendants from calling Mooney as a trial witness.[5]

---

[4] The rules that existed before the adoption in 2009 of the Model Rules of Professional Conduct "explicitly distinguished between an attorney being called by his client or by his adversary," providing that in the latter case, the attorney "could not be disqualified unless it appeared that his testimony would be prejudicial to the position of his client." Parlin Funds LLC v. Gilliams, 2011 WL 7004193, at *15 n.10 (S.D.N.Y. Nov. 28, 2011) (citing N.Y. Jud. App'x Code of Prof. Resp. DR 5-102(A) & (B) (1996); Lamborn, 873 F.2d at 531). While this provision has been dropped from the New York State Rules of Professional Conduct, courts continue to require a showing that the attorney's testimony would be prejudicial in these circumstances. See Finkel, 740 F. Supp. 2d at 372 n.1; Parlin, 2011 WL 7004193, at *15 n.10; Sea Trade Mar. Corp. v. Coutsodontis, 2011 WL 3251500, *7 & n.4 (S.D.N.Y. July 25, 2011); see also  Gurvey v. Cowan, Liebowitz & Latman, P.C., 2014 WL 6491281, at *5 (S.D.N.Y. Nov. 20, 2014) (requiring the movant to show a substantial likelihood of prejudice); Nimkoff Rosenfeld & Schechter, LLP v. RKO Props., Ltd., 2014 WL 1201905, at *8 (S.D.N.Y. Mar. 24, 2014) (same); Acker, 2013 WL 1285435, at *1 (same).

[5] A recent one-page letter from defendants, sent long after the conclusion of briefing on the motion, contains a passing suggestion in a single sentence that defendants might call Mooney as a witness at trial after all. See Aug. 28 Letter. However, defendants' argument on this motion is premised on their representation that Mooney will not be a witness. Given that to retreat from this representation would be to undermine the basis for many of their arguments, and that

Accordingly, plaintiffs bear the burden of demonstrating that Mooney's testimony is both "necessary" to their case and that eliciting Mooney's testimony will be prejudicial to defendants. We address each next.

  A.   Necessity of Mooney's Testimony To Plaintiffs' Case

We begin by noting that plaintiffs never even state that they intend to call Mooney as a witness. In their opening brief, plaintiffs assert only that they "may" rely on a portion of Mooney's testimony from the TRO hearing at which he asserted that defendants's practice was to stop doing business with suppliers of counterfeit textbooks.[6] See Pl. Mem. at 8. In their reply brief, they state more broadly that they "might very well have to" call Mooney as a witness "depending on the testimony of other witnesses." Pl. Reply at 1; see id. at 2, 6. They provide only one example, however. They state that if Smyres testifies about the Disclosure "along the lines of his deposition testimony," they will "need Mr. Mooney's testimony — not anyone else's testimony." Id. at 6. Plaintiffs provide no explanation, however, of why this is so, other than to refer to pages of the fact section of their opening brief in which they assert that "the deposition testimony of Mr. Mooney and Mr. Smyres . . . are at odds." Pl. Mem. at 6.

When considering the "necessity" prong of the disqualification inquiry, "'[a] court

---

defendants have made no effort to submit any new argument to the Court opposing plaintiff's motion, we do not view this letter as retracting the defendants' earlier unequivocal representation. This conclusion is particularly appropriate in the absence of any allusion by defendants in their August 28 letter to their earlier representation, the absence of any statement that they were seeking to withdraw that representation, and the absence of any discussion of why defendants would be permitted to call Mooney as a witness when they concede that he is not listed in any of their witness disclosures, and where they had used this concession to prove that he would not be called as a witness, see Def. Mem. at 2.

[6] Plaintiffs also assert a need to cross-examine Mooney, Pl. Mem. at 12, but there will be no such need now that defendants are precluded from using him as a witness.

should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence.'" Finkel, 740 F. Supp. 2d at 373 (quoting Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992)) (alteration in original). "For purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." Wachovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC, 896 F. Supp. 2d 330, 332 (S.D.N.Y. 2012) (citations omitted); see also Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary.") (citation and internal quotation marks omitted) (alteration in original); Fenn & Fenn, Inc. v. MacQueen, 1989 WL 58041, at *8 (S.D.N.Y. May 19, 1989) ("[N]o disqualification should occur until it is apparent the attorney's testimony is itself admissible and necessary.") (citation omitted).

Here, plaintiffs have not met their "heavy burden," Gormin, 2009 WL 508269, at *2, to show that Mooney's testimony is necessary to their case. As for the testimony given at the TRO hearing, there is simply insufficient explanation as to why plaintiffs need to offer Mooney's testimony that defendants' practice was to stop doing business with suppliers of counterfeit textbooks. Not only is this statement entirely contrary to plaintiffs' position in this case, there is no showing that Smyres would not testify in exactly the same way.

Plaintiffs also fail to give any detail on why they will need to offer Mooney's testimony for the proposition that he disclosed to plaintiffs that Wirat Education of Thailand was the sole supplier of counterfeit books. While Mooney's testimony on this point, Mooney Dep. at 55, 64, is inconsistent with the Disclosure made by defendants in this case, it is consistent with the testimony of Smyres, who testified that he had always thought Wirat Education, not Best Books

World, was the source of most of the counterfeits, Smyres Dep. at 196.  Smyres also testified that he was sure that he had communicated to Mooney this information, that he thought he had told Mooney to disclose that Wirat Education was the source, and that he did not know how or why defendants disclosed Best Books World as the source.  See id. at 198, 201-05.  Thus, in the event plaintiffs wish to show that Smyres intended to communicate to plaintiffs that Wirat Education was the source of the counterfeits, they can use Smyres's testimony.  They do not need Mooney's testimony on this point.

We have already devoted far more analysis to the factual issue of necessity than plaintiffs offer in their briefs.  They do make some other arguments, however, that bear addressing.  At one point, plaintiffs argue that defendants' "promises [not to call Mooney as a witness] do not end the inquiry . . . because they have already repeatedly offered Mr. Mooney a [sic] fact witness in the pre-trial phase."  Pl. Reply at 3-4.  This is part and parcel of a larger theme of their moving papers: that having "injected" Mooney into a role as fact witness, Pl Mem. at 1, defendants have forfeited their right to use him as trial counsel.  The cases cited by plaintiffs, Pl. Reply at 4, however, do not support the argument that Mooney's testimony is "necessary" at trial merely because he has previously offered testimony.  In Dolenec, the court found that the movant had met his burden of demonstrating that he needed to call an attorney as a witness based on the importance of the factual testimony of the attorney and the unique knowledge of the attorney as to factual matters at issue.  2014 WL 6632942, at *5.  Dolenec did not hold that the mere appearance of an attorney as a fact witness eliminated the movant's burden of showing that the attorney's testimony was necessary.  The other case, Anderson & Anderson LLP-Guangzhou v. North American Foreign Trading Corp., 45 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2014), found that an attorney's testimony was necessary based on his substantive conduct involving the transaction

at issue, not merely based on his past involvement as a fact witness. Id. at *4-5. Plaintiffs put much stock in the fact that defendants "relied on [Mooney] as their sole witness at the 2012 TRO hearing." Pl. Reply at 5. However, whether Mooney possesses relevant knowledge, and thus was able to testify at the TRO Hearing, does not by itself show that his testimony is "necessary" here under the disqualification case law. See S & S Hotel Ventures, 69 N.Y.2d at 446 ("Testimony may be relevant and even highly useful but still not strictly necessary.").

Plaintiffs suggest that the availability of other witnesses at trial to testify as to matters that Mooney has testified to should not be relevant to the Court's inquiry. Pl. Mem. at 11 (whether other witnesses can be used at trial is "not . . . the standard"). But the availability of other witnesses is essentially fatal to the "necessity" prong of the disqualification inquiry. As one case notes, "[w]here counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate." Finkel, 740 F. Supp. 2d at 375 (citations omitted); see also Solow v. Conseco, Inc., 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue.") (citation and internal quotation marks omitted) (alteration in original); Shabbir v. Pak. Int'l Airlines, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("[A] lawyer who could provide only cumulative testimony may act as trial counsel.") (citation omitted); Kubin, 801 F. Supp. at 1113 ("[A]n attorney whose testimony would merely corroborate the testimony of others may not be subject to disqualification.") (citation omitted).

For these reasons, we conclude that plaintiffs have not shown that Mooney's testimony is necessary to their case, and thus disqualification must be denied for this reason alone.

B.    Prejudice

Plaintiffs application also founders on the "prejudice" prong of the disqualification inquiry. As to the "prejudice" requirement, "[t]estimony is deemed prejudicial where it is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" Gurvey, 2014 WL 6491281, at *4 (quoting Murray, 583 F.3d at 178) (additional citations omitted); accord Goodwine v. Lee, 2014 WL 4377855, at *3 (S.D.N.Y. Sept. 3, 2014). "'The movant bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.'" Kriss v. Bayrock Grp. LLC, 2014 WL 2212063, at *10 (quoting Paramount Commc'ns, Inc. v. Donaghy, 858 F. Supp. 391, 395 (S.D.N.Y. 1994)). "Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify." Finkel, 740 F. Supp. 2d at 376 (citing Capponi v. Murphy, 772 F. Supp. 2d 457, 472 (S.D.N.Y. 2009); Donaghy, 858 F. Supp. at 394).

Plaintiffs do not even attempt to show that the testimony of Mooney that they will seek to use is adverse to the factual assertions of defendants. They have provided no evidence that Smyres's factual position at the time of the 2008 TRO hearing was contrary to Mooney's testimony. The same is true for Mooney's statements regarding the settlement agreement. As to the Disclosure, Mooney's testimony appears to be entirely consistent with Smyres's testimony that Wirat Education was the major source of the counterfeit books. While both witnesses' testimony is contrary to the Disclosure itself, that inconsistency is irrelevant to the disqualification analysis.

In the end, plaintiffs "fail to specify . . . how [Mooney's] testimony would conflict with

or be sufficiently adverse to [defendants] and why there is a substantial likelihood of prejudice." Nimkoff, 2014 WL 1201905, at *9 (citing Acker, 2013 WL 1285435 at *3). Instead, plaintiffs "'invite[] th[e] court to speculate that if called to testify, [Mooney] might contradict . . . testimony given by [defendants];' however, the case law is clear that allegations based on conjecture do not suffice." Id. (quoting In re Galaxy Assocs., 114 B.R. 11, 14 (D. Conn. 1990) (additional citations omitted); see also Acker, 2013 WL 1285435 at *3 (denying motion to disqualify where defendants "fail[ed] even to assert, let alone show, that [plaintiff's counsel's] testimony would differ from Plaintiff's, or that any difference would be substantially prejudicial to Plaintiff, two key components of the disqualification analysis").

Because plaintiffs have not met their burden of showing that there is a "substantial likelihood" of prejudice to defendants, e.g., Acker, 2013 WL 1285435, at *1 (citation and internal quotation marks omitted), were they to call Mooney for the limited purposes they have hinted at, they have not met this prong of the disqualification inquiry either.[7]

---

[7] In their recent letter, defendants announce that at trial Mooney will be at counsel's table but will not speak when the jury is present. They state, without further explanation, that this diminished role for Mooney renders the plaintiffs' motion "moot." See Aug. 28 Letter. The Court does not follow this argument inasmuch as defendants are not consenting to the relief plaintiffs' seek: that is, the disqualification of Mooney. Nor have defendants explained why Mooney's diminished role is relevant to any of the issues briefed on this motion.

IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to disqualify Neil B. Mooney as defendants' counsel (Docket # 246) is denied.[8] Additionally, defendants are precluded from calling Mooney as a witness at trial.

SO ORDERED.

Dated: September 4, 2015
New York, New York

*signature*
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[8] For the same reasons, plaintiffs' request for attorney's fees, Pl. Reply at 8-9, is denied. Defendants request for sanctions "under Rule 37," Def. Mem. at 20, is also denied. The instant motion does not fit within any of the categories listed in Fed. R. Civ. P. 37.