# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> BOOK DOG BOOKS, LLC AND PHILIP SMYRES, <br><br> Defendants. | Case No: 1:13-cv-00816 - (WHP)(GWG) <br><br> Judge William H. Pauley III <br><br> Magistrate Judge Gabriel W. Gorenstein |

### THE NETHERLANDS INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

The Netherlands Insurance Company (hereinafter, "Liberty") submits this reply memorandum of law in support of its motion to intervene in this action pursuant to Fed. R. Civ. P. 24(b) for the limited purpose of submitting special jury interrogatories at trial.

### PRELIMINARY STATEMENT

Plaintiffs John Wiley & Sons, Inc., Cengage Learning, Inc., and Pearson Education, Inc. (collectively, "Plaintiffs") do not oppose Liberty's request to intervene, but ask that the proposed jury interrogatories from the insurers be submitted for review and response 30-days prior to the joint pretrial order filing date. Liberty has no issue with this request, as suggested in its motion.[1] (Mot. at 8-9.)

Book Dog Books, LLC and Philip Smyres (collectively, "BDB") opposes any intervention, although most of its memorandum is addressed to intervention as of right, on which

---

[1] Nevertheless, jury interrogatories will naturally depend upon the evidence actually introduced at trial. Therefore, while Liberty is amenable to providing proposed interrogatories for review prior to the joint pretrial order filing date, such interrogatories would be subject to change based upon the evidence introduced at trial and Liberty reserves its rights accordingly.

82629037v1

Liberty did not move. BDB otherwise ignores the "timeliness" test applicable to a Rule 24(b) analysis. Liberty's intervention request is timely under the "totality of the circumstances" test, in that trial has not yet been scheduled and Liberty's intervention is for a narrow purpose. BDB concedes that common issues of fact exist with respect to Liberty's proposed intervention and the underlying action. Finally, BDB's speculation that intervention would substantially prejudice the existing parties and delay these proceedings is without any support and is simply wrong. To the contrary, should Liberty's motion be denied, Liberty stands to be prejudiced in that it risks potentially waiving otherwise valid coverage defenses. Liberty's motion should be granted.

## ARGUMENT

As a preliminary matter, BDB's opposition is, for the most part, addressed to intervention "as a matter of right." (See, Opp'n at 4-19.) Liberty does not seek intervention as a matter of right, and BDB's attempt to conflate Liberty's Rule 24(b) request for permissive intervention with the heightened standard for intervention of right is therefore misplaced. Nevertheless, to the extent BDB's contention that a "good deal of Rule 24(a)(2) authority and principles is germane also for a Rule 24(b)(1) analysis" has any merit, Liberty addresses as much accordingly. (Opp'n at 5.)

## I. Liberty is Agreeable to Permitting Court and Party Review of Its Jury Interrogatories

Plaintiffs do not oppose Liberty's intervention request, but request an opportunity to be heard on the proposed interrogatories. Indeed, Liberty's limited intervention request is consistent with the Plaintiffs' suggested safeguard; i.e., that the Court and the parties will have an opportunity to review and be heard on Liberty's proposed jury interrogatories (see Mot. at 8-9.) Liberty respectfully requests that the Court allow this fair and sensible approach.

## II. Permissive Intervention for the Limited Purpose of Submitting Special Jury Interrogatories is Appropriate

### A. Under the Totality of Circumstances, Liberty's Motion for Permissive Intervention is Timely

In exercising their discretion to determine whether the intervention request is timely, the courts review the "totality of the circumstances." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001).

BDB's assertions that Liberty delayed bringing this Motion because Liberty has been defending, under a reservation of rights, for more than a year incorrectly assumes that BDB kept Liberty apprised of the circumstances and facts requiring intervention. BDB was not "regularly in touch" with Liberty. (Opp'n at 6.) Prior to coverage counsel's involvement, BDB failed to provide basic status reports, and only recently unloaded a "document dump" of thousands of pages of documents and deposition transcripts. Liberty has not received substantive reporting on any of the dispositive motions and rulings recently filed, and was not even advised that BDB had associated-in new counsel just a few weeks ago. BDB's generalized argument that a defense under a reservation of rights automatically precludes a subsequent intervention as untimely has no merit in this case.

More significantly, under the circumstances presented by this case, the timeliness of Liberty's motion should not be gauged from the date the complaint was filed alone. Liberty's motion is timely because intervention is sought for the sole purpose of submitting special jury interrogatories, if and when this case actually proceeds before a jury. The only relevant date for such limited intervention is the date of the jury instruction conference, which has not yet been scheduled — a trial date has not even been scheduled. Because this case has not yet progressed to the stage where special interrogatories may be submitted to the Court, Liberty's request is timely under the totality of circumstances.[2]

---

[2] BDB's citation to *Lawrence Music, Inc. v. Samick Music Corp.*, 227 F.R.D. 262 (W.D. Pa. 2005) for the proposition that "pokiness" weighs in favor of denying intervention is misplaced. In *Lawrence*, the insurer waited until after adjudication of cross-motions for summary judgment and until literally the eve of the trial date before

Further, Liberty's alleged delay has not prejudiced BDB by "preventing BDB from conducting discovery on the issues that the Insurers may want to present to a jury." (Opp'n at 7.) BDB's argument here is not only speculative, but also ignores its concession that similar factual issues exist in this action and any potential subsequent coverage litigation. The nature of the alleged infringing acts here and the amount of monetary loss sustained for each type of damage claimed is at issue in this case and in any future disputes relating to Liberty's duty, if any, to indemnify BDB. Liberty's interrogatories—which will ask the jury to more specifically identify any damages it may award—will be based on the evidence that is presented at trial. Additional discovery is not necessary. (See further discussion, *infra* at II(C).)

Given the limited relief it seeks and its inherent usefulness to streamline later coverage litigation, Liberty's request is timely under the totality of circumstances. *See, e.g.*, *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 877, n.7 (2d Cir. 1984) ("in view of the economy of time and effort inherent in the use of interrogatories in this situation, it would likewise not have been an abuse of discretion had the trial judge permitted the insurer to intervene under Rule 24(b)(2) for the limited purpose of proposing interrogatories to the court for submission to the jury" and that "nothing we have said prevents the district judge [on remand] from submitting the proposed interrogatories in this case to the jury").

**B. BDB Concedes that Common Questions of Fact Exist**

In addition to timeliness, permissive intervention is appropriate where a proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In its opposition, BDB concedes that "[BDB's] entitlement to indemnification under its insurance contracts with Insurers involves factual issues that should be

---

requesting intervention. *Id.* at 263. Here, there has been no trial date set and a motion for summary judgment and objections to the Magistrate Judge's report and recommendation on an earlier dispositive motion remain pending.

resolved if the Wiley litigation results in a jury verdict." (Opp'n at 19.) Accordingly, there is no dispute as to this element of permissive intervention.

      **C.    BDB Speculates as to Any Potential Prejudice It May Suffer**

Liberty's proposed intervention will not unfairly prejudice existing parties. As noted in its moving papers, Liberty will not have any involvement in the trial other than to seek approval of its special interrogatories to the jury, which will not affect the nature of the claims being tried or the evidence presented.

BDB concedes it has been aware of coverage issues for years, so it should come as no surprise that the insurers have an interest in ascertaining the specific grounds for any alleged indemnity obligation as efficiently as possible. Liberty's special interrogatories will ultimately depend on the actual evidence presented at trial, and will merely supplement the jury interrogatories submitted by the existing parties.[3] Liberty's limited questions pertain to potential damages that are attributable to, for example, certain time periods or injuries resulting from alleged infringement contained in BDB's advertising, and will logically flow from the evidence that Plaintiffs and BDB produce to the jury. BDB appears to concede as much, affirming that "[it] (and most likely Plaintiffs) each expect to raise the issues that the Insurers believe only they would raise." (Opp'n at 3.) And where, as here, a jury is requested to simply "break down the damages into certain enumerated categories," the "risk of jury confusion appears remote." *Thomas v. Henderson*, 297 F.Supp.2d 1311, 1325 (S.D. Ala. 2003). Without the risk of jury confusion, and with no additional discovery necessary, BDB is simply speculating as to the purported prejudice it will suffer.

In addition, any potential prejudice to BDB is mitigated by the fact that it (and Plaintiffs) will have an opportunity to respond to any proposed interrogatories Liberty submits. *See,*

---

[3] As noted in footnote 1, *infra*, Liberty reserves all rights to amend its interrogatories depending upon the evidence actually introduced at trial.

*Thomas*, 297 F.Supp.2d at 1326 (allowing insurance carrier to permissively intervene in underlying action and dismissing "prejudice" counter arguments, stating "to the contrary, the timetable for trial will be unaffected. . . . Once [the carrier] files its proposed special verdict form or interrogatories, all parties will be given a reasonable opportunity to be heard before the Court rules on whether such documents will be used."). This "review and comment" process is typical, and is expressly noted in Liberty's underlying motion. (Mot. at 8-9.) That the Court itself can issue the proposed interrogatories on its own, moreover, further diminishes any purported prejudice to BDB. *Restor-A-Dent Dental Labs, Inc.*, 725 F.2d at 877 (suggesting to the District Court that it could still submit the proposed interrogatories to the jury, even without formal intervention).

Further, BDB's reliance on *Restor-A-Dent Dental Labs, Inc.* and *High Plains Co-op. Assoc. v. Mel Jarvis Const. Co., Inc.*, 137 F.R.D 285 (D. Neb. 1991) to suggest there is a prejudicial conflict of interest presented by Liberty's intervention request is misplaced, since Liberty does not seek to propose special interrogatories "at odds" with the underlying claims.

Finally, BDB's suggests that it would be prejudiced because it would need to re-open discovery to obtain documents and evidence relevant to "advertising" and "advertising injury," as defined by the operative policies. (Opp'n at 7.) BDB, however, admits that Plaintiffs have alleged in this case that "consequent infringements"—i.e., infringements resulting from advertising—have occurred. (Opp'n at 16.) If Plaintiffs have already alleged that infringements resulting from advertising have occurred, the issue has been ripe for discovery since the case's inception and it is questionable why BDB would now have to "re-open" discovery on the issue. In any event, it is entirely speculative at this juncture for BDB to suggest what evidence will or will not come in at trial, and its argument ignores that the parties will have an opportunity at the jury instruction conference to review and comment on any proposed interrogatories.

### D. Liberty Has a Protectable Interest in this Proceeding and Will Be Prejudiced Should Intervention Be Denied

Ohio law, which will govern any subsequent coverage lawsuit, requires Liberty to intervene or risk being precluded from challenging certain facts pertaining to coverage. *Howell v. Richardson*, 45 Ohio St.3d 365, 367-68 (holding that because insurers are in privity with their insureds, insurers are generally bound by the facts and findings of an underlying action brought against their insured by a claimant). Thus, where an underlying action may determine facts that might impact insurance coverage, insurers must intervene to avoid any claim of issue preclusion. *Id.* BDB fails to address this issue in its opposition.

Contrary to BDB's suggestion, Liberty is not seeking a "second bite" at the apple. (Opp'n at 20.) Rather, Liberty is looking to preserve resources and to protect its interests. In support of its "second bite" argument, BDB cites to *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629 (1st Cir. 1989), a First Circuit decision largely affirming denial of intervention as of right under Fed. R. Civ. P. 24(a). Indeed, the same provisions from *Dingwell* that BDB cites in opposition pertain to *Dingwell's* discussion of "contingent interests" under a Rule 24(a) analysis. *Dingwell*, 884 F.2d at 638-41. Regarding Rule 24(b)(1)(B)—the operative Rule for purposes of Liberty's motion—*Dingwell* merely affirmed the underlying holding denying permissive intervention on different grounds, pertaining to jurisdiction. *Amoco Oil Co. v. Dingwell*, 690 F. Supp. 78, 85 (D. Me. 1988) aff'd sub nom. *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 641 (1st Cir. 1989). There are no jurisdictional issues raised by Liberty's permissive intervention request and BDB's attempt to bootstrap *Dingwell's* Rule 24(a) analysis here should be rejected.

In addition, both Liberty and BDB could be prejudiced by having to incur costs associated with duplicative litigation should Liberty's motion be denied. If there is a finding of liability against BDB and damages are assessed, without an allocation, Liberty will be unable to determine the extent of its coverage obligations. Without such an allocation, any subsequent

coverage action will not be streamlined and would essentially require re-litigation (with the same evidence and witnesses) of all damages evidence presented in this case. "[T]he possibility that re-litigation of the same issue may be avoided is a strong reason to permit intervention." *Thomas*, 297 F.Supp.2d at 1327; *id.* ("absent an itemized jury verdict in this case, resolution of the coverage issues at stake in the declaratory judgment action could be complicated considerably.").

## III. CONCLUSION

For the foregoing reasons, including those set forth in its underlying Motion, Liberty respectfully requests that the Court grant its motion to intervene pursuant to Fed. R. Civ. P. 24(b) for the limited purpose of submitting special interrogatories to the jury.

Dated: December 23, 2015

                                      SEDGWICK LLP

                                      By: /s/ Timothy D. Kevane
                                            Timothy Kevane
                                            SEDGWICK LLP
                                            225 Liberty Street, 28th Floor
                                            New York, NY  10281-1008

                                            *Attorneys for The Netherlands Insurance Company*