USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/12/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOHN WILEY & SONS, Inc., *et al.*,

                Plaintiffs,

   -against-

BOOK DOG BOOKS, LLC, and PHILIP
SMYRES,

                Defendants.
----------------------------------------X

13cv816

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        John Wiley & Sons, Inc., Cengage Learning, Inc., and Pearson Education, Inc. (the "Publishers") bring this action against Book Dog Books, LLC and Philip Smyres ("Book Dog"), asserting trademark and copyright infringement claims. On October 2, 2015, Magistrate Judge Gabriel Gorenstein denied the Publishers' motion for spoliation sanctions (the "Spoliation Order"). The Publishers appeal. This Court affirms the conclusion reached by Magistrate Judge Gorenstein in the Spoliation Order.

## BACKGROUND

        Book Dog, a textbook reseller, is a veteran of copyright and trademark infringement lawsuits. In 2007, the Publishers brought claims similar to those in this action against Book Dog. See Cengage Learning, Inc. v. Buckeye Books, No. 07-cv-8540 (S.D.N.Y. filed Oct. 2, 2007). In 2008, Book Dog entered into an agreement to resolve that action (the "Settlement Agreement"). The Settlement Agreement required Book Dog to cease selling or importing pirated textbooks; disclose the sources of its pirated textbooks; and undergo an annual inspection of its premises by the Publishers for three years. (See Declaration of Julie C. Chen, Ex. 1, ECF No. 203, at 3–9.) Book Dog informed the Publishers that "most" counterfeit

textbooks came from Best Books World ("Best Books"), a Thailand company. (Declaration of Julie C. Chen ¶ 4, ECF No. 241.) But Book Dog continued to do business with Best Books. And several customers returned Book Dog's textbooks or refused to do further business with it because of concerns about counterfeit textbooks. (Spoliation Order at 5–6.)

After entering the Settlement Agreement, Book Dog continued to destroy counterfeits as it discovered them in its inventory. (Declaration of Julie C. Chen, ECF No. 170 ("Chen Decl."), Ex. 21; February 28, 2014 Deposition of David Dimm ("Dimm Dep.") at 33–34, 44–45, 92–93; Spoliation Order at 6–9.)

On August 5, 2011, the Publishers sent a cease-and-desist letter that advised Book Dog "not to destroy, conceal or alter any . . . textbooks" or relevant records. (Chen Decl. Ex. 14, at 2.) On August 30, 2011, the Publishers sent a follow-up letter identifying specific infringed works. (Chen Decl. Ex. 3.) Nonetheless, in the spring of 2012, several boxes of counterfeit books were destroyed.

In December 2012, Book Dog filed a declaratory judgment action in the Southern District of Ohio alleging that the Publishers had wrongly accused it of copyright and trademark infringement and prevented it from accessing its textbook supply accounts. See Book Dog Books, LLC v. Cengage Learning, Inc., No. 12-cv-1165 (S.D. Ohio filed December 18, 2012) (the "Ohio Action"). Thereafter, the Publishers sued Book Dog in the Southern District of New York and identified specific titles that were being infringed. See John Wiley & Sons v. Book Dog Books, No. 13-cv-816 (S.D.N.Y. filed Feb. 4, 2013).

In response to the litigation, Book Dog retained counterfeit textbooks that matched titles on the Publishers' infringement list. But if counterfeit textbooks were not on the

2

infringement list, Book Dog returned them or destroyed them. (Chen Decl. Ex. 24, Dimm Dep. at 33–34; June 4, 2014 Deposition of Philip Smyres, ("Smyres Dep. II"), at 265, 100.)

Magistrate Judge Gorenstein determined that spoliation sanctions were not warranted because the Publishers' prior lawsuits created no reasonable anticipation of litigation over specific titles, and Book Dog had no obligation to retain records for titles other than those previously identified by the Publishers. (Spoliation Order at 12.)

## LEGAL STANDARD

"The Federal Magistrate's Act . . . and Rule 72 of the Federal Rules of Civil Procedure provide the standard of review of a magistrate judge's order." White v. Lenox Hill Hosp., No. 02-cv-5749, 2005 WL 1421834, at *1 (S.D.N.Y. June 20, 2005). A magistrate judge's pre-trial discovery order is a "non-dispositive matter[]." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990)). "With respect to nondispositive matters, a district judge shall 'modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.'" Lenox Hill, 2005 WL 1421834, at *1 (citations omitted). The magistrate judge's ruling "is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure' . . . and is clearly erroneous if the district court is 'left with the definite and firm conviction that a mistake has been committed.'" Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (citations omitted). "The party seeking to overturn a magistrate judge's decision thus carries a heavy burden." Thai Lao Lignite, 924 F. Supp. 2d at 512.

## DISCUSSION

"Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." West v. Goodyear Tire & Rubber

3

Co., 167 F.3d 776, 779 (2d Cir. 1999) (citations omitted). A district court has "broad discretion in fashioning an appropriate sanction." Harkabi v. SanDisk Corp., 275 F.R.D. 414, 418 (S.D.N.Y. 2010) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002)). "Where a party seeks a severe sanction such as dismissal or an adverse inference, the movant must prove (1) that the spoliating party had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) that the party acted with a culpable state of mind upon destroying or losing the evidence; and (3) that the missing evidence is relevant to the movant's claim or defense." Harkabi, 275 F.R.D. at 419.

    A. <u>Obligation to Preserve Evidence</u>

"In determining whether a court should exercise its authority to impose sanctions for spoliation, a threshold question is whether a party had any obligation to preserve the evidence." Smith v. City of New York, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005) (citation omitted). "The obligation to preserve evidence may arise through a discovery request, through information alleged in the complaint, or prior to the initiation of litigation where a party is on notice that legal proceedings are likely." Smith, 388 F. Supp. 2d at 189. "To fulfill this preservation obligation . . . each party must identify all sources of potentially relevant evidence and implement a 'litigation hold' suspending any routine document destruction or other processes involved in the ordinary course of business that might result in the destruction of potentially relevant evidence." R.F.M.A.S., Inc. v. So., 271 F.R.D. 13, 24 (S.D.N.Y. 2010). Here, the Publishers object to the Magistrate Judge's conclusion that Book Dog had no obligation to preserve counterfeit textbooks prior to this litigation, and no obligation to preserve counterfeit textbooks not identified in the Publishers' Complaint after this action commenced.

Book Dog defends on the ground that the presence of infringing textbooks in its inventory, rather than its customer accounts, is not relevant to the Publishers' claims that Book Dog actually sold the textbooks. (ECF No. 323, at 4.) But as this Court recently observed, it is Book Dog's failure to retain records of the infringing materials it sold that has put the infringing books in its inventory at issue. (See ECF No. 352, at 9.)

Book Dog argues that its obligation to preserve records was limited to counterfeit titles identified in the Publishers' pleadings. But that overlooks the Publishers' long-standing contention that Book Dog has built its business around purchasing cheap—and often counterfeit—textbooks. (Compl. at 2.) Given Book Dog's documented pattern of infringement, and its penchant for litigation, this Court agrees with the Publishers that Book Dog was obligated to maintain records of all counterfeit textbooks it discovered.[1]

B. Culpability

"[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." Harkabi, 275 F.R.D. at 418 (citing Residential Funding Corp., 306 F.3d at 108) (emphasis in original). Negligence is a "failure to conform to th[e] standard" of "what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding . . . even if it results from a pure heart and an empty head." Harkabi, 275 F.R.D. at 418 (citation omitted). "Gross negligence is the 'failure to exercise even that care which a careless person would use.'" Harkabi, 275 F.R.D. at 418 (citation omitted). Ultimately, the question of whether a party acted "culpably" occurs "along a continuum of fault—ranging from

---

[1] Notably, in instances where Book Dog did retain other counterfeit textbooks, the Publishers discovered more infringement. The Publishers' inspections of Book Dog's premises between October 2013 and March 2014 led to the addition of 51 new infringed titles into this action. (Chen Decl. ¶ 6.)

5

innocence through the degrees of negligence to intentionality." Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 258 (2d Cir. 1999). "The degree of culpability bears on the severity of sanctions that are warranted." UMG Recording, Inc. v. Escape Media Grp., Inc., No. 11-cv-8407, 2014 WL 5089743, at *11 (S.D.N.Y. Sept. 29, 2014).

      While Book Dog discarded records relevant to this litigation, that destruction is attributable to negligence in the form of sloppy record-keeping and loose controls over its textbook supply, as opposed to deliberate attempts at spoliation. Book Dog employees testified that the company's implementation of a litigation hold was lackadaisical and ineffective. (See Spoliation Order at 8.) Smyres took the position that the destruction of counterfeits not identified in the Complaint ultimately benefited the Publishers because it prevented counterfeits from leaking from Book Dog's ill-monitored inventory into the supply chain. (E.g., Chen Decl. Ex. 9, Smyres Dep. II, at 133.) While reasonable minds could (and should) question the wisdom of that attitude, the other incidents identified in the Spoliation Order confirm both the lack of spoliative intent and Book Dog's inability to manage its own inventory. Because Book Dog's failure to retain records of counterfeits was negligent, a severe sanction—such as terminating sanctions, attorney's fees, or a mandatory adverse inference—is inappropriate. But in a sense, Book Dog's shoddy record-keeping will serve as its own sanction.

      As the Magistrate Judge observed, the denial of sanctions will not shield Book Dog from negative inferences drawn by a jury. The jury may well employ Book Dog's (lack of) recordkeeping, destruction of counterfeit textbooks, and continued dealings with known counterfeiters to prove the Publishers' infringement claims.

6

CONCLUSION

For the foregoing reasons, this Court affirms the conclusion of the Magistrate Judge in the Spoliation Order. At trial, this Court will instruct the jury that it may consider document destruction practices in determining whether Book Dog infringed the Publishers' copyrights and trademarks.

Dated: April 12, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record via ECF.*