**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

JOHN WILEY & SONS, INC.,
CENGAGE LEARNING, INC., and
PEARSON EDUCATION, INC.,

Plaintiffs,

v.

BOOK DOG BOOKS, LLC and
PHILIP SMYRES,

Defendants.

Case No. 1:13-cv-00816 (WHP) (GWG)

Judge William H. Pauley III

Magistrate Judge Gabriel W. Gorenstein

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION FOR RECONSIDERATION**
**(DOC. NOS. 354 AND 355)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. STANDARD FOR RECONSIDERATION ..... 2

III. RECONSIDERATION IS NOT NEEDED TO CORRECT CLEAR ERROR ..... 3

A. The Court Properly Applied The Facts To Controlling Law ..... 3

B. Defendants' Evidentiary Objections Are Without Merit ..... 6

1. There is no dispute that Defendants destroyed counterfeit textbooks and failed to maintain records ..... 6
2. The Court did not rely on Defendants' "history" to infer infringement ..... 7
3. Defendants themselves determined that their suppliers sold them counterfeit books ..... 8
4. Whether Defendants' record-keeping is "normal" for the industry is wholly irrelevant ..... 9

IV. DEFENDANTS' ATTEMPT TO REARGUE THEIR POSITION SHOULD BE REJECTED ..... 12

V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

## CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36 (2d Cir. 2012) ........ 3

*Aris Isotoner Inc. v. Dong Jin Trading Co*., 87 Civ. 890 (RO), 1989 U.S. Dist. LEXIS 18447, 1989 WL 236526 (S.D.N.Y. Sept. 14, 1989) ........ 6

*Capitol Records, Inc. v. MP3tunes, LLC,* 821 F. Supp. 2d 627 (S.D.N.Y. 2011) ........ 3, 5

*Capitol Records, Inc. v. Thomas,* 579 F. Supp. 2d 1210 (D. Minn. 2008) ........ 5

*Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 2008 U.S. App. LEXIS 19277 (2d Cir. 2008) ........ 6

*Cioce v. County of Westchester,* 128 Fed. Appx. 181 (2d Cir. 2005) ........ 2

*Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191 (2d Cir. 1959) ........ 6

*Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678 (S.D.N.Y. 2011) ........ 3

*Fendi Adele, S.R.L. v. Ashley Reed, Inc.,* 507 Fed. Appx. 26 (2d Cir. 2013) ........ *passim*

*Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000) ........ 12

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99 (2d Cir. 2013) ........ 2

*Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966 (2d Cir. 1985) ........ 6

*Microsoft Corp. v. Grey Computer,* 910 F. Supp. 1077 (D. Md. 1995) ........ 5

*Microsoft v. MBC Enterprises.* 120 Fed. Appx. 234, 2004 U.S. App. LEXIS 27103, 73 U.S.P.Q.2D (BNA) 1505 (10th Cir. 2004) ........ 5

*Nakshin v. Holder,* 360 Fed. Appx. 192 (2d Cir. 2010) ........ 3

*Pascazi v. Rivera*, No. 13 Civ. 9029 (NSR), 2015 U.S. Dist. LEXIS 134760, 2015 WL 5783944 (S.D.N.Y. Oct. 1, 2015) ........ 3

*Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS) (JCF), 2013 WL 1360340, 2013 U.S. Dist. LEXIS 48954 (S.D.N.Y. Apr 3, 2013) ........ 5

*Repp v. Webber*, 132 F.3d 882 (2d Cir. 1997) ........ 3

*Roland v. McMonagle*, No. 12 Civ. 6331 (JPO), 2015 U.S. Dist. LEXIS 154619, 2015 WL 7288638 (S.D.N.Y. Nov. 16, 2015) ....................2

*Square D Co. v. Pioneer Breaker & Supply Co.*, A-07-CA-810 (SS), 2009 U.S. Dist. LEXIS 118496, 2009 WL 5170211 (W.D. Tex. Dec. 18, 2009) ....................5, 14

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ....................6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245 (2d Cir. 1992) ....................2

**RULES**

Local Civil Rule 6.3 ....................2

Fed. R. Evid. 404(b) ....................7, 8

## I. INTRODUCTION

Plaintiffs John Wiley & Sons, Inc. ("Wiley"), Cengage Learning, Inc. ("Cengage"), and Pearson Education, Inc. ("Pearson") (collectively, "Plaintiffs") respectfully submit this opposition to Defendants' Motion for Reconsideration (Doc. No. 355) ("Defendants' Reconsideration Motion") of this Court's March 29, 2016 Memorandum & Order denying summary judgment (Doc. No. 352) ("March 29 Order").

Defendants present no basis for this Court to reconsider and reverse the March 29 Order. Unable to demonstrate the exceptional circumstances required for reconsideration, Defendants re-argue the same factual and legal arguments that this Court already heard and rejected. Defendants' Reconsideration Motion would have this Court deny a jury from considering that, after having agreed in a prior settlement agreement not to again infringe Plaintiffs' copyrights or trademarks, Defendants did just that. A jury is entitled to consider all 140 works in suit, not just the 16 for which Defendants did not muster a challenge on summary judgment. The March 29 Order appropriately declined to adopt the Report and Recommendation from Magistrate Judge Gorenstein (Docket No. 308) (the "Report"), and concluded that Plaintiffs had presented sufficient evidence for a jury to determine that Defendants sold counterfeit copies of 117 of Plaintiffs' copyrighted works that the Report had recommended for dismissal. This Court's March 29 Order is consistent with the well-established and applicable case law finding that the combination of direct and indirect evidence, such as that presented in this case, is sufficient to establish liability for infringement. For all but six out of the 140 works, counterfeit copies were found in the possession of Defendants, customers of Defendants, suppliers of Defendants, and/or some combination of the foregoing. Even after having been sued for distributing counterfeit books before, Defendants continued to buy textbooks from admitted counterfeit sellers, failed to

conduct any due diligence on their suppliers, did not properly inspect textbooks to insure that they were legitimate, chose not to maintain records, and destroyed suspected counterfeit textbooks that they knew would be evidence. This evidence is overwhelming, and Defendants know that if they cannot find some way to keep it from a jury, their liability will be immense.

Defendants' Reconsideration Motion does nothing to undermine the logic and rationale of the March 29 Order. It does not identify any newly discovered evidence or an intervening change in controlling law. It does not identify a key fact in the record or a controlling point of law that the Court overlooked. What Defendants' Reconsideration Motion does is mischaracterize the March 29 Order, re-argue issues already decided by the Court, and advocate a standard for proving liability that is not only impossible, but in conflict with well-established, governing case law. Defendants' Reconsideration Motion should be denied.

## II. STANDARD FOR RECONSIDERATION

"A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)) (internal quotation marks omitted). To show "manifest injustice," the moving party must show that the Court overlooked a key fact in the record or a controlling point of law. *Roland v. McMonagle*, No. 12 Civ. 6331 (JPO), 2015 U.S. Dist. LEXIS 154619, 2015 WL 7288638, at *2 (S.D.N.Y. Nov. 16, 2015) (citing *Cioce v. County of Westchester*, 128 Fed. Appx. 181, 185 (2d Cir. 2005)); *see also* Local Civil Rule 6.3 ("There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). A motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances. *Nakshin v. Holder*, 360 Fed. Appx. 192, 193 (2d Cir. 2010)) (internal quotation marks omitted). "Parties should not regard such a motion as an opportunity to take a second bite at the apple." *Pascazi v. Rivera*, No. 13 Civ. 9029 (NSR), 2015 U.S. Dist. LEXIS 134760, 2015 WL 5783944, at *2 (S.D.N.Y. Oct. 1, 2015) (quoting *Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, 52 (2d Cir. 2012)) (alterations and internal quotation marks omitted).

## III. RECONSIDERATION IS NOT NEEDED TO CORRECT CLEAR ERROR.

Defendants do not identify any newly discovered evidence or a change in controlling law that would warrant reconsideration of this Court's March 29 Order. Instead, Defendants have repackaged the same issues as before and raise meritless evidentiary objections.

### A. The Court Properly Applied The Facts To Controlling Law.

It has long been the case that copyright and trademark infringement claims may be proven with circumstantial evidence. As the Court recognized in its March 29 Order, "the improper copying or distribution of a plaintiff's work may be shown 'either by direct evidence or by indirect evidence.'" (March 29 Order at 8 (citing *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997)). The Court held that, "Plaintiffs need not offer actual copies of the works at issue" and "testimony and other documents are sufficient to establish that copying occurred." *Id.* (internal quotations omitted) (citing *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 647 (S.D.N.Y. 2011)). Indirect evidence could consist of evidence showing that the defendant failed

to maintain or destroyed records while failing to act with sufficient care to ensure that its goods were not counterfeit. (March 29 Order at 9 (citing *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.,* 507 Fed. Appx. 26, 31 (2d. Cir. 2013)).

In *Fendi Adele,* the defendants were similarly situated to Defendants in this case, having been caught distributing counterfeit goods and on notice not to infringe, yet nonetheless failed to keep adequate records or adequately check the goods for authenticity. Faced with direct evidence that the defendants distributed counterfeit goods after 2005, and inferential or circumstantial evidence that the goods prior to 2005 were counterfeit, the Second Circuit found that it would "strain credulity" to believe that *none* of the works sold prior to 2005 by the defendant were counterfeit. *Fendi Adele, S.R.L.,* 507 Fed. Appx. at 30. The facts presented in the case at bar are almost identical. The evidence here included Defendants' purchases from known counterfeit suppliers, Defendants' lack of anti-counterfeiting measures, their failure to keep accurate records, their destruction of potentially infringing textbooks, *and* the exemplars found in Defendants' inventories and in the inventories of their customers and suppliers. *Id*. Applying the above law, the Court found that Plaintiffs presented sufficient evidence from which a jury could conclude that Defendants sold the counterfeit works at issue. (March 29 Order at 9).

Defendants repeatedly advocate, contrary to *Fendi Adele*, that it would be an improper inference to conclude that just because some books in a shipment from a supplier were counterfeit, that all of the books in that shipment were counterfeit. (Defs' Motion for Reconsideration at 9-10). Yet, the Second Circuit determined this exact type of evidence to be sufficient to *establish* liability on summary judgment; it, therefore, is more than sufficient to create a genuine issue of fact to defeat summary judgment. Defendants' attempts to distinguish *Fendi Adele* are strained and untenable.

The Court's March 29 Order is not only squarely in line with *Fendi Adele*, but also with numerous other courts in the Second Circuit and other Circuits that have relied on circumstantial evidence to prove infringement. *See*, *e.g., Microsoft v. MBC Enterprises.* 120 Fed. Appx. 234, 237-238, 2004 U.S. App. LEXIS 27103, *5-10 (10th Cir. 2004) (issue of fact for trial as to whether software purchased from overseas consisted entirely of counterfeits where a portion of it was inspected and found to be fake); *Pearson Educ., Inc. v. Frances*, No. 11 Civ. 6081 (LTS) (JCF), 2013 WL 1360340, 2013 U.S. Dist. LEXIS 48954, at *9 (S.D.N.Y. Apr 3, 2013) (denying defendant's summary judgment motion where "[a] reasonable jury could conclude from the volume of sales and the incomplete records that Defendant sold copies of both [copyrighted works]"); *Capitol Records, Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 647 (S.D.N.Y. 2011) ("Contrary to MP3tunes' argument, EMI need not offer actual copies of the works at issue. In the context of unauthorized duplication of digital works, testimony and other documents are sufficient to establish that copying occurred"); *Square D Co. v. Pioneer Breaker & Supply Co*., A-07-CA-810 (SS), 2009 U.S. Dist. LEXIS 118496, *22-25, 2009 WL 5170211 (W.D. Tex. Dec. 18, 2009) (affirming reliance on the existence of counterfeit items for sale from the supplier to infer that the items sold by that supplier to the defendant was counterfeit); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) ("[D]irect proof of actual dissemination is not required by the Copyright Act. Plaintiffs are free to employ circumstantial evidence to attempt to prove [a violation]"); *Microsoft Corp. v. Grey Computer*, 910 F. Supp. 1077 (D. Md. 1995) (granting summary judgment where the circumstantial evidence, including examination of business records and sales invoices, showed the distribution of thousands of counterfeit products).[1]

---

1 In the analogous context of damages for infringement, time and time again the Second Circuit

**B. Defendants' Evidentiary Objections Are Without Merit.**

Distorting the March 29 Order and the facts of the case, Defendants claim that the Court relied on "incorrect," "inadmissible" or non-existent evidence. (Defs' Reconsideration Motion at 5). There is no merit to Defendants' arguments.

1. There is no dispute that Defendants destroyed counterfeit textbooks and failed to maintain records.

Defendants accuse the Court of erroneously relying on evidence that "Defendants destroyed *sales documents*" and then argue that no such evidence exists. (*See, e.g.,* Defs' Reconsideration Motion at 2, 5). To prop up this specious argument, Defendants raise a false "straw-man." Nowhere in the March 29 Order did the Court state that Defendants destroyed *sales documents.* Rather, the Court stated that Defendants' "failure to maintain records" while continuing to "destroy or return counterfeit textbooks" could lead a fact finder to infer that Defendants sold the counterfeit textbooks. (March 29 Order at 8-9). In this regard, the Court relied on evidence of Defendants' destruction of counterfeit textbooks, a fact Defendants admit.

---

has reinforced that "[w]here the defendants fail to produce evidence . . . of [their] sales of counterfeit products, the court must rely on less certain methods of proof." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 622, 2008 U.S. App. LEXIS 19277, *17-18 (2d Cir. 2008) (quoting *Louis Vuitton S.A. v. Spencer Handbags Corp*., 765 F.2d 966, 973 (2d Cir. 1985)); see also *Deering, Milliken & Co. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959) ("where . . . the defendant controls the most satisfactory evidence of sales the plaintiff need only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement"); *see also Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931) (finding while damages may not be based on mere speculation or guess, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate" and that "[t]he risk of uncertainty should be thrown upon the wrongdoer instead of upon the injured party."); *Aris Isotoner Inc. v. Dong Jin Trading Co*., 87 Civ. 890 (RO), 1989 U.S. Dist. LEXIS 18447, 1989 WL 236526, * 17 (S.D.N.Y. Sept. 14, 1989) (When "actual sales cannot be precisely determined, the court may resolve any doubts against the defendant in calculating profits, particularly if the uncertainty is due to the defendant's inadequate record-keeping or failure to produce documentary evidence.").

(Defs' Reconsideration Motion at 5).[2] In *Fendi Adele*, the Second Circuit held that the failure to maintain records of transactions and to properly inspect goods was directly relevant to the claim, given that the defendants were on notice that the good might be infringing. In the case at bar, the Court similarly recognized that Defendants' prior settlement, where they had been caught distributing counterfeit goods and had agreed not to do so again, was a relevant consideration in light of Defendants' failure to maintain records. (March 29 Order at 8-9). Regardless when Defendants' preservation obligations commenced, which is a question addressed in a separate order, the Court properly recognized that a jury is entitled to consider that Defendants destroyed counterfeit books without maintaining any records of that activity. (*See* Memorandum & Order, filed April 12, 2016 (Doc. No. 353)). Thus, Defendants' claim that the Court erroneously relied on the destruction of "sales records" is both factually baseless and inapposite to *Fendi Adele*.

2. The Court did not rely on Defendants' "history" to infer infringement.

Citing Rule 404(b) of the Federal Rules of Evidence, Defendants claim that the Court cannot rely on their "supposed history of dealing in pirated books" to infer liability. (Defs' Reconsideration Motion at 6). This objection too misstates the March 29 Order. Nowhere in the March 29 Order did the Court rely on Defendants' "history" to infer liability. Rather, the Court summarized that Plaintiffs rely on all of the *other* evidence -- presence of counterfeits in inventories, Defendants' inventory practices, and Defendants' destruction of books and documents -- to "demonstrate a history of dealing in pirated textbooks." (March 29 Order at 7).

[2] Defendants suggest that their destruction of counterfeit textbooks was consistent with Plaintiffs' request because Plaintiffs had earlier instructed Defendants to destroy the counterfeit textbooks following settlement of their prior litigation. (*See* Defs' Reconsideration Motion at 6). Needless to say, the two situations are hardly similar. One came after the settlement of litigation whereas the other occurred without Plaintiffs' knowledge and after Defendants had promised not to infringe again. Indeed, Defendants' destruction of the counterfeit textbooks was nothing more than an attempt to destroy evidence.

In determining a jury could conclude that Defendants distributed counterfeit books, the Court did not rely on Defendants' past history of infringement, but rather on their continued sourcing of textbooks from known counterfeit sellers, Defendants' lack of procedures to prevent infringement, their failure to keep records and destruction of books, and the discovery of counterfeit books in their inventories and those of their customers and suppliers. (March 29 Order at 9). Defendants' claim that the Court erred in relying on their past history of infringement is thus inaccurate and their invocation of Rule 404(b) wholly misplaced. Rather than any conflict with Rule 404(b), the Court's March 29 Order and Plaintiffs' theory of the case are squarely in line with *Fendi* and myriad other counterfeiting cases. (*See supra* at 5-6).

3. Defendants themselves determined that their suppliers sold them counterfeit books.

Defendants next argue that the Court relied on nothing more than "accusations" and "allegations" that Defendants' suppliers sold counterfeit textbooks and that allegations in a complaint do not constitute evidence. (Defs' Reconsideration Motion at 7). Specifically, Defendants claim that the March 29 Order relied on an allegation contained in Plaintiffs' complaint that one of their sources, "the Blackerbys," had been previously sued for infringement. (*Id.*) Defendants again mischaracterize the March 29 Order as well as the evidence.

In discussing the Blackerbys, the Court recognized that they had been previously sued for importing and distributing counterfeit textbooks and cites to an allegation in the complaint. (March 29 Order at 2). Defendants seize upon this fact to assert that allegations are not evidence. Defendants ignore, however, the very next sentence of the Order, which states that Defendant Smyres himself believed that the Blackerbys were obtaining books from overseas. (*Id.* at 3). More importantly, Defendants themselves told the Blackerbys that the books Defendants purchased from them were counterfeit, and Defendants returned unsold quantities of

those counterfeit textbooks to the Blackerbys for a refund. In fact, it was on this basis that the Report recommended denying summary judgment for five titles for which summary judgment was sought. (*See* Report at 37-38). Thus, Defendants' argument that there is no factual support for concluding that the Blackerbys sold counterfeit books is wholly inconsistent with Defendants' own admissions in emails and other documents.

Defendants also ignore the fact that the Blackerbys were only one of the sources identified by the March 29 Order. With respect to Defendants' other source, Best Books World, the Order found, as supported by the evidence, that Defendants admitted to Plaintiffs that Best Books World was the source of most, if not all, of the pirated books from the previous lawsuit and that Defendants nevertheless continued to deal with Best Books World and purchased more than 11,000 books from them. (March 29 Order at 2). Thus, the March 29 Order did not commit clear error in finding that Defendants sourced from suppliers of counterfeit books.

4. Whether Defendants' record-keeping is "normal" for the industry is wholly irrelevant.

Defendants argue that the March 29 Order's reliance on Defendants' lax record-keeping to infer liability is "problematic" because their recordkeeping is "normal within the industry." (Defs' Reconsideration Motion at 8). Defendants argue that their recordkeeping was in line with the "largest dealers in the used book market, TBS, MBS Book Exchange, and Follett." (Defs' Reconsideration Motion at 9). Here too, Defendants miss the mark for a number of reasons.

First, Defendants provide no factual foundation for what is "normal" or the "industry." Nor have Defendants presented any evidence from any expert as to industry standards. And, of course, Defendants can offer no support for why others' allegedly similar poor recordkeeping practices would preclude a jury from considering Defendants' own lack of record keeping.

Second, as can be seen in the exhibits attached to the underlying motions, Defendants

purchased just as many, if not more, new books as they did used. (*See, e.g,* Doc No. 241-38, Exhibit of Emails from Best Books World offering Defendants New Books for sale; Doc No. 277-5, List of Morena books sold from Tichenor to Defendants). Defendants have put forward no evidence in the case to support the claim that they are a "used textbook dealer."[3] The argument is also a moot point. "Used textbook dealers" do not have a special pass to engage in the importation or distribution of counterfeit goods that is prohibited for "new" book dealers. (*See, e.g.,* Defs' Reconsideration Motion at 15).

Third, Defendants' situation is clearly not like those of other distributors. Unlike those other distributors, Defendants were parties to a prior lawsuit and a settlement agreement in which they agreed not to infringe again. As a result, this Court specifically found that Defendants were obligated to maintain records of all counterfeit textbooks it discovered. (*See* Doc. No. 353 at 5). In short, Defendants were not similarly situated to others with respect to their record-keeping obligations.

Finally, Defendants attempt again to distinguish their shoddy recordkeeping from *Fendi Adele*. In doing so, however, Defendants' arguments only highlight the reasons why *Fendi Adele* is squarely applicable. In the first instance, Defendants claim that, unlike the case here, there was undisputed direct evidence that the defendant sold counterfeit goods. (Defs' Reconsideration Motion at 10). In this case, there is similar direct evidence that Defendants distributed counterfeit copies of 23 of the 140 works at issue -- the 16 works for which Defendants did not seek summary judgment and the 7 works for which the Report did not recommend that summary judgment be granted (and to which Defendants did not object). There are as well the six works

---

[3] Indeed, if Defendants intend to argue at trial that they are a used textbook dealer, they must provide evidence to support that claim and provide Plaintiffs with an opportunity to take discovery on it.

that Defendants' own documents admit were counterfeit. As in *Fendi Adele,* the existence of direct evidence of distribution for some of the counterfeit works informed the Court's analysis on the works for which only circumstantial evidence was available. *Fendi Adele S.R.L.,* 507 F. Appx. at 30.

Defendants further argue that the circumstantial evidence in *Fendi Adele* is unlike the circumstantial evidence here because in *Fendi Adele*, "(a) the defendant used the same procedures throughout the relevant period; (b) the invoices that the defendant had received from its supplier suggesting that the goods were manufactured by the plaintiff were forgeries; and (c) the defendant returned the goods at issue in the case to its suppliers **after** the case was filed and did not keep any records concerning the return." (Defs' Reconsideration Motion at 10 (emphasis in original)). But, in this case, (a) Defendants too used the same procedures for the undisputedly counterfeit textbooks as they did for the 117 titles at issue, (b) there is a plethora of emails from Defendants themselves admitting that the textbooks were counterfeit and that their suppliers sold counterfeit textbooks, which is comparable to if not more revelatory than forged invoices, and (c) Defendants also returned or destroyed textbooks *after* the case was filed and did not keep any records. (*See* Doc. No. 353 at 3). Moreover, as the Court also noted, in addition to the lack of adequate books and records, both Defendants in this case and the defendants in *Fendi Adele* failed to have "adequate anti-counterfeiting measures" when they were on notice of the goods' possibly counterfeit nature. *See Fendi Adele,* 507 Fed. Appx. at 31; March 29 Order at 9. *The Fendi Adele* case could not be more instructive.

Defendants finally argue that *Fendi Adele* is not applicable because "*Fendi* involved new goods whereas this case involves used goods." (Defs' Reconsideration Motion at 10). As discussed above, Defendants' attempt to characterize themselves throughout their motion as

"used booksellers" is not only fantasy, but of no relevance to their liability for infringement or to the applicability of the *Fendi Adele* case.

## IV. DEFENDANTS' ATTEMPT TO REARGUE THEIR POSITION SHOULD BE REJECTED.

In addition to their evidentiary objections, Defendants attempt to re-litigate their position based on the same "cramped approach to the chain of title for each allegedly infringing work" that the Court specifically rejected. (March 29 Order at 8). This is a classic – and improper - attempt for a second bite at the apple. As these arguments merely repeat the arguments made in Defendants' motion for summary judgment and opposition to Plaintiffs' objections to the Report, Plaintiffs respectfully refer the Court to those earlier briefing papers, which contain a more complete recitation of the facts and law. (*See* Doc. Nos. 266 and 317).

The Court has also already seen through Defendants' approach of isolating an individual fact as if it were the "only" evidence and then arguing that such sole piece of evidence is insufficient for a jury to conclude that Defendants distributed counterfeit copies of the titles in suit. (Defs' Reconsideration Motion at 11-22). Instead, the Court properly applied the standard for considering summary judgment motions and viewed the evidence and all inferences in the light most favorable to Plaintiffs, the non-movants, as well as in their entirety. As the Second Circuit instructed, "In determining the appropriateness of summary judgment, the court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the evidence as a whole." *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000) (vacating summary judgment for defendant).

Thus, with respect to the six works for which no counterfeit exemplars exist, for example, there is no credence to Defendants' claim that an inference of distribution cannot be made from

the "sole basis" that "Defendants purchased -- and then subsequently returned -- copies of the same titles to Best Books World." (Defs' Reconsideration Motion at 12). Defendants ignore damning and irrefutable evidence, including that Best Books World was *the* source of most, if not all, of the pirated books from the parties' prior litigation, that Defendants sent three of the six works to Plaintiff Cengage for inspection, who confirmed that they were counterfeit, that Defendants returned the remaining copies of the six works to Best Books World for a refund while unequivocally stating in their own correspondence that the books were counterfeit, and that Defendants returned fewer books than they had purchased. (March 29 Order at 2; Plaintiffs' Objections to R&R, Doc No. 317 at 8). Defendants even claim that there is "no evidence that any counterfeit copies ever existed." (Defs' Reconsideration Motion at 12). As evidenced by the documents described above, however, this claim is utterly false. Cengage inspected the books and determined them to be fakes, and Defendants' own emails refer to the books they returned as counterfeits.

Defendants similarly argue that no inference of distribution can be made based "only" on the existence of counterfeit books found within the inventory of their suppliers. (Defs' Reconsideration Motion at 13). Again, Defendants ignore other evidence, such as the fact that its supplier, Tichenor, purchased these books from a Middle Eastern seller named Morena, that Tichenor sold the Morena books to Defendants, and that Plaintiffs inspected the unsold inventory of Morena books remaining at Tichenor and determined that they were counterfeit. Plaintiffs also found counterfeit copies of the books Defendants purchased from Tichenor within Defendants' own inventory and from some of Defendants' customers where Plaintiffs were able to recover such books. In addition, Plaintiffs themselves *directly purchased* counterfeit textbooks from Defendants, which Tichenor identified as having been purchased from Morena.

Defendants make no mention of this direct evidence because they have not included those works in their motion for summary judgment. Yet this direct evidence, constituting exactly the "chain of evidence" Defendants seek, cannot be ignored while only considering other evidence in isolation. Again, this combination of direct evidence and indirect evidence is exactly the type the Second Circuit affirmed as sufficient to establish liability in *Fendi Adele. Accord Square D Co. v. Pioneer Breaker & Supply Co*., A-07-CA-810 (SS), 2009 U.S. Dist. LEXIS 118496, *22-25, 2009 WL 5170211 (W.D. Tex. Dec. 18, 2009) (finding that in considering the defendant's motion for summary judgment, while supplier had both authentic and counterfeit items for sale, the inference that the supplier sold counterfeit items to the defendant was not only justified, it was mandated).

For the other categories, Defendants likewise argue that the mere "opportunity," "mere possession," or "mere presence" cannot lead to a reasonable inference of infringement. (*See, e.g.,* Defs' Reconsideration Motion at 13, 15, 17). But that is not a fair characterization of the evidence. As the Court properly recognized, along with the physical counterfeits found with Defendants, customers of Defendants, and suppliers of Defendants, a jury can consider that Defendants sourced their textbooks from sketchy suppliers, chose to maintain shoddy records, purposefully did not ask suppliers about their source for the books, and destroyed books suspected to be counterfeits. This evidence is further bolstered by the direct evidence of infringing distributions by Defendants for the works not at issue in this motion.

While recognizing, as they must, that circumstantial evidence is sufficient to prove infringement, Defendants would have this Court reject all of it in this case and argue that the only circumstantial evidence that could be sufficient to prove infringement is some form of statistical regression analysis. Of course, such statistical analysis is not required, nor often

employed. Defendants cite to no case law that *requires* such use. Time and time again, courts have found circumstantial evidence to be sufficient without the use of statistics. *See supra* at 5-6. Defendants' unprecedented, exacting standards would make it virtually impossible to prove counterfeiting absent direct evidence. Plaintiffs would have no ability to prove that "all or a high percentage" of Defendants' books or those of their elusive and shadowy overseas suppliers were counterfeit. (Defs' Reconsideration Motion at 14-15, 20). The inventories of those suppliers are not available to Plaintiffs. Defendants' failure to maintain records also makes such analysis a non-starter.

Finally, when all else fails, there is always the "sky is falling" argument. In this case, Defendants claim that the Court's March 29 Order "could threaten the entire used textbook industry" and "dramatically expands the scope of liability under the Copyright Act" as "mere possession of a counterfeit work is not actionable." (Defs' Reconsideration Motion at 15, 18). In Defendants' case, it is not the mere possession. It is the purchase and sale of numerous counterfeit books from admittedly counterfeit suppliers, without anti-counterfeiting procedures to detect them, while destroying suspected counterfeit textbooks and failing to keep records of those items destroyed. It is also the discovery of counterfeit books found in the hands of their suppliers and customers, including in the hands of Plaintiffs, who purchased numerous counterfeit copies directly from Defendants time and time again and even during the course of the lawsuit. Irrespective of whether Defendants can claim to be solely "used textbook dealers" or not, a claim that is demonstrably false, the Court has not held that "availability alone could give rise to an inference of infringement." (Defs' Reconsideration Motion. at 15). Rather, the Court looked properly to the totality of the evidence presented in the record and properly denied Defendants' motion for partial summary judgment.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to reconsider its March 29 Order.

Dated: April 26, 2016

Respectfully submitted,

OPPENHEIM + ZEBRAK, LLP

By: /s/ *Matthew J. Oppenheim*

Matthew J. Oppenheim
Julie C. Chen
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
(202) 480.2999 Telephone
matt@oandzlaw.com
julie@oandzlaw.com

*Counsel for Plaintiffs*