UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHN WILEY & SONS, INC. et al.,                    :

                                                   :

                         Plaintiffs,               :          OPINION AND ORDER

                                                   :

            -v.-                                    :

                                                   :          13 Civ. 816 (WHP) (GWG)
BOOK DOG BOOKS, LLC et al.,                         :

                                                   :

                         Defendants.               :
-----------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Plaintiffs John Wiley & Sons, Inc., Cengage Learning, Inc., and Pearson Education, Inc.

brought this suit against Book Dog Books, LLC and Philip Smyres (collectively, "BDB")

alleging principally claims of copyright infringement, trademark infringement, and fraud.  See

Second Amended Complaint, filed May 27, 2015 (Docket # 263) ("SAC"), ¶¶ 59-109; see

generally John Wiley & Sons, Inc. v. Book Dog Books, LLC, 2015 WL 5724915, at *1-*9

(S.D.N.Y. Sept. 30, 2015); Memorandum and Order, filed Mar. 29, 2016 (Docket # 352).  The

Netherlands Insurance Company ("Liberty") and Westfield Insurance Company ("Westfield")

have now moved to intervene so that they may submit interrogatories to the jury relating to

coverage under their insurance policies.[1]  For the reasons stated below, Liberty and Westfield's

---

        [1] See The Netherlands Insurance Company's Motion to Intervene, filed Nov. 2, 2015
(Docket # 324); The Netherlands Insurance Company's Memorandum of Law in Support of
Motion to Intervene, filed Nov. 2, 2015 (Docket # 325) ("Liberty Mem."); Declaration of Adam
Woellert, filed Nov. 2, 2015 (Docket # 326) ("Woellert Decl."); Notice of Motion to Intervene
for a Limited Purpose, filed Nov. 2, 2015 (Docket # 327); Memorandum of Law in Support of
Westfield Insurance Company's Motion to Intervene for a Limited Purpose, filed Nov. 2, 2015
("Westfield Mem."); Declaration of Jaime M. Merritt, Esquire, filed Nov. 2, 2015 ("Merritt
Decl."); Plaintiffs' Response to the Motions to Intervene Filed by Westfield Insurance Company
(ECF No. 327) and the Netherlands Insurance Company (ECF No. 324), filed Dec. 9, 2015
(Docket # 345) ("P. Resp."); Defendants' Memorandum of Law in Opposition to the Netherlands
Insurance Company's and Westfield Insurance Company's Motions to Intervene for a Limited

motions to intervene are denied.[2]

I.  BACKGROUND

     Westfield and Liberty (the "Insurers") each provided insurance coverage to BDB.

Liberty insured BDB from November 30, 2007, through November 30, 2008.  See Policy

Number BOP8219953, annexed as Ex. A to Woellert Decl. at 32.[3]  Westfield insured BDB from

November 30, 2008, through November 30, 2012.  See Business Owners Policy No.

BOP4611259 and Umbrella Policy No. BSP4611417, annexed as Ex. A to Merritt Decl.  The

language of the policies invoked in the parties' briefs is nearly identical and covers "personal

and advertising injury" caused by the insured.  See Liberty Mem. at 3-4; Westfield Mem. at 2-4.

"Advertising injury" is defined to include "[t]he use of another's advertising idea in [the

insured's] 'advertisement,'" and "infringing upon another's copyright, trade dress or slogan in

[an] 'advertisement.'"  See Liberty Mem. at 4; Westfield Mem. at 2.  The policies have various

exclusions, including exclusions for personal and advertising injury "[c]aused by or at the

direction of the insured with the knowledge that the act would violate the rights of another and

would inflict 'personal and advertising injury,'" injury "[a]rising out of oral or written

_____

Purpose, filed Dec. 9, 2015 (Docket # 346) ("D. Opp."); Declaration of Evan Mandel, filed Dec. 9, 2015 (Docket # 347); The Netherlands Insurance Company's Reply Memorandum of Law in Support of Motion to Intervene, filed Dec. 23, 2015 (Docket # 348) ("Liberty Reply"); Reply Memorandum of Law in Support of Westfield Insurance Company's Motion to Intervene for a Limited Purpose, filed Dec. 23, 2015 (Docket # 349) ("Westfield Reply").

    [2] Because this motion to intervene for the sole purpose of presenting interrogatories to a jury is not dispositive as to any claim, it is decided pursuant to 28 U.S.C. § 636(b)(1)(A).  See United States v. Certain Real Property and Premises Known as 1344 Ridge Road, Laurel Hollow, Syosset, N.Y., 751 F. Supp. 1060, 1061 (E.D.N.Y. 1989) (motion to intervene not "dispositive").

    [3] We refer to this document according to the page numbers assigned by the ECF system.

2

publication of material, if done by or at the direction of the insured with knowledge of its falsity," and injury "[a]rising out of a breach of contract, except an implied contract to use another's advertising idea in [the insured's] 'advertisement.'"  See Liberty Mem. at 4; Westfield Mem. at 3.  The policies also exclude injury "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."  Liberty Mem. at 4; Westfield Mem. at 3.  This exclusion does not apply, however, to "infringement" in the insured's "'advertisement' . . . of copyright, trade dress or slogan."  See Liberty Mem. at 4; Westfield Mem. at 3.  As Westfield puts it, "the Policies do not cover copyright infringement unless the infringement occurs within an advertisement."  Westfield Mem. at 2.

The Insurers seek to intervene so that they can submit interrogatories to the jury to "make possible a division of the money damages between covered and noncovered acts."  Westfield Mem. at 5; see also Liberty Mem. at 5 (purpose of the interrogatories will be to "allocate covered and uncovered acts and damages").  The Insurers never state what specific interrogatories they will seek to have submitted to the jury.  Westfield hints that the critical issue will be the degree to which plaintiffs have claims "for injuries related to [BDB's] advertising activities" as opposed to "infringement existing outside of advertising."  Westfield Mem. at 5.  It notes that "it cannot be determined the amount, if any, of alleged infringement that has occurred within advertising." Id.  For its part, Liberty notes that coverage is not afforded for "intentional and knowing misconduct," for infringement that does not take place in an "advertisement," and for injury that occurs outside the policy period, see Liberty Mem. at 6, thus implying that Liberty would seek to have such issues submitted to the jury.

BDB opposes the motions to intervene.  D. Opp. at 1.  The plaintiffs do not oppose intervention, but argue that the parties should have an opportunity "to review and respond to the

proposed special interrogatories" before the Court permits them to be given to the jury.  P. Resp. at 1-2.  The Insurers state that they are willing to submit their proposed interrogatories for such review.  Liberty Reply at 1 n.1; Westfield Reply at 2.

Westfield asserts that it is entitled to intervention as of right under Fed. R. Civ. P. 24(a). Westfield Mem. at 5.  Liberty does not seek intervention as of right.  Liberty Reply at 2.  Both parties seek permissive intervention under Fed. R. Civ. P. 24(b).  Liberty Mem. at 5; Westfield Mem. at 12.  We begin by discussing permissive intervention.

II.  PERMISSIVE INTERVENTION

Fed. R. Civ. P. 24(b) provides in relevant part: that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  The rule further provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Thus, we analyze three criteria in adjudicating a motion for permissive intervention: (1) the timeliness of the motion; (2) a common question of law or fact; and (3) undue delay or prejudice.  The Second Circuit has held that the issue of prejudice and undue delay is "[t]he principal guide in deciding whether to grant permissive intervention."  United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994).  .

We will assume arguendo that common questions of law or fact exist.  See D. Opp. at 19 ("BDB concedes that its entitlement to indemnification under its insurance contracts with Insurers involves factual issues that should be resolved if the Wiley litigation results in a jury verdict.").  Thus, we assess only the motions' timeliness and whether undue delay or prejudice would result from intervention.

A.  <u>Timeliness</u>

"[A] threshold consideration under Rule 24(b) . . . is timeliness."  <u>Pitney Bowes</u>, 25 F.3d

at 74 (citation omitted).

> A district court has broad discretion in assessing the timeliness of a motion to intervene, which "defies precise definition."  <u>United States v. Pitney Bowes, Inc.</u>, 25 F.3d 66, 70 (2d Cir. 1994).  The court may consider, <u>inter alia</u>, the following factors: (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention.  <u>See</u> <u>id.</u> Generally, the court's analysis must take into consideration the totality of the circumstances.  <u>See</u>, <u>e.g.</u>, <u>Farmland Dairies v. Comm. of the New York State Dep't of Agric. & Mkts.</u>, 847 F.2d 1038, 1044 (2d Cir. 1988).

<u>In re Holocaust Victim Assets Litig.</u>, 225 F.3d 191, 198 (2d Cir. 2000); <u>see also</u> <u>Aristocrat</u>

<u>Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.</u>, 262 F.R.D. 348, 352 (S.D.N.Y. 2009) ("[E]ach

intervention case is highly fact specific and tends to resist comparison to prior cases.") (internal

citations and quotation marks omitted).  No party has suggested any "unusual circumstance"

present here.  Accordingly, we will examine the other three factors.

I.  <u>Notice</u>

The initial complaint in this lawsuit was filed on February 4, 2013.  <u>See</u> Complaint, filed

Feb. 4, 2013 (Docket # 1).  The complaint alleged, <u>inter alia</u>, copyright infringement, <u>id.</u> ¶¶ 72-

86, trademark infringement, <u>id.</u> ¶¶ 87-93, and conspiracy to commit fraud, <u>id.</u> ¶¶ 124-30.  The

plaintiffs amended their complaint on April 24, 2013, <u>see</u> First Amended Complaint, filed Apr.

24, 2013 (Docket # 16), and again on May 27, 2015, <u>see</u> SAC.  There was no material change in

the nature of the claims made in the various versions of the complaint.

BDB brought the lawsuit to the Insurers' attention in December 2013.  Liberty Mem. at

3; Westfield Mem. at 4; D. Opp. at 3.  Eventually, both Insurers agreed to defend the suit subject

to a reservation of rights.  See Liberty Mem. at 5; Westfield Mem. at 4.  The Insurers did not

seek to file the instant motions to intervene until October 12, 2015, however.  Letter from Jaime

M. Merritt, dated Oct. 12, 2015 (Docket # 310); Letter from Timothy D. Kevane, dated Oct. 12,

2015 (Docket # 311).  The Insurers do little to explain this long delay.  Liberty states only that

there was a five-month period between May and September 2014 during which it appeared that

the suit might settle.  Liberty Mem. at 8.  Westfield notes that its motion was filed only "four

months" after the Second Amended Complaint was filed.  Westfield Mem. at 7.  Neither of these

statements, however, provides an adequate explanation for the Insurers' failure to act.  The five-

month potential settlement period does not explain the remaining 17 months of delay.  The filing

of the Second Amended Complaint is irrelevant to the issue of timeliness inasmuch as it was

filed after discovery was closed and added no new claims to the First Amended Complaint.  The

delay here was thus not justified.  Additionally, it is longer than many cases in which permissive

intervention has been denied.  See Kamden-Ouafo v. Pepsico, Inc., 314 F.R.D. 130, 135-36

(S.D.N.Y. 2016) (collecting cases denying permissive intervention where delay was less than 18

months).  Thus, the Insurers' lengthy delay in filing suit, and their failure to justify the delay,

weighs heavily against granting their motions.  See D'Amato v. Deutsche Bank, 236 F.3d 78, 84

(2d Cir. 2001) (upholding district court's denial of intervention motion where, inter alia,

intervenor delayed by over a year and failed to explain the delay).

ii.  Prejudice to Existing Parties Resulting from the Delay

BDB argues that the Insurers' delay in filing these motions has significantly prejudiced

them.  The chief reasons it gives relate to the discovery process.  BDB states:

> To the extent the Insurers want to ask the jury to opine on whether this case
> involves "advertising injury" as that term is defined in the relevant policies, BDB
> would need to re-open discovery to obtain, among other things: advertisements

6

and other marketing efforts that BDB's partners and former partners (e.g.
Amazon) conducted to sell BDB's books; documents and testimony from
consumers regarding the role that advertisements and other marketing efforts
played in their purchase of the books; and documents and testimony from
distributors about the marketing of used books.

D. Opp. at 7. BDB's argument correctly recognizes that the Court will not re-open discovery at

this late stage of the case. Discovery concluded long ago, and all summary judgment motions

have been briefed in full. One has been decided. Case law holds that where a grant of a motion

to intervene would require further discovery, a court may properly deny the motion. See, e.g.,

Bassett Seamless Guttering, Inc. v. GutterGuard, LLC, 2007 WL 2079718, at *2 (M.D.N.C. July

13, 2007) (denying intervention where "[d]efendants would necessarily have to engage in further

discovery") (citing cases).

The Insurers do not respond directly to DBD's argument on the issue of the prejudice that

would result from the lack of discovery on the issue of "advertising." Liberty states only that it

finds it "questionable" that BDB should need to reopen discovery at all because the pleadings

"alleged" that some infringements resulted from advertising. Liberty Reply at 6. This is no

answer, however. That a pleading has "alleged" a particular fact does not mean that a defendant

should be expected to seek discovery on that allegation. Nor does Liberty explain why the issue

of advertising was so germane to plaintiffs' claims that discovery regarding "advertising" should

have occurred in this case. We note that in marshaling their evidence to oppose BDB's two

motions for summary judgment, the plaintiffs never once mentioned BDB's advertising. See

Memorandum in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary

Judgment, filed Mar. 9, 2015 (Docket # 239); Plaintiffs' Supplemental Memorandum in

Opposition to Defendants' New Motion for Partial Summary Judgment, filed June 29, 2015

(Docket # 276). Indeed, Liberty makes no argument whatsoever that the plaintiffs' claims in the

case required an exploration of the advertising issues that will be raised by its proposed (and, as yet, undisclosed) jury interrogatories.  And because Liberty does not reveal what particular interrogatories it hopes to pose, it has not explained why BDB is incorrect in its perceived need for discovery.

Similarly, Westfield has no real response to BDB's argument that discovery would have to be re-opened.  Instead, it makes the irrelevant proposal that its intervention be limited to the submission of jury interrogatories and that it be granted no "continuances."  Westfield Reply at 2 (quoting Tomcany v. Range Const., 2004-Ohio-5314, 2004 WL 2801671 (Ohio Ct. App. Sept. 30, 2004)).  Notably, the case Westfield cites in support of this argument, Tomcany v. Range Const., completely undermines its premise.  In Tomcany, the court had found that there was "no reason to think that any . . . further discovery would be necessary."  Tomcany, 2004 WL 2801671, ¶ 45.  Westfield never even addresses BDB's contention that further discovery will be necessary here.

### iii.  Prejudice to the Insurers if Intervention is Denied

The Insurers claim two forms of prejudice if their motions to intervene are denied: (1) the effect of collateral estoppel under Ohio law, Westfield Mem. at 9-10; Liberty Reply at 7, and (2) the general expense and burden of conducting a second lawsuit to determine the extent of their responsibility under the insurance contracts for any judgment against BDB in this case, Liberty Mem. at 8; Westfield Mem. at 10-11.

a. Collateral Estoppel.  The Insurers argue that they will be substantially prejudiced if their intervention motions are denied because (1) choice-of-law rules require applying Ohio law to any claims under the insurance policies and (2) Ohio law holds "that because insurers are in privity with their insureds, insurers are generally bound by the facts and findings of an

underlying action brought against their insured by . . . claimants."  Westfield Mem. at 9 (citing

Howell v. Richardson, 544 N.E.2d 878 (Ohio 1989).

Assuming arguendo that Ohio law applies to these policies, it is clear that whatever

collateral estoppel doctrine Ohio law may apply disappears when intervention is denied.  In other

words, Ohio law at most requires that an insurer make a motion to intervene.  If the motion to

intervene is denied, Ohio law is clear that there is no collateral estoppel effect.  See Gehm v.

Timberline Post & Frame, 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, ¶ 15 (Ohio

2007) ("When a party has sought and been denied intervention, collateral estoppel will not

prohibit future litigation of similar issues.").

b.  Subsequent Litigation.  Westfield and Liberty briefly allude to the fact that it would

be more "economical" to resolve issues regarding coverage in this litigation.  Westfield Mem. at

10; Westfield Reply at 5; Liberty Reply at 7-8 (insurers would be prejudiced by "duplicative

litigation").  The Court accepts arguendo that there might have been some economy to be

realized by addressing issues regarding insurance coverage in this litigation had intervention

been timely sought.  The insurers overstate such economy, however, inasmuch as the central

issue relating to coverage — advertising injury — has not been part of the discovery process or

summary judgment briefing in this case.  In any event, any such economies to be achieved are

far outweighed by the prejudice that would arise if intervention were allowed at this stage of the

case.

iv.  Conclusion

After considering the "totality of the circumstances," we find that the four factors for

assessing the timeliness of an intervention motion, In re Holocaust Victim Assets Litig., 225

F.3d at 198, strongly favor the conclusion that the Insurers' motions are untimely.

B. <u>Prejudice and Delay to the Original Parties</u>

Even if the Insurers' motions were timely, the motions would still have to be denied because intervention would cause "undu[e] delay or prejudice [to] the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As already explained, <u>see</u> section II.A.ii. above, intervention would require the reopening of discovery and further delay in this three-year-old case. Additionally, we agree with BDB's argument that allowing the Insurers to raise coverage issues would require BDB to present alternative factual arguments to the jury, D. Opp. at 18 — specifically, it would require BDB to argue that it did not infringe the plaintiffs' copyrights and trademarks but that if any infringements did occur, they were related to "advertisement" within the meaning of the policies. <u>See generally</u> <u>Gadley v. Ellis</u>, 2015 WL 3938543, at *4 (W.D. Pa. June 26, 2015) (intervention denied where, after discovery and summary judgment, insurer was "asking to create categories of damages on the jury form . . . not necessarily consistent with the issues that have been developed in this case."). Thus, this factor too weighs against permitting intervention.

For the above reasons, the motion for permissive intervention is denied.

III. <u>INTERVENTION AS OF RIGHT</u>

Fed. R. Civ. P. 24(a)(2), commonly referred to as the rule governing "intervention as of right," requires courts to permit intervention when the intervenor

> [o]n timely motion . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, to intervene as a matter of right under Rule 24(a)(2), a party must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired

10

by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006) (internal citations and quotation marks omitted). "The intervention application will be denied unless all four requirements are met." Pitney Bowes, 25 F.3d at 70.

The issue of timeliness is evaluated according to the same criteria whether intervention is sought as of right or permissively. See generally NAACP v. New York, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed as of right or as permissive . . . the court where the action is pending must first be satisfied as to timeliness."); Pitney Bowes, 25 F.3d at 74 ("The district court's finding that [the proposed intervenor's] application was untimely for purposes of intervention as of right applies as well to permissive intervention."); see also In re Initial Pub. Offering Sec. Litig., 499 F. Supp. 2d 415, 418 (S.D.N.Y.2007). Thus, Westfield's motion is untimely for the reasons already stated.

In addition, the Second Circuit in Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 875-76 (2d Cir. 1983), held that an insurer who had reserved its right not to indemnify lacked the requisite "interest relating to the property or transaction that is the subject of" an action brought against an insured for which coverage is sought. Id. Restor-A-Dent Dental Labs., Inc. concluded the requisite interest was lacking because the insurer's interest depended upon "two contingencies": a verdict against the insured and a "finding in litigation not yet even commenced between" the insurer and insured that the insured was not covered by the policy. Id. at 875; see generally Washington Elec. Co-op, Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) ("An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.") (citation omitted).

11

The same contingencies present in <u>Restor-A-Dent Dental Labs., Inc.</u> are present here.

Westfield, which did not even cite <u>Restor-A-Dent Dental Labs., Inc.</u> in its main brief when it

argued for intervention as of right, fails to explain why the case does not govern the outcome

here. It notes in its reply brief only that the case in dictum stated that a grant of permissive

intervention would not have been an abuse of discretion. Westfield Reply at 5. Westfield thus

does not even contest BDB's argument, D. Opp. at 9-10, that <u>Restor-A-Dent Dental Labs., Inc.</u>

bars intervention as of right in the instant case.

## IV. CONCLUSION

For the foregoing reasons, Liberty's motion to intervene (Docket # 324) and Westfield's

motion to intervene (Docket # 327) are denied.

Dated: June 22, 2016

New York, New York

GABRIEL W. GORDENSTEIN
United States Magistrate Judge

12