UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BOOK DOG BOOKS, LLC and PHILIP SMYRES,<br><br>Defendants. | Case No. 1:13-cv-00816 (WHP) (GWG)<br><br>Judge William H. Pauley III<br><br>Magistrate Judge Gabriel W. Gorenstein |

**<u>PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS [DOC NO. 362] TO THE REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES [DOC NO. 361]</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.   COPYRIGHT MISUSE ............................................................................................ 2
         A.  Defendants' Joint Boycott Theory Rests on Speculation and Distortion
            of Facts ............................................................................................................ 3
         B.  The Magistrate Judge Properly Rejected Defendants' Copyright Misuse
            Defense ........................................................................................................... 8

    II.  BAD FAITH AND UNCLEAN HANDS ............................................................... 10

    III. INNOCENT INFRINGEMENT DEFENSE ............................................................ 11

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

CASES

*AP v. Meltwater U.S. Holdings, Inc.,* 931 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................. 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................................... 3, 8

*Columbia Pictures Indus. Inc. v. Garcia,* 996 F. Supp. 770 (N.D. Ill. 1998) .......................... 12, 13

*D.C. Comics, Inc. v. Mini Gift Shop,* 912 F.2d 29 (2d Cir. 1990) ................................................. 13

*Denenberg v. Led Techs.*, LLC, No. 11-cv-03155-RBJ, 2013 U.S. Dist. LEXIS 70322
(D. Colo. May 17, 2013) ............................................................................................................... 13

*Gaiman v. McFarlane,* 360 F.3d 644 (7th Cir. 2004) ................................................................... 13

*Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) .................................................... 9

*Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116 (2d Cir. 2001) .................................... 11

*Maverick Recording Co. v. Harper*, 598 F.3d 193 (5th Cir. 2010) .............................................. 12

*Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.,*
709 F.3d 129 (2d Cir. 2013) ................................................................................................... 3, 4, 7

*Primetime 24 Joint Venture v. NBC*, 219 F.3d 92 (2d Cir. 2000) ................................................... 6

*Ross v. Bank of Am., N.A. (USA) (In re Currency Conversion Fee Antitrust Litig.)*,
No. 05 Civ. 7116 (WHP), 2012 U.S. Dist. LEXIS 19760 (S.D.N.Y. Feb. 8, 2012) .................... 6, 7

*Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 U.S. Dist. LEXIS 135390
(S.D.N.Y. Nov. 23, 2011) ............................................................................................................. 10

*U.S. v. Apple, Inc.,* 791 F.3d 290 (2d Cir. 2015), *cert. denied,* 136 S. Ct. 1376 (2016) .................. 7

STATUTES

17 U.S.C. §401(d) ................................................................................................................... 11, 12

17 U.S.C. § 504(c)(2) .................................................................................................................... 11

OTHER AUTHORITIES

2-7 Nimmer on Copyright § 7.02 .................................................................................................. 12

Berne Convention Implementation Act of 1988, 1988 Enacted H.R. 4262,
100 Enacted H.R. 4262, 102 Stat. 2853, effective March 1, 1989 ................................................12

Case 1:13-cv-00816-WHP-GWG   Document 364   Filed 07/05/16   Page 4 of 18

Plaintiffs John Wiley & Sons, Inc. ("Wiley"), Cengage Learning, Inc. ("Cengage"), and Pearson Education, Inc. ("Pearson") (collectively, "Plaintiffs" or "Publishers") submit this response to Defendants' Objections to the Report and Recommendation Regarding Plaintiffs' Motion for Summary Judgment as to Defendants' Affirmative Defenses. (Doc. No. 362) ("Objections").

## PRELIMINARY STATEMENT

Magistrate Judge Gorenstein's Report and Recommendation (Doc. No. 361) ("Report") recommends granting Plaintiffs' summary judgment and striking all of Defendants' remaining affirmative defenses. Defendants, Book Dog Books, LLC ("BDB") and Philip Smyres ("Smyres") (collectively, "Defendants") accept the dismissal of each of the challenged affirmative defenses, with the exception of three: (1) copyright misuse, (2) unclean hands/bad faith, and (3) innocent infringement. Defendants' objections to Magistrate Judge Gorenstein's Report ignore both the law and the undisputed facts.

Defendants' copyright misuse and unclean hands defenses, based on a purported "joint boycott" by Plaintiffs Cengage and Pearson, are works of fiction. Indeed, the sole evidence in the case could not be more clear that neither Cengage nor Pearson was aware that the other had stopped doing business with Defendants until BDB made them aware of the fact. Defendants' highly inflammatory accusation of a "joint boycott" is just an accusation without a single shred of evidence. The mistakes Defendants ascribe to Magistrate Judge Gorenstein's analysis are, at best, specious. And, their new argument, not previously raised -- that Plaintiffs' failure to disclose the identities of known counterfeit suppliers under a contractual obligation constitutes unclean hands – not only fails to find any support in the record, but is the height of irony given that Defendants continued to buy counterfeit books from the very same counterfeit supplier that

1

Defendants had disclosed to Plaintiffs as being the source of "most if not all" of the counterfeits that were at issue in the parties' 2007 litigation. Finally, there is simply no legal support, under the plain language of the statute or under case law, for Defendants' self-serving, never-before-recognized argument that Section 401(d) of the Copyright Act only applies to manufacturers, but not to resellers, of counterfeit goods. Because Section 401(d) unequivocally denies consideration of the innocent infringement defense where a publisher has placed a copyright notice on its published works, Magistrate Judge Gorenstein properly dismissed this defense.

Because each of the three affirmative defenses addressed by Defendants in their Objections has no merit, the Court should adopt the Report in its entirety. The issues for trial should be narrowed where, as here, there is no colorable basis, factually or legally, for the defenses to be put to a jury.

## ARGUMENT

**I.     COPYRIGHT MISUSE**

In arguing that Magistrate Judge Gorenstein was "mistaken" in his dismissal of Defendants' copyright misuse defense, Defendants' sole contention is their unsupported allegation that Plaintiffs engaged in "a coordinated boycott of Defendants, suspending sales to BDB." Objections at 2.[1]  Not only do Defendants have no factual support for their tale of a "coordinated boycott," but the record flat-out contradicts it.

---

[1] In doing so, Defendants do not object to Magistrate Judge Gorenstein's other findings with respect to Defendants' copyright misuse defense, *i.e.* that Defendants failed to adduce any evidence to support any purported fraudulent conduct on the part of Plaintiffs or attempt to "restrain trade" in contravention of the first-sale doctrine. *See* Report at 19-21.

2

### A. Defendants' Joint Boycott Theory Rests on Speculation and Distortion of Facts.

In their opposition to Plaintiffs' motion for summary judgment, the only facts Defendants could muster to support a copyright misuse defense was a declaration from Defendant Philip Smyres that Defendants had a continuing "business relationship" with Plaintiff Pearson and Cengage but for two exceptions, once in 2007 and again in 2012, and that Cengage and Pearson were represented by joint counsel on both occasions. Report at 22 (citing Smyres Declaration ¶ 15). Defendants also cite to letters from Plaintiffs' joint counsel accusing them of copyright infringement. *Id.* As Magistrate Judge Gorenstein recognized, however, the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that "at the summary judgment stage . . . a claimant's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently." Report at 23. Magistrate Judge Gorenstein found Defendants' evidence to be "too lacking in detail to conclude that the plaintiffs' decisions not to sell books to defendants was part of an 'unreasonable restraint on trade' or otherwise violated public policy." *Id.* Because there were "many proper reasons for two or more entities to decide to refuse to sell their copyrighted works to a book dealer -- most obviously where the entities learn that the book seller has improperly been selling counterfeit versions of their works," Magistrate Judge Gorenstein found, in accordance with *Twombly*, that such evidence did not "tend to rule out the possibility that the defendants were acting independently." *Id.* (internal citations omitted). In their Objections, Defendants still do not point to any evidence that rules out that Plaintiffs acted independently – because there is no such evidence.

Instead, Defendants now argue that there are sufficient "plus factors" to support a finding of conspiracy. See Objections at 3. In *Mayor and City Council of Baltimore, Md. v. Citigroup, Inc.,* 709 F.3d 129 (2d Cir. 2013), the Second Circuit stated that pursuant to *Twombly,* a

3

"plaintiff must show the existence of additional circumstances, often referred to as 'plus' factors, which, when viewed in conjunction with the parallel acts, can serve to allow a fact-finder to infer a conspiracy. These 'plus factors' may include: a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications." *Id.* at 136 (internal quotes and citations omitted). In the case at bar, Defendants fail in their attempt to show the existence of any "plus factors."

      First, Defendants cannot show that Plaintiffs' refusal to do business with Defendants was against the Plaintiffs' individual economic interest. They argue that because Defendants "distribute a huge volume of books" and Cengage and Pearson have continuously sold to Defendants but for a brief period in 2007-08, their "later refusal to sell to Defendants was against their economic interest." Objections at 3-4. Tellingly, Defendants forget the Order from the U.S. District Court in Ohio denying Defendants' motion for a temporary restraining order to compel Cengage and Pearson to continue to sell textbooks to Defendants. That Order found that Pearson and Cengage "had a reasonable basis for believing that [Defendant Smyres] was dealing in counterfeit books and thus lost trust in him as a customer." *See* Declaration of Julie C. Chen, filed November 9, 2015 (Docket #338) ("Chen Decl.") Ex. 8 at 6-7. The District Court in Ohio expressly concluded that "[i]t is not in the public interest to require [publishers], who are the copyright owners of their texts, to do business with entities associated with an individual for whom [publishers] have a reasonable basis to believe has dealt in counterfeit books." In similar fashion, Magistrate Judge Gorenstein's held that "there are many proper reasons for two or more entities to decide to refuse to sell their copyrighted works to a book dealer." Report at 23. Plaintiffs' actions made perfect business sense. *Cf. Mayor & Council of Baltimore*, 709 F.3d at

4

138 (finding that the defendants' decision to leave a collapsing market "made perfect business sense"). Defendant have still not proffered any evidence that Plaintiffs' refusal to sell to them was against Plaintiffs' economic interests.

Defendants' next attempt to show that Plaintiffs had a "common motive" to conspire because, as Defendants repeatedly claim, "Plaintiffs have acknowledged the benefits of collective action" and "Pearson testified it would have been harder for it to boycott Defendants if Cengage wasn't also boycotting Defendants." Objections at 4. Defendants' arguments on this are beyond the pale. The actual testimony from the Pearson representative was as follows:

> Q. Mr. Garry, have you read the complaint in this case?
>
> A. I have.
>
> Q. And are you familiar with the allegation that Pearson and Cengage acted collectively in their decision to terminate Mr. Smyres' accounts?
>
> A. Yes, I am familiar with that allegation.
>
> Q. And what was your reaction to that allegation?
>
> A. Poppycock. Nothing could be truer than the fact that I didn't know Cengage's position on dealing or not with Mr. Smyres until I read it in the complaint. Because we know we have to keep ourselves like Caesar's wife, not only can we not consult with each about our business practices, we cannot even appear to consult with each other about our business practices. I have no idea what Cengage did. And in fact, I confess I was slightly resentful of Cengage because I thought that they were doing business with Mr. Smyres, which made it

5

harder for me to take my position.

Chen Decl. Ex. 7 at 108:21- 109:12.  Contrary to Defendants' assertion that Pearson "testified" that "it *would have* been harder for it to boycott Defendants if Cengage wasn't also boycotting Defendants," (Objections at 4 (emphasis added)), what Pearson actually testified was that it *was* harder for it to stop selling to Defendants because they did *not* know what Cengage (or Wiley) was doing.  Thus, there is nothing in Pearson's testimony that could support any "acknowledgement" by "Plaintiffs" of a "coordinated boycott" or the "benefits of collective action."  The Court should reject Defendants' tortured mischaracterization of the evidence.[2]

Finally, Defendants attempt to demonstrate "a high level of interfirm communications," arguing that "Plaintiffs have closely coordinated with each other in their dealings with Defendants."  Objections at 4.  In support of this, Defendants point to the fact that Plaintiffs have joint litigation counsel.  The use of joint litigation counsel, however, is clearly permissible, even among competitors.  *See, e.g., Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 99 (2d Cir. N.Y. 2000) ("We note that, in particular, the Sherman Act has been read not to limit copyright owners from defending their individual copyrights against common infringers through concerted litigation, even though the owners and infringers may all be competitors.").  And while Defendants claim that Cengage and Pearson insisted that all "sales discussions" go through their joint trial counsel, they offer not a shred of evidence to support this claim or argument why it would be improper to communicate through counsel when claims have been asserted.  Objections at 4.

Defendants' citation to *Ross v. Bank of Am., N.A. (USA) (In re Currency Conversion Fee Antitrust Litig.)*, No. 05 Civ. 7116 (WHP), 2012 U.S. Dist. LEXIS 19760, *24 (S.D.N.Y. Feb. 8,

---

[2] To the extent that the statement by the Pearson witness is ambiguous, Defendants had repeated opportunity to ask the witness what he meant, but failed to do so.

2012), in support of their position is unavailing.  That case was an antitrust action against certain credit card issuers alleged to have conspired to include mandatory arbitration clauses in cardholder agreements in violation of the Sherman Act.  The evidence in that case revealed frequent meetings between in-house counsel where arbitration clauses were discussed and a "voluminous record" of communications among in-house counsel, including emails that they "compare notes." *Id.* at *5.  In stark contrast, Defendants' allegations arise out of an entirely different context, with the sole fact being that Plaintiffs "have hired a single lawyer to represent them in this action." Objections at 4.  Defendants' discussion of *In re Currency Conversion Fee Antitrust Litig.* is also misleading.  Nowhere in that decision did the court hold that "coordination via trial counsel supports a strong inference of a conspiracy," as Defendants assert.  Objections at 4.

At bottom, Defendants' evidence, consisting of one line of distorted testimony from Pearson and the existance of joint litigation counsel, simply does not suffice as grounds for a reasonable jury to infer a conspiracy.  While Defendants may not need to "disprove all non-conspiratorial explanations for the defendants' conduct" (Objections at 5), the Second Circuit has clearly instructed that, "even if a plaintiff alleges additional facts or circumstances—what we have previously called 'plus factors'—these facts must still lead to an inference of conspiracy." *Mayor & Council of Baltimore*, 709 F.3d at 137 (citations omitted).  The evidence must still "be sufficient to allow a reasonable fact finder to infer that the conspiratorial explanation is more likely than not." *U.S. v. Apple, Inc.,* 791 F.3d 290, 315 (2d Cir. 2015), *cert. denied,* 136 S. Ct. 1376 (2016).  As described above, and in the Report, there is not a sufficient basis to support a "joint boycott" under these facts.

7

B.     **The Magistrate Judge Properly Rejected Defendants' Copyright Misuse Defense**.

Defendants also argue that Magistrate Judge Gorenstein articulated "an incorrect statement of the law" when he determined that Plaintiffs may have had "proper motives" to refuse to sell to Defendants. Objections at 5. They assert that motive is irrelevant "once a corporation enters into a horizontal group boycott." *Id.* This statement, however, is itself an incorrect statement of law. First, the statement presupposes the existence of an agreement. Second, in proving such an agreement, as *Twombly* clearly instructs, an antitrust plaintiff must do more than show parallel conduct, but must also provide evidence that tends to rule out the possibility that Plaintiffs were acting independently. See *supra* at 3. Just like the Court in the United States District Court for the Northern District of Ohio, Magistrate Judge Gorenstein correctly considered the reasons why Plaintiffs might take independent action in refusing to sell works to Defendants in determining whether parallel conduct is evidence of conspiracy under *Twombly*.

Next, Defendants assert that the Report also "misapprehends the facts" with respect to the timing of Plaintiffs' refusal to sell to Defendants. Objections at 6. Defendants seem to suggest that Plaintiffs' decision to stop selling to them somehow constitutes copyright misuse because Plaintiffs waited almost a year after they discovered the infringement before they stopped selling to Defendants and that Plaintiffs could have just stopped selling to Defendants only "those titles that have been counterfeited." *Id*. At the end of the day, whether Pearson and Cengage should have stopped selling titles to Defendants a year earlier or should have only stopped selling a limited set of titles has no bearing on Defendants' copyright misuse defense. Indeed, Defendants' argument is ironic, arguing on the one hand that Plaintiffs acted improperly in refusing to do

8

business with them and, on the other hand, complaining that Plaintiffs should have stopped doing business with them more quickly.

Defendants' argument also ignores history. Plaintiffs discovered Defendants' infringements in 2011 and immediately sought to obtain information from Defendants to determine the scope of that infringement. Defendants not only refused to supply that information to Plaintiffs but affirmatively misrepresented that they were unaware of having distributed any counterfeits. *See, e.g.,* Doc No. 170 Ex. 15 at 2; Doc No. 338 Ex. 5 at 1. It was only in 2012, when the scope of the infringement started becoming somewhat clearer, and it became apparent that the parties' issues were not going to be readily resolved, that Pearson and Cengage each independently decided to stop selling to Defendants.

Finally, Defendants argue that their copyright misuse defense should survive summary judgment even if Plaintiffs' conduct does not rise to the level of an antitrust violation because, under *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) and other Fourth Circuit precedent, Plaintiffs' conduct need not constitute a violation of antitrust laws to constitute copyright misuse. Even were the Court to adopt that standard,[3] Defendants have failed to articulate what that "something less" is or adduce any evidence to support it. As Magistrate Judge Gorenstein found, Defendants' evidence is simply "too lacking in detail to conclude that the plaintiffs' decisions not to sell books to defendants was part of an 'unreasonable restraint on trade' or otherwise violate public policy." Report at 23. The District Court in Ohio specifically found that it would not be in the public interest to force Pearson and Cengage to continue to do business with Defendants, who Plaintiffs had a reasonable belief was trading in counterfeit

---

[3] As the Report properly recognized, and which Defendants do not challenge, the Second Circuit has not yet recognized the affirmative defense of copyright misuse. Report at 19-20 (citing *Associated Press v. Meltwater U.S. Holdings, Inc.,* 931 F. Supp. 2d 537, 567 (S.D.N.Y. 2013)).

goods. Magistrate Judge Gorenstein properly held that "defendants have not provided evidence that would allow a factfinder to apply the defense of copyright misuse." Report at 23.

## II.   BAD FAITH AND UNCLEAN HANDS

Defendants object to the Report's recommendation to dismiss Defendants' bad faith/unclean hands defense. Defendants rely on the same evidence for this defense as for the copyright misuse defense. As such, the Report found the evidence insufficient to support this defense as well. For the reasons stated above, Magistrate Judge Gorenstein's determination was correct.

Defendants now proffer a new argument to support this defense -- Plaintiffs' failure to provide BDB with notice of suppliers of counterfeit books under the parties 2008 Settlement Agreement, including the "Blackerbys." Objections at 7. Defendants claim that "[h]ad Plaintiffs merely honored their contractual obligations, Defendants would never have acquired any allegedly counterfeit books from the Blackerbys." *Id*.

As an initial matter, this is a new argument not previously asserted below and should not be considered now. *See Tavares v. City of New York*, 2011 U.S. Dist. LEXIS 135390, *6 (S.D.N.Y. Nov. 23, 2011) ("Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation") (collecting cases).[4] Even if considered, however, Defendants similarly lack any evidence to support this claim. Defendants have no evidence in the record that they would have stopped buying counterfeit books from the Blackerbys and they cite to none. In fact, just the opposite is true. The evidence in the record

---

[4] In addition to being a new argument in their Objections, this argument also relies on facts not previously asserted or identified in connection with Magistrate Judge Gorenstein's order to set forth all facts to support their affirmative defense. *See* Doc. No. 280. Magistrate Judge Gorenstein's Order was specifically meant to address Plaintiffs' objections that they would be prejudiced by Defendants' eleventh-hour addition of new defenses.

shows that even where Defendants *admitted* that a seller, Best Books World, had sold to them "most, if not all" of the counterfeit books at issue in the 2007 lawsuit, they nevertheless continued to purchase books from that source. *See, e.g.,* Doc No. 239 at 3-4. There is no reason to believe that had Plaintiffs separately informed Defendants of the identity of the Blackerbys, Defendants would have stopped purchasing from them as a result.

### III.     INNOCENT INFRINGEMENT DEFENSE

Defendants object to the Report's recommended dismissal of their "good faith" or innocent infringement defense under 17 U.S.C. § 504(c)(2). Magistrate Judge Gorenstein properly found that Defendants were barred from raising the innocent infringement defense pursuant to 17 U.S.C. §401(d), which provides that "no weight shall be given" to an innocent infringement defense if "a notice of copyright . . . appears on the published copy or copies to which a defendant in a copyright infringement suit had access." Report at 10.

Despite the clear statutory language and the Second Circuit's equally clear statement that "Sections 401(d) and 402(d) prevent an alleged infringer from asserting an 'innocent infringement' defense if a notice of copyright appears on the material allegedly infringed," *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 123 (2d Cir. 2001), Defendants nevertheless claim that Magistrate Judge Gorenstein was "mistaken." They argue, without any legal support, that Section 401(d) only applies to defendants who *manufacture* counterfeit copies of works, but not to one who "innocently *resells* a counterfeit copy of a work." Objections at 9. They assert that the "mere presence of a copyright notice does not inform a party that the work is infringing if that notice appears on a counterfeit work that appears completely legitimate" and that applying this section to resellers "serves no logical purpose." *Id.*

11

Defendants' position is not only unsupported by the statute or any case law, but it also demonstrates that Defendants do not understand the underlying statutory provision. As Magistrate Gorenstein properly recognized, whether a copyright notice appeared on a *counterfeit* work is irrelevant to the Section 401(d) analysis. "The applicability of section 401(d) turns on access to a 'published' -- that is, authentic -- version of the work." Report at 11. This analysis is correct because in 1988 the United States agreed to the Berne Convention, which required by treaty that the United States eliminate its requirement that all copyrighted works be marked with a copyright notice. Because the United States wanted to continue to encourage copyright owners to include copyright marks on their works, it enacted Section 401(d) which incentivized (but did not obligate) publishers to place copyright notices on their works.[5] "That incentive is the bar to the innocent infringer defense. Under this scheme, it would make no sense for a copyright defendant's subjective intent to erode the working of § 402(d), which gives publishers the option to trade the extra burden of providing copyright notice for absolute protection against the innocent infringer defense." *Maverick Recording, Co.*, 598 F.3d 193, 199 (5th Cir. 2010). Professor Nimmer explains further: "Copyright proprietors using the prescribed notice will absolutely defeat a defense in an infringement action based on allegedly innocent infringement in mitigation of actual or statutory damages, when such a defense is urged by a defendant who had access to the noticed copies or phonorecords." 2-7 *Nimmer on Copyright* § 7.02.

Defendants' argument that Section 401(d) does not apply to resellers but only to manufacturers is without any foundation. As Magistrate Judge Gorenstein noted, Section 401(d) "fails to make this distinction." Report at 12. The cases relied on by Defendants are inapposite. Nowhere in *Columbia Pictures Indus. Inc. v. Garcia,* 996 F. Supp. 770, 771 (N.D. Ill. 1998), for

---

[5] *See* Berne Convention Implementation Act of 1988, 1988 Enacted H.R. 4262, 100 Enacted H.R. 4262, 102 Stat. 2853, effective March 1, 1989.

example, did the court describe, as Defendants assert, "how Section 401(d) is difficult to apply where the defendant merely distributed a counterfeit copy." Objections at 9. Rather, while acknowledging that some courts had applied 401(d) where the notices were contained on the counterfeit goods, the *Garcia* court explained its view that Section 401(d) applied to copyright notices appearing on the "published copy or copies to which a defendant . . . had access." It made no distinction between manufacturers and resellers.

Defendants also erroneously quote the Seventh Circuit in *Gaiman v. McFarlane,* 360 F.3d 644 (7th Cir. 2004), that the "function of copyright notice is to warn off copiers" and they therefore argue that "as a result, [a copyright notice] is completely irrelevant in the context of distribution." Objections at 9. Defendants quote *Gaiman,* however, entirely out of context. In *Gaiman*, the Seventh Circuit was discussing the defendant's claim that the plaintiff's copyright claim accrued, for statute of limitations purposes, at the time the work was published with a copyright notice. The Court therefore stated that the "function of a copyright notice is to warn off copiers . . . not to start the statute of limitations running." *Gaiman*, 360 F.3d at 653 (internal citations omitted). Nor, as Defendants, assert did the *Gaiman* court hold that "[a]ccess has no meaning in a case where copies are not made." Objections at 10. The *Gaiman* case has no relevance to the analysis here. *See id.* at 653.

Similarly, as Magistrate Judge Gorenstein found, neither *D.C. Comics Inc., v. Mini Gift Shop,* 912 F.2d 29 (2d Cir. 1990), nor *Denenberg v. LED Techs., LLC,* 2013 WL 2153290 (D. Colo. May 17, 2013), supports Defendants' argument that Section 401(d) does not apply to resellers. *D.C. Comics* found innocent infringement where the plaintiff admitted that the infringing works did not have copyright notices. *D.C.Comics* did not even discuss Section 401(d). In *Denenberg*, the Court denied summary judgment on the innocent infringement

13

defense because it was disputed whether a website that contained the copyright notice "provide[d] the kind of notice that precludes the defense of innocent infringement." Report at 12.

In short, Defendants' claim that Section 401(d)'s limitation to the innocent infringement defense does not apply to resellers is not supported by the language of the law, its legislative history, or by the case law. Magistrate Judge Gorenstein properly recommended that summary judgment be granted dismissing this defense.

## CONCLUSION

For the reasons set forth above, Defendants' objections to the Report should be rejected. Plaintiffs respectfully request that the Court adopt the Report in its entirety and grant Plaintiffs summary judgment as a matter of law with respect all of Defendants' remaining affirmative defenses.

Dated: July 5, 2016

Respectfully submitted,

OPPENHEIM + ZEBRAK, LLP

By: /s/ *Matthew J. Oppenheim*
Matthew J. Oppenheim
Julie C. Chen
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
(202) 480.2999 Telephone
matt@oandzlaw.com
julie@oandzlaw.com

*Counsel for Plaintiffs*