UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JOHN WILEY & SONS, INC. et al.,                 :

                Plaintiffs,            :
                                                     13cv816

        -against-                       :
                                                       OPINION & ORDER

BOOK DOG BOOKS, LLC, et al.,                    :

                Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
WILLIAM H. PAULEY III, District Judge:

        John Wiley & Sons, Inc., Cengage Learning, Inc., and Pearson Education, Inc. (the "Publishers") bring this action against Book Dog Books, LLC and Philip Smyres ("Book Dog") for copyright and trademark infringement, illegal importation of counterfeit goods, and breach of contract. Familiarity with this Court's prior opinions is presumed.

        The Publishers, the holders of the copyrights and trademarks allegedly infringed by Book Dog, move to strike several affirmative defenses in the Answer to the Second Amended Complaint. (See June 7, 2016 Report and Recommendation (the "Report"), ECF No. 361, at 5.) Magistrate Judge Gorenstein recommended granting the Publishers' motion to strike in its entirety. (Report at 28.)

        Book Dog objects to that portion of the Report recommending that the affirmative defenses of copyright misuse, unclean hands, and "innocent infringement" be stricken. (Ds.' Objections, ECF No. 362; Ds.' Reply, ECF No. 365.) This Court adopts the Report's recommendation to strike the affirmative defenses of copyright misuse and unclean hands. However, this Court declines to adopt the Report's recommendation on the "innocent infringement" defense. Finding no error with respect to parts of the Report to which Book Dog did not object, this Court otherwise affirms and adopts it.

LEGAL STANDARD

"The Federal Magistrate's Act, 28 U.S.C. §§ 631–639, and Rule 72 of the Federal Rules of Civil Procedure provide the standard of review of a magistrate judge's order." White v. Lenox Hill Hosp., No. 02-cv-5749, 2005 WL 1421834, at *1 (S.D.N.Y. June 20, 2005). "The standard depends on whether the issue decided by the magistrate judge is dispositive or nondispositive." Hughes v. LaSalle Bank., N.A., No. 02-cv-6384, 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004). With respect to a dispositive matter, "the court must make a de novo determination of those portions of the report to which timely objections are made, 28 U.S.C. § 636(b)(1)(c), [and] with respect to the uncontested portions of a report and recommendation, a 'district court need only satisfy itself that there is no clear error on the face of the record.'" Gomez v. Brown, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009). "If . . . the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Thomas v. Astrue, 647 F. Supp. 2d 507, 511 (S.D.N.Y. 2009).

The Second Circuit has held that the applicable standard for a summary-judgment motion challenging the sufficiency of an affirmative defense is as follows:

> [A] plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case. While whatever evidence there is to support an essential element of an affirmative defense will be construed in a light most favorable to the non-moving defendant, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. . . . [I]n cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense there can be "no genuine issue as to any material fact" since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial.

F.D.I.C. v. Giammettei, 34 F.3d 51, 54–55 (2d Cir. 1994) (internal citations and quotation marks omitted, brackets in original).

## DISCUSSION

I. Copyright Misuse

Book Dog's fourteenth affirmative defense is that the Publishers' claims are barred "by their misuse of their respective copyrights and trademarks." (Answer to the Second Amended Complaint ("Answer"), ECF No. 264, at 15.) However, the Second Circuit has "not yet recognized" the affirmative defense of copyright misuse. Associated Press. v. Meltwater U.S. Holdings, Inc., 931 F. Supp. 2d 537, 567 (S.D.N.Y. 2013). And "[a]lthough copyright misuse has been acknowledged as a potential affirmative defense to an action for copyright infringement in at least five circuits, only a handful of decisions have ever applied it to bar an otherwise successful claim of copyright infringement." Meltwater, 931 F. Supp. 2d at 567–68. "Some courts have indicated that the doctrine of copyright misuse applies only in the antitrust context," while other courts "have taken a broader approach, holding that copyright misuse applies to any attempt to broaden the scope of a copyright monopoly that violates the public policy underlying copyright law." Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 428–29 (S.D.N.Y. 2010) (citations omitted).

Assuming, arguendo, that such a defense exists in this Circuit, Book Dog would be required to submit some evidence showing that the Publishers' copyright practices resulted in an "improper stifling of competition." Meltwater, 931 F. Supp. 2d at 568. Book Dog asserts that Cengage and Pearson "misused" their copyrights because they simultaneously ceased selling to Book Dog in 2007 and 2012, within a year of two occasions on which they sued Book Dog for

3

copyright infringement.[1] (See Declaration of Philip Smyres, ECF No. 321, ¶ 15.) Then (as now) Pearson and Cengage shared the same litigation counsel. Book Dog asserts that fact, combined with the Publishers' motive to harm Book Dog financially, is sufficient to survive summary judgment against the affirmative defense of copyright misuse.

Book Dog compares its allegations to those in this Court's prior decision in the Currency Conversion Fee Antitrust Litigation, No. 05-cv-7116, 2012 WL 401113 (S.D.N.Y. Feb. 8, 2012). In Currency Conversion, the plaintiffs alleged that major national credit-card issuers conspired to include mandatory arbitration clauses in their cardholder agreements. Currency Conversion, 2012 WL 401113, at *4. Among other things, the plaintiffs provided evidence that attorneys working for direct competitors in the credit-card market agreed to sponsor "Arbitration Coalition" meetings, at which attendees were instructed on how to write mandatory arbitration clauses into credit-card agreements. Currency Conversion, 2012 WL 401113, at *1–2. The plaintiffs also provided evidence that the arbitration clauses the credit-card issuers drafted appeared to be somewhat standardized, and the evidentiary record reflected a high volume of communications between the firms around the time of the meetings. Currency Conversion, 2012 WL 401113, at *5–9. Such evidence, this Court concluded, was sufficient for plaintiffs' claims to survive summary judgment. Currency Conversion, 2012 WL 401113, at *9.

Book Dog proffers that Pearson and Cengage could have made a coordinated decision to cease doing business with Book Dog. This is legally insufficient. In a similar antitrust context, the Supreme Court held that "[a]t the summary judgment stage," proof of an anti-competitive conspiracy "must tend to rule out the possibility that the defendants were acting

---

[1] A statement of relatedness received by this Court on September 12, 2016 indicates that the Publishers have now filed yet another infringement action against Book Dog. See ECF No. 4, Cengage Learning, Inc. v. Book Dog Books, LLC, 16-cv-7123 (S.D.N.Y. filed Sept. 12, 2016).

independently." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554 (2007) (citation omitted). Indeed, a mere allegation of parallel conduct does not survive a motion to dismiss. See Twombly, 550 U.S. at 564.

Here, Book Dog's assertion that Pearson and Cengage both ceased doing business with Book Dog after suing Book Dog for copyright infringement is not enough to support an affirmative defense predicated on anti-competitive behavior. Cf. Currency Conversion, 2012 WL 401113, at *2–9. And the fact that they had the same counsel at the time does not alter this conclusion. See Primetime 24 Joint Venture v. Nat'l Broadcasting Co., Inc., 219 F.3d 92, 99 (2d Cir. 2000) (antitrust principles are not construed "to limit copyright owners from defending their individual copyrights against common infringers through concerted litigation, even though the owners and infringers may all be competitors"). Accordingly, Book Dog's affirmative defense of copyright misuse is stricken.

II. Unclean Hands

Among other things, Book Dog's fifteenth affirmative defense asserts that the Publishers' claims are barred by the unclean-hands doctrine. (Answer at 16.) Book Dog's "defense of 'unclean hands' is premised on the maxim that a party 'who has acted fraudulently, or who by deceit or any unfair means has gained an advantage' is not entitled to obtain equitable relief." State of New York v. United Parcel Serv., Inc., 160 F. Supp. 3d 629, 646 (S.D.N.Y. 2016) (citation omitted). In other words, unclean hands is an "equitable defense to equitable claims," and therefore is of no assistance with respect to "damages" sought in an "action at law." Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 607 (2d Cir. 2005). In copyright actions, the defense of unclean hands is "recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the

5

infringement action." Broadcast Music, Inc. v. Hearst/ABC Viacom Entmt't Servs., 746 F. Supp. 320, 329 (S.D.N.Y. 1990). The defense of copyright misuse, to the extent it exists, is simply a "species of unclean hands, and finds its origin" in that equitable doctrine. Saks Inc. v. Attachmate Corp., No. 14-cv-4902, 2015 WL 1841136, at *13 (S.D.N.Y. Apr. 17, 2015). As Book Dog notes, the unclean-hands defense relies on substantially the same evidence. Therefore, it fails for substantially the same reasons as the copyright-misuse defense.

Book Dog now raises, as additional evidence of "unclean hands," that the Publishers "intentionally withheld information" about known counterfeiters that should have been disclosed under a 2008 settlement agreement. Specifically, Book Dog asserts that the Publishers should have advised Book Dog of their discovery that the "Blackerbys," one of Book Dog's suppliers, were dealing in counterfeit textbooks. (Ds.' Opp. at 11.)

Book Dog waived this argument because it failed to offer that evidence before Magistrate Judge Gorenstein. "Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." See, e.g., Tavares v. City of New York, No. 08-cv-3782, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011). And Book Dog does not contest that it failed to such evidence before the Magistrate Judge, asserting instead only that the 2008 settlement agreement was generally "an issue" in the case. (Book Dog Reply, at 6.)

Moreover, any breach of a contractual duty to disclose known counterfeiters to Book Dog is a contract claim, not an affirmative defense to copyright infringement. Book Dog has submitted no evidence that the Publishers' failure to disclose information about a known counterfeiter rose to such an "extraordinary" level that their conduct was "tainted with inequitableness or bad faith." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 129 (2d Cir. 2009); Cf. Uzan, 561 F.3d at 127–28 (employing unclean-hands doctrine to deny motion to set aside a

judgment when defendants employed their "vast personal wealth" to raise frivolous roadblocks to enforcement; refused to comply with court orders; and refused to transfer their stock holdings into the court's registry).

III.   Innocent Infringer

Book Dog's third affirmative defense of "good faith" is intended to invoke the innocent-infringer doctrine of 17 U.S.C. § 504(c). (See Report at 9.) "In general, [a] copyright owner is entitled to recover the actual damages he suffered and any profits made by the infringer. [However,] the owner may elect to recover—instead of actual damages and profits—statutory damages under § 504(c)(1) for those works whose copyrights were registered at the time the infringement occurred." Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc., 807 F.2d 1110, 1114 (2d Cir. 1986). When statutory damages are sought, a defendant may demonstrate that he is an "innocent infringer" if he "sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." D.C. Comics v. Mini Gift Shop, 912 F.2d 29, 35 (2d Cir. 1990) (citing 17 U.S.C. § 504(c)(2)). A defendant's lack of knowledge of infringement is not a defense to liability, but permits the court, "[i]n its discretion," to "reduce the award of statutory damage to a sum of not less than $200." D.C. Comics, 912 F.2d at 35.

The Publishers argue the innocent-infringer defense is statutorily precluded here. Under 17 U.S.C. § 401(d), the innocent-infringement defense is given "no weight" "[i]f a notice of copyright in the form and position specified by this section appears on the published copy or copies to which a defendant in a copyright infringement suit had access." 17 U.S.C. § 401(d). The defendant's "access" to an authentic copy of a work containing a proper copyright notice, 17 U.S.C. § 401(d), negates the inference that the defendant "was not aware and had no reason to

7

believe" he was engaging in copyright infringement. Compare 17 U.S.C. § 401(d), with 17 U.S.C. § 504(c)(2). For example, if a bootlegger copies a DVD marked with a copyright notice and resells it, he is statutorily precluded from claiming the innocent-infringer defense. The result is the same even if the bootlegger scrubs the copyright notice from the bootlegged copies because he had "access" to the copyright notice in the authentic work. See Columbia Pictures Indus., Inc. v. Garcia, 996 F. Supp. 770, 772 (N.D. Ill. 1998).

In this action, Book Dog does not seriously dispute that the authentic copies of the Publishers' textbooks bear proper copyright notices, and the Publishers offer admissible evidence on that score. (See Declaration of Jessica Stitt, ECF No. 303, ¶¶ 6–8; Declaration of Richard Essig, ECF No. 304, ¶¶ 5–7; Declaration of Lisa Suarez, ECF No. 305, ¶¶ 5–6.) The Publishers argue that the innocent-infringer defense is unavailable under these circumstances: Book Dog could have purchased the publicly available authentic works; compared those copies to the textbooks it was selling; and discovered that they were counterfeit. In this sense, Book Dog had "access" to authentic copies of any inadvertently pirated works.

However, the Publishers' reading of the term "access" in 17 U.S.C. § 401(d) is too broad. In the example of a bootlegged DVD, there is no question that the bootlegger had "access" to the copyright warnings because he copied the authentic work himself. By contrast—and more analogous to this case—if the same bootlegged DVD makes its way into a distributor's supply chain, the distributor may well lack "access" to the authentic "published work" during the distribution process. 17 U.S.C. § 401(d). And if the bootleg is of high quality, the distributor may have no reason to suspect infringement, and therefore no reason to consult an "authentic" copy in the first place. After all, such a defendant would believe his work is the authentic copy. And under such circumstances, a court could reasonably find that the distributor's infringement

8

was "innocent," which is "primarily a factual determination" within the district court's discretion. See D.C. Comics, 912 F.2d at 29.

The Publishers' reading would stretch the term "access" in § 401(d) to include not only the DVD bootlegger (who has contemporaneous access, and therefore knowledge of the infringement), but any distributor who could, hypothetically, have <u>obtained</u> access by purchasing other copies of the work from the market and comparing them. Such an interpretation would reduce the innocent-infringer defense to a meaningless tautology, in which § 401(d) would require a distributor with no reason to be suspicious of the authenticity of a work to compare it to other copies believed to be equally authentic.

This Court declines to adopt such a counterintuitive construction of the statute. See, e.g., Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 368 (2d Cir. 2006) (statutes "should be interpreted in a way that avoids absurd results"). In similar circumstances, other courts have permitted distributors of works that may appear to be legitimate (but which were infringed by a third party) to rely on the innocent-infringement provision. See, e.g., Columbia Pictures Indus., Inc. v. Garcia, 996 F. Supp. 770, 772 (N.D. Ill. 1998) (video-rental store owner properly asserted innocent-infringement defense where he argued that he had no reason to believe his videotapes were counterfeit); Denenberg v. LED Techs., LLC, No. 11-cv-3155, 2013 WL 2153290, at *2 (D. Colo. May 17, 2013) (electronics company publishing images on its website had no reason to consult the copyrightholder's website, because the images were provided by a third-party marketer and lacked a "copyright, watermark, or other indication of ownership"). Accordingly, this Court declines to adopt the Report on this point. The affirmative defense of "innocent infringement" is not stricken.

9

## CONCLUSION

For the foregoing reasons, this Court adopts Magistrate Judge Gorenstein's thorough and well-reasoned Report except for the recommendation that Book Dog's affirmative defense of "innocent infringement" be stricken. The Clerk of Court is directed to close the motion pending at ECF No. 301.

Dated: September 19, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.