UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WILEY & SONS, INC., CENGAGE LEARNING, INC., and PEARSON EDUCATION, INC.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>BOOK DOG BOOKS, LLC and PHILIP SMYRES,<br><br>　　　　　Defendants. | Case No. 1:13-cv-00816 (WHP) (GWG)<br><br>Judge William H. Pauley III<br><br>Magistrate Judge Gabriel W. Gorenstein |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR RECONSIDERATION**

Plaintiffs' Motion for Reconsideration described in detail why the Court's interpretation of the term "access," as it is used in 17 U.S.C. § 401(d), is contrary to law and should be reconsidered. Defendants' Opposition ignores the statutory language and legislative history and misinterprets Plaintiffs' positions and the case law. Congress enacted Sections 401(d) and 402(d) for the purpose of incentivizing copyright owners to attach copyright notices to their published works, without regard to whether an infringer actually obtained or viewed the authentic work with notice or had reason to suspect infringement. Plaintiffs placed copyright notices on all published copies of their works in suit, and this precludes Defendants' "innocent infringement" defense. Rather than being counter-intuitive, such result is exactly what Congress intended and squarely comports with how courts routinely have applied Sections 401(d) and 402(d) and defined the term "access" under copyright law.

## I.    This Is A Proper Motion For Reconsideration

Defendants' Opposition claims that Plaintiffs' reconsideration motion is merely a second bite at the apple.[1] (Opp. at 3). Reconsideration, however, is appropriate where there is a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The Court's September 19, 2016 Opinion & Order (the "Order") (ECF No. 367), in rejecting Magistrate Judge Gorenstein's recommendation to strike Defendants' innocent infringement defense, departed from Section 401(d)'s statutory text, legislative history, and relevant case law, including from two federal appellate courts. Plaintiffs' motion enables the Court to reconsider its decision, facilitating a more orderly trial and maintaining the protections and incentives that Congress intended.

---

[1] In an attempt to distract, Defendants' Opposition airs confidential settlement discussions, along with a variety of false rhetoric. Plaintiffs do not dignify it with a response.

**II.     Defendants Ignore The Statute's Text And Legislative History**

As set forth in Plaintiffs' motion for reconsideration, both the statute and the legislative history overwhelmingly support reconsideration. Defendants offer no argument to the contrary.

The Copyright Act provides, in pertinent part, that if a notice of copyright "appears on the published copy or copies to which a defendant in a copyright infringement suit had *access*, then no weight shall be given to defendants' interposition of a defense based upon innocent infringement in mitigation of actual or statutory damages[.]" 17 U.S.C. § 401(d) (emphasis added). In other words, where a plaintiff places notices of copyright on the published copy or copies to which a defendant had access, the Court shall give **no weight** to the defendant's argument that it "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." *See* 17 U.S.C. § 504(d); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (explaining in counterfeiting case that a particular statute's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute).

Proper statutory construction demands that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). With "access" not defined in the statute, the Court thus must look to the ordinary, contemporary and common meaning of the word. Defendants do not dispute that this is the proper way to interpret the statute. Nor do they dispute that access means "a way of getting near, at or to something or someone" or a "right to use or look at something." (Pls' Mem. at 3) (citing two universally accepted dictionary definitions of "access"). Defendants do not, and cannot, dispute that they had "access" under such a plain meaning definition of the term.

Likewise, Defendants have no answer for the legislative history of Section 401(d), which explains that the provision was enacted to encourage use of copyright notices and has nothing to do with a defendant's culpability. The legislative history expressly stated that "proof that notice was placed on all published copies will satisfy [the copyright owner's] burden" of "prov[ing] that the copies to which the defendant had access bore such notice." S. Rep. No. 100-351, at 44 (1988). Defendants neither point to contrary legislative history nor dispute that it is appropriate to consider the legislative history cited by Plaintiffs. Because it is undisputed that Plaintiffs placed notice on all published copies, Defendants had "access" under Section 401(d).

Thus, neither the statute, nor its legislative history supports defining "access" based upon whether the defendant is accused of unlawful distribution rather than reproduction, or had reason to suspect infringement. Such distinctions undermine the clear and unambiguous legislative purpose of the statutory provision—to encourage copyright owners to place copyright notices on their publicly distributed works.

### III.   The Case Law Overwhelmingly Supports Reconsideration

Defendants' discussion of the case law is misleading. As cited in Plaintiffs' motion, the great weight of case law overwhelmingly supports reconsideration. The cases relied upon by Defendants and/or cited in the Order are distinguishable outliers.

*Denenberg v. Led Techs., LLC*, No. 11-cv-03155-RBJ, 2013 WL 2153290, 2013 U.S. Dist. LEXIS 70322 (D. Colo. May 17, 2013), which contains only a brief discussion of the innocent infringement defense without any discussion of case law, is inapplicable. In *Denenberg*, the copyright notice did not appear "on the published copy or copies" as is required by 17 U.S.C. § 401(d), but instead appeared only on the copyright owner's website. 2013 U.S. Dist. LEXIS 70322, at *5 (noting the copyrighted images themselves had no indication of

3

ownership, such as a copyright notice). The court's observation that defendant did not view the website was thus wholly within the context of whether there was a basis other than Section 401(d) for precluding the innocent infringement defense. In the case at bar, unlike in *Denenberg*, there is simply no dispute that the published copies of the works bore proper copyright notices.

Defendants contend that comments in a dissent from Justice Alito, in *Maverick Recording Co. v. Harper*, 598 F.3d 193 (5th Cir. 2010), *cert. denied sub nom.*, *Harper v. Maverick Recording Co.*, 562 U.S. 1080 (2010), make reconsideration inappropriate. Defendants are wrong. That case applied 17 U.S.C. § 402(d)—the statutory equivalent to 17 U.S.C. § 401(d) for phonorecords—to preclude a defendant that illegally downloaded copyrighted music from asserting that the infringement was innocent. The Fifth Circuit refused to give weight to a defendant's innocent infringement defense, even though the defendant, who infringed numerous sound recordings via online-file sharing, did not possess (or have reason to possess) the physical compact discs with copyright notices affixed, and did not know her activities constituted infringement. 598 F.3d at 194, 198. The Fifth Circuit held that Section 402(d) gives publishers the "option to trade the extra burden of providing copyright notice for *absolute protection* against the innocent infringer defense." *Id.* at 199 (emphasis added). The Fifth Circuit explained that "[t]he plain language of the statute shows that the infringer's knowledge or intent does not affect its application." *Id.* The Supreme Court chose not to grant certiorari and left the Fifth Circuit decision in place. Indeed, the Supreme Court's rejection of the certiorari request, despite the dissent by Justice Alito, further supports reconsideration.

Defendants' reliance upon *Malibu Media, LLC v. Does*, No. 12-2078, 2013 U.S. Dist. LEXIS 55985, 2013 WL 1702549, at *6 n.5 (E.D. Pa. Mar. 6, 2013) and *Electra Entertainment Group v. McDowell*, No. 4:06-CV-115 (DCL), 2007 U.S. Dist. LEXIS 82208, 2007 WL

4

3286622 (M.D. Ga. Nov. 6, 2007), is misplaced. (Opp. at 5). *Malibu Media* declined to strike the innocent infringer defense "because whether Malibu attached notices of copyright to its works [was] an open question." *Id.* at *6. While *Electra Entertainment* declined to strike the innocent infringer defense, it did so without any case law support and only because of a question of material fact as to whether the defendant could have "access" to the compact discs containing copyright notices where defendant was thirteen or fourteen years old at the time of the infringement and any compact discs defendant may have owned were bought by her mother. 2007 U.S. Dist. LEXIS 82208, at *6 n.2. In the case at bar, it is undisputed that the published copies of the works in suit bear copyright notices and that Defendants are not minors.

      The decision in *Columbia Pictures Indus. v. Garcia*, 996 F. Supp. 770 (N.D. Ill. 1998), is also inapposite. Unlike the notices on Plaintiffs' published works, there was no proof in *Garcia* that the authentic works bore copyright notices. Rather, the copyright owners in *Garcia* apparently cited to the presence of copyright notices on the unauthorized reproductions. Without citing any supporting case law, the *Garcia* court merely explained it was "uneasy" with the idea that the "copies to which a defendant . . . had access" could be the unauthorized copies rather than the authentic copies. 996 F. Supp. at 772. Moreover, *Garcia* did not even reach a conclusion on whether the Section 401 statutory bar applied. Instead, *Garcia* held that other facts precluded the infringer's ability to prove that his infringement was innocent. *Id.* In the case at bar, there is no dispute the published copies of the works bore copyright notices.

      Defendants' reliance upon *D.C. Comics Inc. v. Mini Gift Shop*,[2] 912 F.2d 29, 32 (2d Cir. 1990), is equally without merit. *D.C. Comics* did not involve Section 401(d). Instead, it

---

[2] In their Opposition and other filings, Defendants incorrectly caption this case as *D.C. Comics, Inc. v. Warner Bros., Inc.* D.C. Comics, Inc. and Warner Bros., Inc. were co-plaintiffs.

concerned the question of innocent infringement based upon a broader array of facts presented at trial. For whatever reason, the copyright owner apparently did not argue for exclusion of the innocent infringer defense based upon inclusion of a copyright notice on the published copies. Thus, the case is of no relevance.

Defendants inaccurately assert that neither *Maverick Recording Company v. Harper*, 598 F.3d 193, nor *BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005), address the meaning of "access." (Opp. at 7). To the contrary, rather than support Defendants' reading of "access" that looks to whether a defendant "had a reason" to consult the authentic published copy, *Harper* explicitly stated that "[t]he plain language of the statute shows that the infringer's knowledge or intent does not affect its application," *see* 598 F.3d at 199. *Gonzalez* likewise expressly articulated that the statutory question is "whether 'access' to legitimate works was available rather than whether infringers earlier in the chain attached copyright notices to pirated works" *see* 430 F.3d at 892. Indeed, it was "undisputed" in *Gonzalez* that the defendant had access to the work, but only because the lower court had already explicitly addressed the meaning of access, finding that "[a]lthough it is true that [the defendant] did not have actual possession of these CDs, section 402(d) does not require proof that the infringer had 'actual possession.' Instead, the plaintiff need only show that the CDs with notice 'were in circulation [and] available' to the infringer." *BMG Music v. Gonzalez*, No. 03 C 6276, 2005 U.S. Dist. LEXIS 910, at *4 (N.D. Ill. Jan. 12, 2005).

Defendants attempt to distinguish the district court cases cited in Plaintiffs' opening papers by arguing that many involved unlawful reproduction and that the two involving unlawful distribution alone read the word "access" out of the statute. (Opp. at 8). But those cases do not predicate their holdings upon whether the unlawful activity was reproduction as opposed to

6

distribution. Moreover, rejecting the innocent infringement defense when the authentic published copies in circulation bore a copyright notice does not read "access" out of the statute. Rather than being a "counterintuitive construction of the statute," the whole point of Sections 401(d) and 402(d) is to encourage use of copyright notices, focusing solely upon the copyright owner's actions without regard to a defendant's knowledge or intent. *See supra* (discussing statutory text, legislative history, and appellate cases); *see also Columbia Pictures Indus. v. Richardson*, No. 95-C-0868-C, 1996 WL 928200, 1996 U.S. Dist. LEXIS 22117, at *10 (W.D. Wisc. June 6, 1996) (finding the notices on seized duplicate videotapes sufficient to preclude defendant's "innocent infringement" defense under 17 U.S.C. § 401(d) even though defendant was found liable only for unauthorized distribution); *Yash Raj Films (USA) Inc. v. Rannade Corp.*, No. 01 CV 5779 (JCL), 2007 WL 1456193, 2007 U.S. Dist. LEXIS 36086, at *28 (D.N.J. May 17, 2007) (citing § 401(d) and stating "[w]here a plaintiff has marketed authorized copies of the films in question with plaintiff's copyright notice affixed . . . Defendants are precluded from asserting that the infringement was innocent.") (internal citation omitted).

### IV. The Long-Held View Of "Access" Under Copyright Law Supports Reconsideration

Though the Order indicates that Plaintiffs "stretch" the reading of "access" (Order at 9), Plaintiffs' reading is consistent with not only the great weight of cases interpreting Sections 401 and 402, *see supra* at 5-8, but also the substantial jurisprudence interpreting "access" broadly to account for the fact that direct evidence of possession in infringement cases is rare. Virtually all circuits allow copying to be established by proof of "access" and substantial similarity, with "access" defined merely as the defendant having a "reasonable opportunity" to view the

copyrighted work.³  Whether the Order interprets "access" as requiring actual possession of the published original with the notice, or a reason to suspect infringement and thus look to the published original with the notice, neither requirement is supported by the case law that has interpreted "access" under copyright law; and Defendants cite no precedent for the Order's departure from the long-held application of the term "access" under copyright law.  (Opp. at 6-7).

## V.     Defendants' New Factual Arguments Are Improper and Meritless

In their opposition, Defendants assert, for the first time, that they did not have "access" because (1) "it is undisputed that Plaintiffs boycotted BDB and, thus, BDB was unable to obtain (a) unquestionably authentic copies of Plaintiffs' books or (b) Plaintiffs' printing specifications[;]" and (2) "one cannot identify a counterfeit book without comparing it to both printing specifications and an unquestionably authentic copy."  (Opp. at 8-15).

Defendants' new arguments are untimely.  Defendants failed to raise them during the initial briefing with Magistrate Judge Gorenstein or in their later Objections filed with the Court.  "[P]arties may not offer new facts or arguments on a motion for reconsideration." *Ralph Oldsmobile, Inc. v. GMC*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 421, at *4 (S.D.N.Y. Jan. 23, 2001).  While Plaintiffs may seek to correct a clear error in law, Defendants may not raise new arguments and additional facts, all of which were available previously.

Even if considered, Defendants' new factual arguments are completely disingenuous and

---

³ *See, e.g., Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003); *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 117 (1st Cir. 2007); *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988); *Sid & Marty Krofft TV Prods. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977); *Bldg. Graphics, Inc. v. Lennar Corp.*, 708 F.3d 573, 578-79 (4th Cir. 2013); *Watt v. Butler*, 457 F. App'x 856, 860 (11th Cir. 2012); *Selle v. Gibb*, 741 F.2d 896, 902 (7th Cir. 1984).

do not save their innocent infringement defense. As discussed above, under Section 401(d), the question of innocent infringement hinges on whether Plaintiffs included copyright notices on all published copies to which Defendants had access. Section III of Defendants' Opposition (Opp. at 8-15) does nothing to negate that access.

First, notwithstanding Defendants' suggestion that Plaintiffs improperly "boycotted BDB," Plaintiffs' termination of Defendants' accounts did not deprive them of access to Plaintiffs' authentic books containing copyright notices.[4] The account closures that Defendants complain about did not occur until mid-2012, which was well after Defendants purchased and sold counterfeit textbooks in 2008, 2009, 2010, and 2011. (*See* R & R, at 1-2). Moreover, even if Defendants could not make wholesale purchases from one or more of the Plaintiffs, nothing prevented them from purchasing authentic copies through Plaintiffs' websites via credit card or from other legitimate distributors. Indeed, Defendant Smyres admitted that they in fact purchased Plaintiffs' textbooks from other distributors. (*See* Deposition of Philip Smyres 59:6-21, Nov. 20, 2013).

Second, Defendants devote several pages recounting Pearson's deposition testimony on how it may review printing specifications or a database of printing defects to determine that a book is counterfeit. (Opp. at 10-14). Yet nothing about how Pearson made counterfeit assessments for this case restricted Defendants' ability to obtain access to the published copies of

---

[4]Defendants' continued implication that Plaintiffs' termination of their accounts was improper was rejected factually in the Report and Recommendation, which noted that Plaintiff Pearson testified that it did not know that Cengage had ended its relationship with Defendants, s*ee* Report & Recommendation (ECF No. 361) ("R & R") at 22), and as a matter of law in connection with this Court's dismissal of Defendants' affirmative defenses of copyright misuse and bad faith/unclean hands. (R & R, at 21-22, 26); (Order, at 4-5).

Plaintiffs' works in suit bearing copyright notices.[5]  Under Defendants' argument, "access" could never be established, thus Section 401(d) can never be satisfied, unless a copyright owner made publicly available every printing or product specification.  Not only is Defendants' standard absurd on its face, it runs contrary to the text and purpose of the statutory provision, which specifies that placement of a copyright notice on copies of the work alone is sufficient to preclude the innocent infringement defense.  Plaintiffs have provided such proof.  Nothing more is required for summary judgment against Defendants' innocent infringement defense.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court reconsider its interpretation of 17 U.S.C. § 401(d) and strike Defendants' Third Affirmative Defense of innocent infringement.

Dated:  October 24, 2016

Respectfully submitted,

OPPENHEIM + ZEBRAK, LLP

By:   /s/ *Matthew J. Oppenheim*
Matthew J. Oppenheim
Julie C. Chen
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
(202) 480.2999 Telephone
matt@oandzlaw.com
julie@oandzlaw.com

*Counsel for Plaintiffs*

---

[5] Defendants similarly cite to testimony that Cengage's returns department was alert to the potential for counterfeits being passed off as returns.  (See Opp. at 9-10).  This argument too does not contradict the undisputed fact that published authentic copies bearing notices are available either from Plaintiffs or third-party distributors.