

Matthew J. Oppenheim
5525 Wisconsin Avenue, NW, Suite 503
Washington, DC  20015
202.450.3958 | matt@oandzlaw.com

July 24, 2017

*Via ECF and Federal Express*

The Honorable William H. Pauley III
The Honorable Gabriel Gorenstein
United States District Court
500 Pearl Street
New York, NY 10007



      Re:    *John Wiley & Sons, Inc. et al. v. Book Dog Books, LLC et al.,* **1:13-cv-0816**
              *Cengage Learning, Inc. et al. v. Book Dog Books, LLC et al.,* **1:16-cv-7123**

Dear Judge Pauley and Judge Gorenstein:

      We represent Plaintiffs in the above-referenced cases, which are set for a consolidated trial in November 2017. With an eye toward the orderly progress of the action, Plaintiffs hereby request a pre-motion conference for clarification concerning the status of Defendants' affirmative defenses. We address this letter to Judge Pauley because it involves the case management conference held in February and the upcoming trial. We address this letter to Judge Gorenstein because it impacts ongoing discovery.

    **I.**    **Preliminary Statement**

      As the Court is well aware, Defendants asserted numerous affirmative defenses in the first case ("*Book Dog I*"). After extensive briefing, which followed years of discovery, all but one of Defendants' affirmative defenses were either stricken by the Court or withdrawn by Defendants to preclusive effect of seeking a jury instruction at trial. Yet, in the later-filed case ("*Book Dog II*"), Defendants have re-pled the same affirmative defenses already stricken or withdrawn from this consolidated action, plus raised thirty new affirmative defenses. Defendants' affirmative defenses in *Book Dog II* conflict with the Court's instructions, along with Defendants' own representations, for managing the case. Moreover, with Defendants using them as a hook for incredibly broad, burdensome and irrelevant inquiries, the affirmative defenses stand to make a mess of the remainder of discovery and frustrate preparation for trial. Indeed, left unchecked, the affirmative defenses will needlessly complicate the pre-trial submissions and pretrial conference and risk jury confusion.

      Plaintiffs respectfully submit that *Book Dog II*, where the Court has ordered limited and expedited discovery and no summary judgment motions, is not a vehicle for Defendants to begin

anew with rejected, withdrawn, or new affirmative defense theories. Defendants may not disregard the Court's decisions, and their own decisions, in *Book Dog I*. Under the law, Defendants are estopped from asserting such *Book Dog I* defenses that have been shown to be lacking. The affirmative defenses not raised previously are also improper. Multiple teams of experienced counsel represented Defendants over years of discovery and pre-trial activity. *Book Dog II* is not the place for brand new affirmative defenses from Defendants' now fourth set of counsel. Rather, as Judge Pauley instructed, and the parties requested, the scope of *Book Dog II* is supposed to be "limited." Allowing Defendants to present defenses only to *Book Dog II* in a consolidated trial with *Book Dog I*, where the nature of claims is virtually identical in both cases, can only lead to juror confusion and an unnecessary risk of tainting any verdict. Moreover, many of the *Book Dog II* defenses are inapplicable on their face and/or supported by nothing more than rank speculation. Whether via an order striking defenses *sua sponte*, or through an early motion *in limine*, Defendants' kitchen sink of **over fifty affirmative defenses** in *Book Dog II* needs to be drained.

## II. Background

The nature of the allegations against Defendants has remained constant since inception of *Book Dog I* in February 2013, although the list of works-in suit-expanded as Plaintiffs obtained discovery and otherwise learned of Defendants' continued infringement. The principal difference between *Book Dog I* and *Book Dog II* is the addition of new counterfeit titles discovered after the close of discovery in *Book Dog I*. There are 140 works-in-suit in *Book Dog I* and 21 works-in-suit in *Book Dog II*. But the nature of claims, relevant law and much of the factual record are the same in both cases.

In their Answer to Plaintiffs' First Amended Complaint in *Book Dog I*, filed on July 1, 2013 (Dkt. No. 25), Defendants asserted a total of ***five*** affirmative defenses. Following two years of discovery and summary judgment briefing, the parties, under the supervision of Judge Gorenstein, reached an agreement whereby Plaintiffs filed a Second Amended Complaint in order to set forth a comprehensive list of the 140 works-in-suit. (Dkt. No. 361) (reviewing history). Despite the limited purpose of the amendment, Defendants, in their Answer on June 10, 2015 (Dkt. No. 264), used it as a vehicle to quadruple the number of their affirmative defenses.

Plaintiffs raised both substantive and procedural objections to those newly asserted and baseless affirmative defenses. Thereafter, the Court issued two orders to clarify the nature and factual bases of the defenses asserted. *See* Order, filed July 2, 2015 (Dkt. No. 280); Order, filed August 3, 2015 (Dkt. No. 286). The Court ordered Defendants to provide the factual contentions and jury instructions for those affirmative defenses for which Defendants intended to seek a jury instruction, while informing the Court of those for which they did not. (*See* Orders at Dkt. Nos. 280, 286, and 293). The Court expressly ordered that Defendants "shall be precluded from seeking any jury instruction for which Defendants did not provide a proposed jury instruction in their filing at Docket # 288." (Dkt. No. 293) (emphasis in original).

Once Defendants made clear which affirmative defenses they withdrew, *i.e.*, those for which they would not seek a jury instruction, Plaintiffs moved to strike the remainder. The parties engaged in extensive briefing on the affirmative defenses, with the result that only one

affirmative defense remained for a possible jury instruction at trial—namely, innocent infringement with respect to awarding damages.  (Dkt. Nos. 361 and 367).

At a status conference before the Court on February 16, 2017, the parties and the Court discussed how to manage *Book Dog II* to proceed efficiently through discovery and to trial in the near term.  Plaintiffs indicated their belief that they would not need to move for summary judgment on affirmative defenses in *Book Dog II* because "we assume that the same rulings will apply." (Transcript, p. 14:12-14:14).  Without voicing any disagreement, Defendants reinforced that, "[w]hat is critical, though, is that everything in the second case be limited."  (Transcript, p. 15:01-15:02).

Defendants nonetheless proceeded to plead **fifty-two** affirmative defenses in *Book Dog II*.  (Dkt. No. 33).  As set forth in **Exhibit A** attached hereto, Defendants' Answer in *Book Dog II* includes:  **thirty** affirmative defenses that are brand new to the action; **ten** affirmative defenses that the Court specifically struck in *Book Dog I*; and **ten** affirmative defenses that Defendants expressly withdrew in *Book Dog I* by indicating they would not seek a jury instruction on the defense, with the understanding from the Court that such decision would be binding.

### III.  Defendants May Not Assert New, Stricken Or Withdrawn Affirmative Defenses.

Defendants' parade of new affirmative defenses is untenable.  Defendants themselves no doubt view the majority of these defenses as throwaways, as many are so inapplicable as to be frivolous.  For instance, Defendants have pled a lack of subject matter jurisdiction and, further, that Plaintiffs' claims are precluded by the First Amendment.  Incredibly, in this case about physical counterfeits, Defendants have even pled the DMCA as a defense.  By any measure, this is not the "limited" approach to *Book Dog II* that the Court indicated it expects for the case and that Defendants themselves insisted was "critical."  The defenses should not be allowed to interfere further with discovery, distract the Court and the parties from preparing for the upcoming trial, or cause confusion by or a tainted verdict from the jury.

The law-of-the-case doctrine and collateral estoppel principles foreclose Defendants from re-raising affirmative defenses already stricken by the Court or withdrawn pursuant to preclusive effect set by the Court.  *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 315 (S.D.N.Y. 2015) (a court "as a general matter will adhere to its own decision at an earlier stage of the litigation") (internal citations and quotation marks omitted); *DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 76 (2d Cir. 1992) (stating that a court's decision "should continue to govern the same issues in subsequent stages in the same case") (internal citations and quotation marks omitted); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002) ("issue preclusion[] prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding"); *Oost-Lievense v. North Am. Consortium, P.C.*, 969 F. Supp. 874, 877-878,  (S.D.N.Y. 1997) (collaterally estopping defendants from asserting affirmative defenses that a state court had previously rejected where defendants argued only that they disagreed with the state court ruling and intended to appeal).  Given the straightforward application of those principles, it is astounding that Defendants re-pled those affirmative defenses.

For these reasons, and others to be adduced in any formal briefing the Court may request, Plaintiffs request that Defendants be limited at trial to those affirmative defenses that survived briefing in *Book Dog I*.

Respectfully submitted,

*/s/ Matthew J. Oppenheim*

Matthew J. Oppenheim

cc: All attorneys via ECF

A pre-motion conference is unnecessary at this time. Defendants are directed to provide, for each purported affirmative defense, their proposed jury instruction for that defense as well as factual allegations supporting each affirmative defense. Each jury instruction shall be followed by a citation to one or more legal authorities that justify Defendants' request for the instruction. To the extent that Defendants do not seek a jury instruction at trial as to a particular defense, Defendants may so state in lieu of providing factual contentions. Defendants shall file these instructions and factual contentions by August 15, 2017.

SO ORDERED:

Dated: July 28, 2017
      New York, NY

_____
WILLIAM H. PAULEY III
U.S.D.J.

4